**Dwight Dwayne ADANANDUS,**
**Petitioner,**

v.

**Gary JOHNSON, Director, Texas Department of Criminal Justice, Institutional Division, Respondent.**

Civil No. SA–95–CA–415.

United States District Court,
W.D. Texas,
San Antonio Division.

Aug. 27, 1996.

Order Denying Amendment Sept. 19, 1996.

Stephanie L. Stevens, San Antonio, TX, for petitioner.

Gena A. Blount, Office of the Texas Attorney General, Austin, TX, for respondents.

## MEMORANDUM OPINION AND ORDER

BIERY, District Judge.

The State of Texas seeks to put to death one of its citizens, Dwight Dwayne Adanandus. In his petition for federal habeas corpus relief, Mr. Adanandus raises twenty-one points requiring constitutional review by this Court and examination of current law on the issues raised. For reasons stated herein, relief is denied.

\* \* \* \* \* \*

Although in more detail later, the Court first addresses generally the assertion of ineffective assistance of trial counsel Steven Hilbig and the historical professional obligation of lawyers in criminal cases. In a nation whose landscape is dotted with synagogues and churches, the entreaties of "thou shalt not kill" and "forgive your enemies" are challenged by retribution and revenge, understandable responses to violent crime. The divergence between what is said on the Sabbath and what is done on election day has given secular America its macabre politics of death, collectively imposed upon the predators among us through the might of the State. Having democratically given vent to normal human emotions in the face of incredibly heinous acts, the legal exercise of the power to end a life requires careful scrutiny by some objective entity bound by the rule of law. The alternatives to the imposition of

the ultimate punishment within a framework of due process are the anarchy of a lynch mob or the whim of a dictator and the concomitant devolution of society to the level of those deserving execution.

For the Constitution to be more than mere words, even those accused of capital murder must have competent advocacy against the strength and resources of government. Though frequently and pejoratively quoted out of context, Dick the Butcher recognized lawyers as protectors of English rights; hence they must be killed to achieve illegitimate seizure of sovereignty.[1] Based on the record before it, this Court concludes Mr. Hilbig and attorneys David Weiner, Julie Pollock and Stephanie Barclay Stevens ably fulfilled their professional responsibilities to Mr. Adanandus and to the rule of law which protects all citizens.

## I. The Record

Before the Court are the following petitions and motions: (1) petitioner's second amended petition for federal habeas corpus relief, filed June 25, 1996,[2] (2) respondent's answer and motion for summary judgment, filed September 12, 1995,[3] (3) petitioner's motion for evidentiary hearing, filed July 26, 1995,[4] (4) respondent's pleading opposing petitioner's motion for evidentiary hearing, filed September 12, 1995,[5] (5) petitioner's reply to respondent's opposition to an evidentiary hearing, filed October 16, 1995,[6] and (6) more than eight thousand pages of state court records from petitioner's capital murder trial, direct appeal, and state habeas corpus proceeding.[7]

---

1. WILLIAM SHAKESPEARE, THE SECOND PART OF KING HENRY THE SIXTH act 4, sc. 2:

> Cade: I thank you, good people; there shall be no money; all shall eat and drink on my score; and I will apparel them all in one livery, that they may agree like brothers, and worship me their lord.
> Dick: The first thing we do, let's kill all the lawyers.

III THE HISTORIES AND POEMS OF SHAKESPEARE 561 (Players Illus. ed., Spencer Press, Inc. (1955).

2. *See* docket entry no. 25.

3. *See* docket entry no. 18.

4. *See* docket entry no. 11.

5. *See* docket entry no. 17.

6. *See* docket entry no. 21.

7. The state court records this Court reviewed in the course of disposing of this cause include the numerous photographs admitted into evidence at petitioner's state court trial and the many pages of petitioner's medical records admitted into evidence at the evidentiary hearing held during petitioner's state habeas corpus proceeding. In Orders issued July 12 and July 18, 1996, this Court was compelled to direct the respondent to supplement the record in this cause with those additional documents and photographs when respondent failed to submit same as part of the state court records in this cause. *See* docket entry nos. 27 and 28.

## II. *Statement of the Case*

On January 28, 1988, petitioner Dwight Dwayne Adanandus shot and killed Vernon Hanan while committing an armed robbery of the Continental National Bank ["CNB"] in San Antonio, Texas. Several eyewitnesses testified that bank teller Patricia Martinez began yelling she had been robbed immediately after petitioner left her window. Vernon Hanan entered the bank lobby, apparently heard the shouts, and lunged at petitioner as petitioner was attempting to exit the bank. The two men wrestled with each other from the bank lobby into the foyer where petitioner pushed Hanan away from himself and down, pointed his gun at Hanan, and fired the fatal shot. Bank security cameras recorded almost the entire series of events leading up to the fatal shooting. There has never been any genuine dispute as to the operative facts.[8] Petitioner was indicted in cause no. 88–CR–1454 on a charge of capital murder on April 12, 1988.[9]

Jury selection in petitioner's state court trial began on March 29, 1989.[10] The guilt-innocence phase of petitioner's trial began May 1, 1989.[11] On May 9, 1989, the jury found petitioner guilty of the offense of capital murder.[12] The next day, the punishment phase of petitioner's trial began, and two days later, May 12, 1989, the jury returned its verdict on the punishment special issues. The trial court sentenced petitioner to death.[13]

---

8. Several eyewitnesses testified at the guilt-innocence phase of petitioner's state court trial to the details of the bank robbery and the events leading up to petitioner's fatal shooting of Vernon Hanan on January 28, 1988. *See* Statement of Facts from Petitioner's State Court Trial, Volume 17 of 27, Testimony of Judy K. Hilton, at pp. 5229–56; Volume 18 of 27, Testimony of Rita Perez, at pp. 5638–81; Volume 18 of 27, Testimony of Patricia Martinez, at pp. 5683–5807; Volume 19 of 27, Testimony of Guadalupe Lozano, at pp. 5808–44 and 5850–78; Volume 21 of 27, Testimony of Nehemiah Cantu, at pp. 6633–87; Volume 22 of 27, Testimony of Rudolph Kasper, at pp. 6728–48; Volume 22 of 27, Testimony of William McGinty, at pp. 6768–94; Volume 22 of 27, Testimony of Alvaro Gonzalez, at pp. 6794–6822; and Volume 22 of 27, Testimony of Celia Pena, at pp. 6823–63. It was uncontroverted at the guilt-innocence phase of petitioner's trial that a single shot had traveled through Vernon Hanan's right forearm before entering his chest, piercing his sternum, passing through one of the chambers of his heart, moving through the aorta, and moving through the left pulmonary vein before lodging in the soft tissue overlaying the spinal cord. *See* Statement of Facts from petitioner's state court trial, Volume 21 of 27, Testimony of Vincent DiMaio, at pp. 6489–6506. There was no dispute the wounds caused by this bullet actually caused Vernon Hanan's death. *Id.*, Volume 20 of 27, Testimony of John Calhoun, at pp. 6214–23; and Volume 21 of 27, Testimony of Vincent DiMaio, at p. 6504. There was also no dispute the fatal bullet had been fired from petitioner's gun and petitioner's gun was at a distance of approximately two feet from Vernon Hanan's forearm when it was fired. *Id.*, Volumes 20–21 of 27, Testimony of Richard Stengel, at pp. 6331–35 and 6348; and Volume 21 of 27, Testimony of Vincent DiMaio, at pp. 6490–91 and 6597–99.
In his closing argument at the guilt-innocence phase of trial, petitioner's trial counsel admitted petitioner had robbed the bank and acknowledged petitioner had shot Vernon Hanan but argued petitioner had not done so intentionally and petitioner had not, as the prosecution had suggested in its opening argument, stood over a fallen Vernon Hanan and fired the fatal shot while Hanan was lying flat on his back. *See* Statement of Facts from petitioner's state court trial, Volume 23 of 27, at pp. 6920–69. At the punishment phase of his trial, petitioner admitted he had pulled the trigger of his gun but testified he had not intended to kill Vernon Hanan. *Id.*, Volume 26 of 27, Testimony of Dwight Dwayne Adanandus, at pp. 7526–27, 7556, 7559, 7571–73, and 7605.

9. Copies of petitioner's indictment appear throughout the pleadings and state court papers now before this Court. *See, e.g.,* Statement of Facts from petitioner's state court trial, Volume IA, at p. 2; Statement of Facts from petitioner's state habeas corpus proceeding, at p. 229.

10. *See* Statement of Facts from petitioner's state court trial, Volume 2 of 27, at pp. 87–96. Immediately prior to the commencement of the general voir dire, a pretrial hearing was held to address defense counsel's concerns about local media photographing or videotape recording the members of the venire as they entered the courtroom. *Id.* Immediately after that brief hearing, the general voir dire began. *Id.* at p. 96.

11. *See* Statement of Facts from petitioner's state court trial, Volume 17 of 27, at p. 5209.

12. *See* Statement of Facts from petitioner's state court trial, Volume 23 of 27, at p. 7005.

13. *See* Statement of Facts from petitioner's state court trial, Volume 26 of 27, at pp. 7698–7700. More specifically, the jury answered "Yes" in response to each of the three special issues submitted to it at the punishment phase of trial, i.e.,

Petitioner appealed his conviction and sentence. In an opinion issued June 16, 1993, the Texas Court of Criminal Appeals affirmed petitioner's conviction and sentence.[14] The United States Supreme Court denied petitioner's petition for certiorari on March 21, 1994.[15]

On September 7, 1994, petitioner filed his initial application for state habeas corpus relief.[16] On October 21, 1994, petitioner filed

14. *See Adanandus v. State*, 866 S.W.2d 210 (Tex. Crim.App.1993), *cert. denied*, 510 U.S. 1215, 114 S.Ct. 1338, 127 L.Ed.2d 686 (1994). In his appellate brief, petitioner presented some forty-seven grounds for relief, consisting of arguments that (1) the state trial court erred in refusing to dismiss the venire after conducting a portion of the voir dire in petitioner's absence, (2) the state trial court erred in conducting a portion of the voir dire in petitioner's absence, (3) the state trial court erred in denying petitioner's challenge for cause to venireperson George Jordan, (4) the state trial court erred in denying petitioner's challenge for cause to venireperson Thomas Cano, (5) the state trial court erred in overruling petitioner's objections to a hypothetical question asked during the individual voir dire of Amelia McDaniel, (6) the state trial court erred in refusing to dismiss the array based on the prosecution's violation of *Batson* equal protection principles in striking the lone remaining black member of the venire, Sharon King, (7) the state trial court erred in overruling petitioner's objection to the prosecution's definition of culpable mental states during voir dire, (8) the state trial court erred in admitting over petitioner's objection reputation testimony given by witnesses · Frank Rodriguez, Harvey Jackson, and Danny Lewis, (9) the jury instructions prevented the jury from making a reasoned moral response to relevant mitigating evidence, (10) the state trial court erred in overruling petitioner's requested jury instructions on mitigating evidence, (11) the state trial court erred in denying petitioner's request for a jury instruction on the effect of a hung jury, (12) the state trial court erred in denying petitioner's request for a definition of "deliberately" in the punishment phase jury instructions, (13) the state trial court erred in denying petitioner's motion for mistrial after the prosecution asked an improper question of witness William McGinty, (14) the state trial court erred in excluding the testimony of defense witness William Stolhanske, (15) the state trial court erred in overruling petitioner's objection to the admission of State's Exhibits 132, 133, and 134, photographs containing irrelevant and inflammatory material, (16) the state trial court erred in denying petitioner's request for a jury instruction on voluntary conduct, (17) the state trial court erred in denying petitioner's requests for jury instructions on the lesser-included offenses of felony murder, voluntary manslaughter and involuntary manslaughter, (18) there was insufficient evidence establishing petitioner intentionally killed the victim, (19) there was insufficient evidence to support the jury's verdict on the first special issue at the punishment phase, i.e., the question whether petitioner's conduct in killing the decedent had been deliberate, (20) there was insufficient evidence to support the jury's verdict on the second special issue at the punishment phase, i.e., the question whether petitioner's conduct in killing the decedent was unreasonable in response to the decedent's conduct, (21) the state trial court erred in permitting the prosecution to introduce evidence of petitioner's unadjudicated criminal conduct at the punishment phase of trial, (22) the state trial court erred in denying petitioner's request for a jury instruction at the punishment phase of trial stating it was the prosecution's burden to establish each instance of petitioner's unadjudicated criminal conduct beyond a reasonable doubt, (23) petitioner's constitutional rights were violated by the admission of unadjudicated criminal conduct at the punishment phase of petitioner's criminal trial when such evidence is not admissible at the punishment phase of non-capital offenses, and (24) the state trial court erred in permitting the state to introduce evidence of unadjudicated criminal conduct without proper notice to petitioner.

15. *See Adanandus v. Texas*, 510 U.S. 1215, 114 S.Ct. 1338, 127 L.Ed.2d 686 (1994).

16. *See* Statement of Facts from petitioner's state habeas corpus proceeding at pp. 1–27. In his initial state habeas corpus application, petitioner asserted six grounds for relief, consisting of claims that (1) petitioner's trial counsel had rendered ineffective assistance by failing to present mitigating evidence showing petitioner had suffered a head injury as a child, (2) the state trial court erroneously failed to define the term "reasonable doubt" in its jury instructions, (3) the state trial court erred in denying petitioner's requests for jury instructions on the lesser-included offenses of felony murder, voluntary manslaughter, and involuntary manslaughter, and (4) the state trial court erred in denying petitioner's request that a definition of "deliberately" be included in the punishment phase jury instructions.

an amended application for state habeas corpus relief.[17] The state trial court held an evidentiary hearing on petitioner's state habeas corpus application on November 21, 1994. At the hearing, petitioner's counsel introduced extensive medical records relating to petitioner's childhood head trauma and also testified.[18] In an Order issued January 9, 1995, the state trial court issued its findings of fact, conclusions of law, and recommended petitioner's state habeas corpus application be denied.[19] On February 21, 1995, the Texas Court of Criminal Appeals denied petitioner's state habeas corpus application in an unpublished per curiam opinion finding

the state trial court's findings and conclusions were supported by the record and denied relief on the basis of those findings and conclusions.[20]

On May 3, 1995, petitioner filed his motion for leave to proceed In Forma Pauperis and for appointment of experts,[21] motion for appointment of counsel,[22] motion for stay of execution,[23] and motion for time to amend,[24] together with an initial petition for federal habeas corpus relief, setting therein some twenty-one (21) grounds for relief.[25] In an Order issued May 4, 1995, this Court granted petitioner's motions for stay of execution, for

---

**17.** *Id.* at pp. 43–113. In his amended application for state habeas corpus relief, petitioner presented numerous grounds for relief, numbered "IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII, XVIII, XIX, XX, XXI, XXII, XXIII, XXIV, XXV, XVI, XXVII, XXVIII, XXIX, XXX, and XXXI," consisting of arguments that (1) the state trial court erred in denying petitioner's requests for jury instructions on the lesser-included offenses of felony murder, voluntary manslaughter, and involuntary manslaughter, (2) the prosecution failed to provide exculpatory and mitigating evidence to the defense, (3) petitioner's sentence was based in part on an invalid prior conviction, (4) the state trial court violated state law and equal protection principles when it refused to dismiss the entire venire after the prosecution improperly exercised a peremptory challenge to dismiss the lone remaining black from the venire panel, (5) the state trial court erred in admitting testimony of three prosecution witnesses regarding petitioner's bad reputation for being peaceful and law abiding, (6) the jury instructions deprived the jury of the opportunity to make a reasoned moral response to relevant mitigating evidence, (7) the state trial court erred in denying petitioner's requests for jury instructions on mitigating evidence, (8) the state trial court erred in denying petitioner the right to call witness William Stolhanske, (9) petitioner's forced medication violated his constitutional rights, (10) the state trial court erred in dismissing the array after it conducted a portion of the voir dire in petitioner's absence, (11) the state trial court erred in conducting a portion of the voir dire portion of trial in petitioner's absence, (12) petitioner was legally incompetent to stand trial, and (13) the state trial court erred in permitting the State to introduce evidence of unadjudicated criminal conduct at the punishment phase of trial.

**18.** The Statement of Facts from the state trial court's November 21, 1994 evidentiary hearing in petitioner's state habeas corpus proceeding is included separately with the state court records from that proceeding submitted to this Court by respondent. In addition, the Statement of Facts from petitioner's state habeas corpus proceeding also includes the transcript from an evidentiary

hearing held April 27, 1981, in state district court in Nolan County, Texas, at which the state court judge heard testimony regarding petitioner's competence to enter a guilty plea in an aggravated robbery case. *See* Statement of Facts from petitioner's state habeas corpus proceeding, at pp. 181–211.

In the interim between petitioner's state court trial and the filing of petitioner's state habeas corpus application, more specifically in November, 1990, petitioner's lead trial counsel, attorney Steven C. Hilbig, was elected Criminal District Attorney of Bexar County, Texas. Therefore, in January, 1991, the state trial court appointed a District Attorney Pro Tem to represent the state in any further proceedings in petitioner's case.

**19.** *See* Statement of Facts from petitioner's state habeas corpus proceeding, at pp. 234–42. In its findings and conclusions, the state trial court held that (1) many of petitioner's grounds for state habeas corpus relief had been addressed and disposed of on the merits in the course of petitioner's direct appeal and, therefore, did not present a basis for state habeas corpus relief, (2) petitioner's trial counsel had made a tactical decision after reviewing petitioner's medical records not to introduce same into evidence, (3) the evidence which petitioner claimed the prosecution withheld from the defense was, in fact, a public record and, therefore, available to petitioner through the exercise of due diligence, (4) petitioner had failed to present any evidence establishing he was forcibly medicated at any time relevant to his trial, and (5) petitioner had failed to present any evidence showing he was incompetent to stand trial. *Id.*

**20.** *See Ex parte Adanandus*, Writ No. 27,875–01 (Tex.Crim.App. February 21, 1995).

**21.** *See* docket entry no. 1.

**22.** *See* docket entry no. 2.

**23.** *See* docket entry no. 3.

**24.** *See* docket entry no. 4.

**25.** *See* docket entry no. 5.

appointment of counsel, and for leave and time to file an amended petition.[26]

On July 26, 1995, petitioner filed a motion requesting an evidentiary hearing.[27] On that same day, petitioner also filed an amended petition for federal habeas corpus relief in which he asserted a single, multi-faceted ground for relief alleging ineffective assistance on the part of his trial counsel.[28]

On September 12, 1995, respondent filed a pleading opposing petitioner's request for an evidentiary hearing [29] and an answer and motion for summary judgment.[30] On October 16, 1995, petitioner filed a reply to respondent's opposition to petitioner's request for an evidentiary hearing and a reply to respondent's answer and motion for summary judgment. In each of these replies, petitioner argued he had not been provided an expert witness during his state habeas corpus proceeding.[31] On November 6, 1995, this Court issued an Order directing petitioner to state on the record whether he was withdrawing all of the grounds for relief contained in his initial federal habeas corpus petition.[32] Petitioner filed a responsive pleading on November 21, 1995, advising the Court he still wished to assert all of the grounds for relief contained in his initial federal habeas corpus petition and requesting leave to file a second amended federal habeas corpus petition.[33] The Court granted this request on June 25, 1996.[34]

In his second amended federal habeas corpus petition, filed June 25, 1996, petitioner asserts some twenty-one grounds for relief consisting of the following arguments:

1. the petitioner's trial counsel rendered ineffective assistance by (a) failing to introduce evidence showing petitioner had suffered a head injury during his childhood and (b) allowing his political ambitions to result in a conflict of interest in connection with petitioner's case;

2. the state trial court erroneously failed to define the term "reasonable doubt" in the jury charge;

3. the state trial court erroneously denied petitioner's requested jury instructions at the guilt-innocence phase of trial on the lesser-included offenses of felony murder, voluntary manslaughter, and involuntary manslaughter;

4. the state trial court erroneously denied petitioner's requested definition of "deliberately" in the jury instructions at the punishment phase of trial;

5. the prosecution withheld potential exculpatory evidence from the defense relating to a prior competency hearing held in 1981 in another criminal proceeding against the petitioner;

6. petitioner's sentence was based on an invalid prior conviction;

7. the prosecution violated equal protection principles when it used a peremptory challenge to strike the last remaining black member of the jury venire;

8. the state trial court erroneously admitted the testimony of three prosecution witnesses regarding petitioner's bad reputation at the punishment phase of trial;

9. the jury instructions deprived petitioner's jury of the opportunity to make a reasoned moral response to mitigating evidence;

10. the state trial court erroneously denied petitioner's requested jury instructions regarding mitigating evidence;

11. the state trial court erroneously denied petitioner's requested jury instructions regarding the effect of a hung jury;

26. *See* docket entry no. 6.

27. *See* docket entry no. 11.

28. *See* docket entry no. 12.

29. *See* docket entry no. 17.

30. *See* docket entry no. 18.

31. *See* docket entry nos. 20 and 21, respectively.

32. *See* docket entry no. 22.

33. *See* docket entry no. 23.

34. *See* docket entry no. 24.

12. the state trial court erroneously denied petitioner's right to call witness William Stolhanske;

13. petitioner's constitutional rights were violated by his forced medication during trial;

14. the state trial court erred in conducting a portion of the voir dire portion of trial in petitioner's absence and in refusing to dismiss the array after so doing; and

15. the petitioner was incompetent to stand trial.[35]

On July 9, 1996, respondent filed a pleading arguing this federal habeas corpus proceeding is now governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996[36] and this Court must apply the provisions of that enactment to this cause despite the fact the Texas state statute which respondent identifies as satisfying the procedural prerequisites of the federal enactment did not become effective until after the disposition of petitioner's state habeas corpus application.[37]

### III. Analysis and Authorities

#### A. Ineffective Assistance Arguments

In his initial ground for federal habeas corpus relief, petitioner argues his trial counsel rendered ineffective assistance by (1) failing to investigate, develop, and present at either the guilt-innocence or punishment phases of trial evidence showing that (a) due to a head injury he suffered as a child, petitioner suffers from a neuropsychological impairment and (b) petitioner suffered from an unstable family background, verbal and physical abuse as a child, and substance abuse, but still possesses redeeming qualities and (2) allowing said trial counsel's political ambitions to create a conflict of interest which interfered with said counsel's ability to represent petitioner.[38]

#### 1. Standard of Review

The constitutional standard for determining whether a criminal defendant has been denied the effective assistance of counsel, as guaranteed by the Sixth Amendment, was announced by the Supreme Court in the case of *Strickland v. Washington*:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.[39]

In order to establish counsel's performance was constitutionally deficient, a convicted defendant must show counsel's representation "fell below an objective standard of reasonableness."[40] In so doing, a convict-

---

**35.** *See* docket entry no. 25. The listing of grounds for relief set forth in the text is a summary of the petitioner's claims and, at various points, groups together several related claims among the twenty-one grounds for relief asserted in petitioner's second amended federal habeas corpus petition.

**36.** Pub.L. No. 104–132, 110 Stat. 1214 (1996). The Fifth Circuit has already held that at least some portions of the Antiterrorism and Effective Death Penalty Act became effective on April 24, 1996. *See Mendez–Rosas v. I.N.S.*, 87 F.3d 672, 674–76 (5th Cir.1996).

**37.** *See* docket entry no. 26. For the reasons discussed at length hereinafter, it is not necessary for this Court to resolve the issue of the applicability of this new federal statute to this cause. The provisions of this recent enactment

raise considerable barriers and impediments to state prisoners seeking federal habeas corpus relief in death penalty cases. However, even if this Court applies the provisions of the law as it existed prior to the effective date of that recent enactment, petitioner is not entitled to federal habeas corpus relief in this proceeding.

**38.** *See* Petitioner's Second Amended Petition for Post–Conviction Writ of Habeas Corpus, filed June 25, 1996, docket entry no. 25, at pp. 7–17.

**39.** 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

**40.** *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S.Ct. 2464, 2473, 91 L.Ed.2d 144 (1986); *Strickland v. Washington*, 466 U.S. at 687–88, 104 S.Ct. at 2064; *Andrews v. Collins*, 21 F.3d 612,

ed defendant must carry the burden of proof and overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance.[41] The courts are extremely deferential in scrutinizing the performance of counsel and make every effort to eliminate the distorting effects of hindsight.[42] It is strongly presumed counsel has rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.[43]

An attorney's strategic choices, usually based on information supplied by the defendant and a thorough investigation of relevant facts and law, are virtually unchallengeable.[44] Counsel is required neither to advance every nonfrivolous argument nor to investigate every conceivable matter into which inquiry could be classified as nonfrivolous.[45]

█ The proper standard for evaluating counsel's performance under the Sixth Amendment is "reasonably effective assis-

621 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 908, 130 L.Ed.2d 790 (1995); *Duff–Smith v. Collins,* 973 F.2d 1175, 1182 (5th Cir. 1992), *cert. denied,* 507 U.S. 1056, 113 S.Ct. 1958, 123 L.Ed.2d 661 (1993); *Black v. Collins,* 962 F.2d 394, 401 (5th Cir.), *cert. denied,* 504 U.S. 992, 112 S.Ct. 2983, 119 L.Ed.2d 601 (1992).

**41.** *See Strickland v. Washington,* 466 U.S. at 687–91, 104 S.Ct. at 2064–66; *Belyeu v. Scott,* 67 F.3d 535, 538 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1438, 134 L.Ed.2d 559 (1996); *Loyd v. Whitley,* 977 F.2d 149, 156 (5th Cir.1992), *cert. denied,* 508 U.S. 911, 113 S.Ct. 2343, 124 L.Ed.2d 253 (1993); *Duff–Smith v. Collins,* 973 F.2d at 1182; *Drew v. Collins,* 964 F.2d 411, 422 (5th Cir.1992), *cert. denied,* 509 U.S. 925, 113 S.Ct. 3044, 125 L.Ed.2d 730 (1993); *Lincecum v. Collins,* 958 F.2d 1271, 1278 (5th Cir.), *cert. denied,* 506 U.S. 957, 113 S.Ct. 417, 121 L.Ed.2d 340 (1992); *Wilkerson v. Collins,* 950 F.2d 1054, 1064 (5th Cir.1992), *cert. denied,* 509 U.S. 921, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993); *United States v. Smith,* 915 F.2d 959, 963 (5th Cir.1990); *Ellis v. Lynaugh,* 873 F.2d 830, 839 (5th Cir.), *cert. denied,* 493 U.S. 970, 110 S.Ct. 419, 107 L.Ed.2d 384 (1989); *Crockett v. McCotter,* 796 F.2d 787, 791 (5th Cir.), *cert. denied,* 479 U.S. 1021, 107 S.Ct. 678, 93 L.Ed.2d 728 (1986). A federal habeas petitioner must carry the burden of demonstrating both counsel's deficient performance and resultant prejudice. *Burnett v. Collins,* 982 F.2d 922, 928 (5th Cir.1993); *Martin v. Maggio,* 711 F.2d 1273, 1279 (5th Cir.1983), *cert. denied,* 469 U.S. 1028, 105 S.Ct. 447, 83 L.Ed.2d 373 (1984).

**42.** *See Lockhart v. Fretwell,* 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993); *Burger v. Kemp,* 483 U.S. 776, 789, 107 S.Ct. 3114, 3123, 97 L.Ed.2d 638 (1987); *Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. at 2065; *United States v. Gaudet,* 81 F.3d 585, 592 (5th Cir.1996); *Belyeu v. Scott,* 67 F.3d at 538; *Williams v. Scott,* 35 F.3d 159, 164 (5th Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 959, 130 L.Ed.2d 901 (1995); *Williams v. Collins,* 16 F.3d 626, 631 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 42, 129 L.Ed.2d 937 (1994); *Loyd v. Whitley,* 977 F.2d at 156; *Lincecum v. Collins,* 958 F.2d at 1278; *Wilkerson v. Collins,* 950 F.2d at 1064; *McInerney v. Puckett,* 919 F.2d 350, 353

(5th Cir.1990); *Ellis v. Lynaugh,* 873 F.2d at 839; *Green v. Lynaugh,* 868 F.2d 176, 178 (5th Cir.), *cert. denied,* 493 U.S. 831, 110 S.Ct. 102, 107 L.Ed.2d 66 (1989); *Enriquez v. Procunier,* 752 F.2d 111, 114 (5th Cir.1984), *cert. denied,* 471 U.S. 1126, 105 S.Ct. 2658, 86 L.Ed.2d 274 (1985); *Ross v. Estelle,* 694 F.2d 1008, 1012 (5th Cir.1983). The deficiency prong of *Strickland* is judged by counsel's conduct under the law existing at the time of the conduct. *Westley v. Johnson,* 83 F.3d 714, 723 (5th Cir.1996) (citing *Lockhart v. Fretwell,* 506 U.S. at 372, 113 S.Ct. at 844).

**43.** *See Strickland v. Washington,* 466 U.S. at 690, 104 S.Ct. at 2066; *Duff–Smith v. Collins,* 973 F.2d at 1182; *Drew v. Collins,* 964 F.2d at 422; *Wilkerson v. Collins,* 950 F.2d at 1064–65; *Bates v. Blackburn,* 805 F.2d 569, 578 n. 7 (5th Cir. 1986), *cert. denied,* 482 U.S. 916, 107 S.Ct. 3190, 96 L.Ed.2d 678 (1987); *Martin v. McCotter,* 796 F.2d 813, 816 (5th Cir.1986), *cert. denied,* 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 985 (1987); *Lockhart v. McCotter,* 782 F.2d 1275, 1279 (5th Cir.1986), *cert. denied,* 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 827 (1987).

**44.** *See Bryant v. Scott,* 28 F.3d 1411, 1415 (5th Cir.1994) (citing *Strickland v. Washington,* 466 U.S. at 691, 104 S.Ct. at 2066).

**45.** *See Sones v. Hargett,* 61 F.3d 410, 415 n. 5 (5th Cir.1995) ("Counsel cannot be deficient for failing to press a frivolous point."); *United States v. Gibson,* 55 F.3d 173, 179 (5th Cir.1995) ("Counsel is not required by the Sixth Amendment to file meritless motions."); *Smith v. Collins,* 977 F.2d 951, 960 (5th Cir.1992), *cert. denied,* 510 U.S. 829, 114 S.Ct. 97, 126 L.Ed.2d 64 (1993) ("The defense of a criminal case is not an undertaking in which everything not prohibited is required. Nor does it contemplate the employment of wholly unlimited time and resources."); *Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir.1990) ("[C]ounsel is not required to make futile motions or objections."); *Schwander v. Blackburn,* 750 F.2d 494, 500 (5th Cir.1985) (holding defense counsel not required to investigate everyone whose name is mentioned by defendant); *Murray v. Maggio,* 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not required to engage in the filing of futile motions.").

tance." [46] "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." [47] "Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." [48] In order to establish that he has sustained prejudice, the convicted defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." [49] In addition, analysis of the second or "prejudice" prong of the *Strickland* test must include examination of whether counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair.[50] "Unreliability or unfairness does not result if

the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." [51]

■ In summary, in order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must show (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[52]

■ The two-part test of *Strickland v. Washington, supra,* has been applied by the Supreme Court and the Fifth Circuit in a wide variety of contextual challenges to the effectiveness of counsel's performance. Given the language of *Strickland* itself, the test applies to the conduct of counsel both in preparation for and at trial.[53] The test also

**46.** *Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. at 2064; *Bullock v. Whitley,* 53 F.3d 697, 700 (5th Cir.1995).

**47.** *Strickland v. Washington,* 466 U.S. at 691, 104 S.Ct. at 2066.

**48.** *Strickland v. Washington,* 466 U.S. at 692, 104 S.Ct. at 2067.

**49.** 466 U.S. at 694, 104 S.Ct. at 2068; *see also Loyd v. Whitley,* 977 F.2d at 159; *Cantu v. Collins,* 967 F.2d 1006, 1016 (5th Cir.1992), *cert. denied,* 509 U.S. 926, 113 S.Ct. 3045, 125 L.Ed.2d 730 (1993); *Drew v. Collins,* 964 F.2d at 422; *Black v. Collins,* 962 F.2d at 401; *Smith v. Puckett,* 907 F.2d 581, 584–85 (5th Cir.1990), *cert. denied,* 498 U.S. 1033, 111 S.Ct. 694, 112 L.Ed.2d 685 (1991); *Crockett v. McCotter,* 796 F.2d 787, 793–94 (5th Cir.), *cert. denied,* 479 U.S. 1021, 107 S.Ct. 678, 93 L.Ed.2d 728 (1986).

**50.** *See Lockhart v. Fretwell,* 506 U.S. 364, 368–73, 113 S.Ct. 838, 841–45, 122 L.Ed.2d 180 (1993); *Vuong v. Scott,* 62 F.3d 673, 685 (5th Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 557, 133 L.Ed.2d 458 (1995); *Armstead v. Scott,* 37 F.3d 202, 207 (5th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1709, 131 L.Ed.2d 570 (1995).

**51.** *Lockhart v. Fretwell,* 506 U.S. at 372, 113 S.Ct. at 844. Thus, prejudice is measured by current law and not by the law as it existed at the time of the alleged error. *Westley v. Johnson,* 83 F.3d at 723 (citing *Lockhart v. Fretwell,* 506 U.S. at 372–73, 113 S.Ct. at 844).

**52.** *See Kimmelman v. Morrison,* 477 U.S. 365, 375, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305

(1986); *Darden v. Wainwright,* 477 U.S. at 184, 106 S.Ct. at 2473; *Williams v. Collins,* 16 F.3d at 631; *United States v. Bounds,* 943 F.2d 541, 544 (5th Cir.1991). In the course of the latter portion of this inquiry, the Court must consider not merely whether the outcome of the defendant's case would have been different but also whether counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair. *See Lockhart v. Fretwell,* 506 U.S. at 368–73, 113 S.Ct. at 841–45; *Armstead v. Scott,* 37 F.3d at 207.

**53.** *See, e.g., Martin v. McCotter,* 796 F.2d at 816–17 (holding *Strickland* test applied to both trial and sentencing phases of criminal proceeding); *Nealy v. Cabana,* 764 F.2d 1173, 1178–80 (5th Cir.1985). An attorney's failure to investigate the case against the defendant and to interview witnesses can support a finding of ineffective assistance. *Bryant v. Scott,* 28 F.3d at 1415. However, in order to establish counsel was rendered ineffective by virtue of a failure to investigate the case against a defendant or to discover and present evidence, a convicted defendant must do more than merely allege a failure to investigate; he must state with specificity what the investigation would have revealed, what evidence would have resulted from that investigation, and how such would have altered the outcome of the case. *See Anderson v. Collins,* 18 F.3d 1208, 1221 (5th Cir.1994); *Nelson v. Hargett,* 989 F.2d 847, 850 (5th Cir.1993); *United States v. Green,* 882 F.2d 999, 1003 (5th Cir. 1989); *Lockhart v. McCotter,* 782 F.2d 1275, 1282–83 (5th Cir.1986), *cert. denied,* 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 827 (1987); *Alexander v. McCotter,* 775 F.2d 595, 603 (5th

has been applied to challenges to guilty pleas based on ineffective assistance of counsel allegations.[54] Of course, the two-part test applies to sentencing proceedings because the *Strickland* opinion itself dealt with a sentencing proceeding.[55] Additionally, the two-part *Strickland* test has also been applied to the performance of counsel on appeal.[56]

 Because a convicted defendant must satisfy both prongs of the *Strickland*

test, a failure to establish either deficient performance or prejudice under that test makes it unnecessary to examine the other prong.[57] Therefore, a failure to establish that counsel's performance fell below an objective standard of reasonableness avoids the need to consider the issue of prejudice.[58] It is also unnecessary to consider whether counsel's performance was deficient when there is an insufficient showing of preju-

Cir.1985); *Schwander v. Blackburn,* 750 F.2d 494, 499–500 (5th Cir.1985); *Ross v. Estelle,* 694 F.2d 1008, 1011 (5th Cir.1983).

**54.** *See Hill v. Lockhart,* 474 U.S. 52, 58–59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); *Randle v. Scott,* 43 F.3d 221, 225 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2259, 132 L.Ed.2d 265 (1995); *Armstead v. Scott,* 37 F.3d at 206; *Theriot v. Whitley,* 18 F.3d 311, 313 (5th Cir. 1994); *Nelson v. Hargett,* 989 F.2d at 850; *United States v. Bounds,* 943 F.2d at 544; *Carter v. Collins,* 918 F.2d 1198, 1200 (5th Cir.1990); *United States v. Smith,* 915 F.2d 959, 963 (5th Cir.1990); *Uresti v. Lynaugh,* 821 F.2d 1099, 1101 (5th Cir.1987). To demonstrate prejudice in the context of a guilty plea, the defendant must show there is a reasonable probability that, but for the alleged errors of his attorney, he would not have pleaded guilty but would have insisted on going to trial. *See Hill v. Lockhart,* 474 U.S. at 58–59, 106 S.Ct. at 370; *James v. Cain,* 56 F.3d 662, 667 (5th Cir.1995); *Randle v. Scott,* 43 F.3d at 225; *Armstead v. Scott,* 37 F.3d at 206; *Theriot v. Whitley,* 18 F.3d at 313; *Nelson v. Hargett,* 989 F.2d at 850; *United States v. Bounds,* 943 F.2d at 544; *Carter v. Collins,* 918 F.2d at 1200; *Czere v. Butler,* 833 F.2d 59, 63 (5th Cir.1987).

**55.** *See Burger v. Kemp,* 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987); *Belyeu v. Scott,* 67 F.3d at 540–42 (applying both prongs of *Strickland* test to ineffective assistance claims regarding sentencing phase of capital murder trial); *Andrews v. Collins,* 21 F.3d at 623–25; *Williams v. Collins,* 16 F.3d at 631–32; *Spriggs v. Collins,* 993 F.2d 85, 88 (5th Cir.1993); *Wilcher v. Hargett,* 978 F.2d 872, 877 (5th Cir.1992), *cert. denied,* 510 U.S. 829, 114 S.Ct. 96, 126 L.Ed.2d 63 (1993); *Cantu v. Collins,* 967 F.2d at 1016–17; *Drew v. Collins,* 964 F.2d at 422–23; *Black v. Collins,* 962 F.2d at 401–04; *Duhamel v. Collins,* 955 F.2d 962, 965–66 (5th Cir.1992); *Wilkerson v. Collins,* 950 F.2d at 1064–65; *United States v. Hoskins,* 910 F.2d 309, 310–11 (5th Cir.1990); *Bell v. Lynaugh,* 828 F.2d 1085, 1088 (5th Cir.), *cert. denied,* 484 U.S. 933, 108 S.Ct. 310, 98 L.Ed.2d 268 (1987); *Crockett v. McCotter,* 796 F.2d at 791 n. 1.

In a capital sentencing proceeding, the prejudice analysis focuses on whether there is a reasonable probability that, absent counsel's errors, the sentencer would have concluded that the

balance of aggravating and mitigating factors did not warrant death. *See Strickland v. Washington,* 466 U.S. at 695, 104 S.Ct. at 2069; *Belyeu v. Scott,* 67 F.3d at 538.

**56.** *See Andrews v. Collins,* 21 F.3d at 625; *Williams v. Collins,* 16 F.3d at 635; *Cantu v. Collins,* 967 F.2d at 1017; *Duhamel v. Collins,* 955 F.2d at 967–68; *Sharp v. Puckett,* 930 F.2d 450, 451 (5th Cir.1991); *Lofton v. Whitley,* 905 F.2d 885, 887–88 (5th Cir.1990); *McCoy v. Lynaugh,* 874 F.2d 954, 962–63 (5th Cir.1989); *Ellis v. Lynaugh,* 873 F.2d at 840; *Wicker v. McCotter,* 783 F.2d 487, 497 (5th Cir.), *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3310, 92 L.Ed.2d 723 (1986). *But see Penson v. Ohio,* 488 U.S. 75, 86–89, 109 S.Ct. 346, 353–55, 102 L.Ed.2d 300 (1988) (holding prejudice prong of *Strickland* test does not apply in cases where appellate counsel withdraws without filing the brief suggested in *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967)); *United States v. Riascos,* 76 F.3d 93, 94 (5th Cir.1996) (holding complete denial of counsel on appeal, whether actual or constructive, creates presumption of prejudice); *Moss v. Collins,* 963 F.2d 44, 47 (5th Cir.1992), *cert. denied,* 506 U.S. 1055, 113 S.Ct. 983, 122 L.Ed.2d 136 (1993) (holding actual or constructive denial of counsel on appeal is legally presumed to result in prejudice).

**57.** *See Strickland v. Washington,* 466 U.S. at 700, 104 S.Ct. at 2071; *United States v. Seyfert,* 67 F.3d 544, 547 (5th Cir.1995); *Armstead v. Scott,* 37 F.3d at 210; *Spriggs v. Collins,* 993 F.2d at 87; *Black v. Collins,* 962 F.2d at 401; *United States v. Pierce,* 959 F.2d 1297, 1302 (5th Cir.), *cert. denied,* 506 U.S. 1007, 113 S.Ct. 621, 121 L.Ed.2d 554 (1992); *Buxton v. Lynaugh,* 879 F.2d 140, 142 (5th Cir.1989), *cert. denied,* 497 U.S. 1032, 110 S.Ct. 3295, 111 L.Ed.2d 803 (1990); *Earvin v. Lynaugh,* 860 F.2d 623, 627 (5th Cir.1988), *cert. denied,* 489 U.S. 1091, 109 S.Ct. 1558, 103 L.Ed.2d 861 (1989); *Thomas v. Lynaugh,* 812 F.2d 225, 229 (5th Cir.), *cert. denied,* 484 U.S. 842, 108 S.Ct. 132, 98 L.Ed.2d 89 (1987); *see also Burnett v. Collins,* 982 F.2d at 928 (holding defendant bears burden of proof on both prongs of *Strickland* test).

**58.** *See United States v. Hoskins,* 910 F.2d at 311; *Thomas v. Lynaugh,* 812 F.2d at 229–30.

dice.[59] Mere conclusory allegations in support of claims of ineffective assistance of counsel are insufficient, as a matter of law, to raise a constitutional issue.[60]

### 2. *The Setting*

The deficiency prong of *Strickland* is judged by counsel's conduct under the law existing at the time of the conduct.[61] Prejudice within the meaning of *Strickland* is measured by current law and not by the law as it existed at the time of the alleged error.[62] At the time of petitioner's capital murder trial in May of 1989, the Texas capital sentencing procedure called for a bifurcated trial in which the guilt or innocence phase of the trial occurred prior to any consideration of punishment by the jury. If the jury found the defendant guilty of capital murder, the same jury would remain empaneled and the punishment phase of the trial would proceed.[63] At the punishment phase of the capital trial, the Texas capital sentencing statute directed the trial court to submit the following issues to the jury:

(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society;

(3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.[64]

At the time of petitioner's trial, the Texas capital sentencing statute directed the trial court to instruct the jury that "(1) it may not answer any issue 'yes' unless it agrees unanimously; and (2) it may not answer any issue 'no' unless 10 or more jurors agree." [65] The Texas capital sentencing statute also provided as follows:

If the jury returns an affirmative finding on each issue submitted under this article, the court shall sentence the defendant to death. If the jury returns a negative finding or is unable to answer any issue submitted under this article, the court shall sentence the defendant to confinement in

**59.** *See Black v. Collins,* 962 F.2d at 401; *United States v. Pierce,* 959 F.2d at 1302; *Carter v. Collins,* 918 F.2d at 1203; *Smith v. Puckett,* 907 F.2d at 584; *Bates v. Blackburn,* 805 F.2d 569, 578 (5th Cir.1986), *cert. denied,* 482 U.S. 916, 107 S.Ct. 3190, 96 L.Ed.2d 678 (1987); *Martin v. McCotter,* 796 F.2d at 821.

**60.** *See Kinnamon v. Scott,* 40 F.3d 731, 735 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 660, 130 L.Ed.2d 595 (1994) (holding petitioner's speculative complaints of ineffective assistance by appellate counsel did not warrant federal habeas relief); *Anderson v. Collins,* 18 F.3d 1208, 1221 (5th Cir.1994) (holding that without specific, affirmative showing of precisely what evidence or testimony was rendered unavailable due to trial counsel's failure to investigate, develop, and present same, i.e., a showing of exactly what the missing evidence or testimony would have been, court cannot even begin to apply *Strickland* analysis because it is very difficult to determine whether defendant was prejudiced by any such deficiencies in counsel's performance); *United States v. Pineda,* 988 F.2d 22, 23 (5th Cir.1993); *Koch v. Puckett,* 907 F.2d 524, 530 (5th Cir.1990); *Russell v. Lynaugh,* 892 F.2d 1205, 1213 (5th Cir.1989), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2909, 115 L.Ed.2d 1073 (1991);

*United States v. Woods,* 870 F.2d 285, 288 n. 5 (5th Cir.1989); *Ross v. Estelle,* 694 F.2d at 1011–12 & n. 2.

**61.** *Westley v. Johnson,* 83 F.3d 714, 723 (5th Cir.1996) (citing *Lockhart v. Fretwell,* 506 U.S. at 372, 113 S.Ct. at 844).

**62.** *Westley v. Johnson,* 83 F.3d at 723 (citing *Lockhart v. Fretwell,* 506 U.S. at 372–73, 113 S.Ct. at 844).

**63.** *See* TEX.CODE CRIM.PROC.ANN. art. 37.071 (Vernon 1981). In response to the Supreme Court's opinion in *Penry v. Lynaugh, infra,* the Texas Legislature amended the Texas capital sentencing scheme significantly effective September 1, 1991. *See* TEX. CODE CRIM.PROC.ANN. art. 37.071 (Vernon Supp.1996); *Sawyers v. Collins,* 986 F.2d 1493, 1497 n. 4 (5th Cir.), *cert. denied,* 508 U.S. 933, 113 S.Ct. 2405, 124 L.Ed.2d 300 (1993).

**64.** *See* TEX.CODE CRIM.PROC.ANN. art. 37.071(b) (Vernon 1981).

**65.** *See* TEX.CODE CRIM.PROC.ANN. art. 37.071(d) (Vernon 1981).

the Texas Department of Corrections for life.[66]

Prior to the time of petitioner's trial, a plurality of the Supreme Court had upheld the foregoing Texas capital sentencing scheme against a facial attack in *Jurek v. Texas*.[67] In *Jurek*, The Supreme Court plurality held:

a sentencing system that allowed the jury to consider only aggravating circumstances would almost certainly fall short of providing the individualized sentencing determination that we today held in *Woodson v. North Carolina* [428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976)], to be required by the Eighth and Fourteenth Amendments. * * *

A jury must be allowed to consider on the basis of all relevant evidence not only why a death penalty should be imposed, but also why it should not be imposed.

Thus, in order to meet the requirements of the Eighth and Fourteenth Amendments, a capital-sentencing system must allow the sentencing authority to consider mitigating circumstances.[68]

The Supreme Court also reviewed the opinions of the Texas Court of Criminal Appeals and interpreted them as allowing consideration of a wide range of mitigating circumstances under the second special issue, i.e., the inquiry relating to the future dangerousness of the defendant, in the course of the punishment phase of a Texas capital murder trial.[69] The Supreme Court plurality's decision in *Jurek* was later adopted by the a majority of that Court in *Eddings v. Oklahoma*.[70]

Petitioner was tried in May of 1989 prior to the issuance by the United States Supreme Court of its opinion in *Penry v. Lynaugh*.[71] In *Penry*, the Supreme Court held the Texas capital sentencing scheme unconstitutional as applied to a defendant who had introduced evidence of his abusive childhood and mental retardation.[72] On June 26, 1989, more than a month after the petitioner's trial ended, the Supreme Court majority concluded in *Penry* that, in answering the three special issues submitted to it during the punishment phase of Penry's trial, the state court jury had not been able to consider and give effect to all of Penry's mitigating evidence "without any jury instructions on mitigating evidence."[73] However, in subsequent decisions from Texas and other states, the

---

**66.** *See* Act effective June 14, 1973, 63rd Leg., ch. 426, art. 3, § 1, *amended by* Act effective August 31, 1981, 67th Leg., ch. 725, § 1, *amended by* Act effective September 1, 1985, 69th Leg., ch. 44, § 2 (current version at Tex.Code Crim.Proc. art. 37.071(2)(g) (Vernon Supp.1996)).

**67.** 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976).

**68.** *Jurek v. Texas*, 428 U.S. at 271, 96 S.Ct. at 2956.

**69.** *See Jurek v. Texas*, 428 U.S. at 272–73, 96 S.Ct. at 2956–57. In a more recent opinion, the Supreme Court has again emphasized the breadth of the Texas capital sentencing special issues:

In determining the likelihood that the defendant would be a continuing threat to society, the jury could consider whether the defendant had a significant criminal record. It could consider the range and severity of his prior criminal conduct. It could further look to the age of the defendant and whether or not at the time of the commission of the offense he was acting under duress or under the domination of another. It could also consider whether the defendant was under an extreme form of mental or emotional pressure, something less, perhaps, than insanity, but more than the emo-

tions of the average man, however inflamed, could withstand.

*Johnson v. Texas*, 509 U.S. 350, 363, 113 S.Ct. 2658, 2666, 125 L.Ed.2d 290 (1993) (quoting *Jurek v. Texas*, 428 U.S. at 272–73, 96 S.Ct. at 2956–57).

**70.** 455 U.S. 104, 113–14, 102 S.Ct. 869, 876–77, 71 L.Ed.2d 1 (1982).

**71.** 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

**72.** *See Penry v. Lynaugh*, 492 U.S. at 309, 109 S.Ct. at 2941–42. Penry introduced evidence during his state court trial he suffered from organic brain disorder and mental retardation. *Id.* Penry also introduced expert testimony that these conditions made it impossible for him to appreciate the wrongfulness of his conduct or to conform his conduct to the law. *Id.* Finally, Penry introduced evidence that, when he was child, his mother frequently beat him over the head with a belt and he was routinely locked in his room without access to the toilet for long periods of time. *Id.*

**73.** *See Penry v. Lynaugh*, 492 U.S. at 322, 109 S.Ct. at 2948.

Supreme Court has narrowed the holding in *Penry*.[74]

In fact, in 1993, the Supreme Court held its opinion in *Penry* should not be construed as broadly suggesting the invalidity of the Texas special issue framework.[75] Later the same year, the Supreme Court upheld a Texas prisoner's capital murder conviction and death sentence against a claim that the former Texas capital murder statute precluded the jury from considering and giving effect to mitigating evidence of the defendant's youth at the time of his offense.[76] Thus, while a majority of the Supreme Court has not formally rejected its analysis in *Penry*, the Court has taken great pains in subsequent opinions to narrow the *Penry* holding.[77]

As explained above, petitioner's claims of ineffective assistance must be examined, first, in connection with the first prong of *Strickland* with due recognition of the fact petitioner was tried before the Supreme Court's opinion in *Penry* and, second, in conducting the prejudice analysis full recognition must be given to the many subsequent Supreme Court and Fifth Circuit opinions narrowing the *Penry* holding.

### 3. *Failing to Develop and Introduce Mitigating Evidence*

Prior to petitioner's trial, petitioner's trial counsel, Steven Hilbig, requested and obtained a mental examination of the petitioner by psychiatrist Dr. Raymond M. Costello.[78]

#### a. *The Evidence in Question*

Dr. Costello's report includes observations, among others, that (1) he conducted a four and one-half hour face-to-face interview with petitioner on July 12, 1988, (2) petitioner understood all instructions, worked consistently without fatigue, and showed no obvious signs of dysfunction or injury except for a vocal tremor, occasional inarticulation of words, and a scar running lengthwise on his skull at the hairline above the right ear, (3) petitioner indicated he had acquainted himself with the law by reading books and talking with other inmates about the law, the judicial process, and police conduct, (4) petitioner understood the nature of the proceeding against him, was familiar with the judicial process, and understood the role of his attorney and the nature of the attorney-client privilege, (5) petitioner stated a metal plate was implanted in his head after he suffered a head injury in a horseback-riding accident and thereafter, his behavior deteriorated and

**74.** *See Arave v. Creech*, 507 U.S. 463, 470–71, 113 S.Ct. 1534, 1540–41, 123 L.Ed.2d 188 (1993) (holding that to satisfy Eighth and Fourteenth Amendments, capital sentencing scheme must suitably direct and limit sentencer's discretion so as to minimize risk of wholly arbitrary and capricious action and limits on sentencer's discretion must constitute clear and objective standards that provide "specific and detailed guidance" and make rationally reviewable the process for imposing death penalty); *Saffle v. Parks*, 494 U.S. 484, 491–93, 110 S.Ct. 1257, 1261–63, 108 L.Ed.2d 415 (1990) (holding that within certain parameters, State is free to channel or focus jury's consideration of defendant's mitigating evidence and emphasizing that "above all, capital sentencing must be reliable, accurate, and nonarbitrary"); *Boyde v. California*, 494 U.S. 370, 380, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990) (holding defendant must show more than that capital sentencing scheme might have resulted in jury being prevented from considering mitigating evidence; petitioner must show reasonable likelihood that such actually occurred).

**75.** *See Graham v. Collins*, 506 U.S. 461, 474, 113 S.Ct. 892, 901, 122 L.Ed.2d 260 (1993).

**76.** *See Johnson v. Texas*, 509 U.S. 350, 368–69, 113 S.Ct. 2658, 2669–70, 125 L.Ed.2d 290 (1993). The Supreme Court emphasized in *Johnson* that its previous opinions do not require that "a jury must be able to dispense mercy on the basis of a sympathetic response to the defendant." *Johnson v. Texas*, 509 U.S. at 371–72, 113 S.Ct. at 2671.

**77.** *See Johnson v. Texas*, 509 U.S. at 371–72, 113 S.Ct. at 2671 (rejecting contention that *Penry* instruction is necessary in every case in which defendant offers mitigating evidence that has some arguable relevance beyond the special issues and emphasizing that its previous opinions do not require that jury be able to dispense mercy on basis of sympathetic response to defendant); *Graham v. Collins*, 506 U.S. at 476–77, 113 S.Ct. at 902 (rejecting contention that *Penry* instruction is necessary in every case in which defendant offers mitigating evidence that has some arguable relevance beyond the special issues).

**78.** A copy of Dr. Costello's report on his July 12, 1988 examination of the petitioner appears as Exhibit 6 attached to Petitioner's Second Amended Petition for Post–Conviction Writ of Habeas Corpus, filed June 25, 1996, docket entry no. 25.

became more erratic, (6) he had difficulty concentrating and dropped out of school after completing the tenth grade, (7) petitioner experienced periods of lost consciousness following his accident but was not diagnosed with epilepsy until 1978 or 1979 while incarcerated at the Bexar County Jail, (8) he was hospitalized in Chicago in 1986 after he again experienced a period of unconsciousness, (9) petitioner subsequently refused to submit to a CAT-scan, (10) petitioner characterized his own criminal conduct as impersonal acts of violence toward society as a whole similar in the nature to the actions of an "independent businessman," and (11) petitioner performed very well on nearly every neuropsychological test, demonstrating (a) the ability to think abstractly and symbolically, (b) an exceptional memory for what he heard, (c) excellent learning ability, (d) good concentration, (e) the ability to catch on to novel tasks quickly, (f) an average intelligence, but (g) poor memory for visual symbolic information (which Dr. Costello linked to petitioner's right parietal head injury).[79] Dr. Costello concluded (1) petitioner had good ability to assess reality, to organize information, to process or think about information, to problem-solve, and to learn, (2) petitioner's ability to plan and execute a rational course of action was not in question, (3) if a life-style change toward criminal activity pre-dated petitioner's head injury, use of the head injury for mitigation purposes would be less plausible and would have to include evidence showing petitioner's criminality was not a simple process of his unique maturation into adulthood, (4) there was no information indicating petitioner was unable to assist his attorney in the preparation of petitioner's defense, (5) there was no information indicating petitioner lacked a ra-

tional and factual understanding of the proceedings against him, and (6) there was no information suggesting petitioner would not continue in his criminal career.[80]

In addition to the foregoing information, attorney Hilbig met and consulted extensively with petitioner to discuss the case and explore defensive strategies.[81] Nothing in Dr. Costello's report or in any of his conferences with petitioner gave attorney Hilbig any reason to believe he should file a motion challenging petitioner's mental competence.[82] In addition, attorney Hilbig reviewed petitioner's medical records from the Austin State School. These records addressed petitioner's childhood head injury from the horseback-riding accident, the implanting of a metal plate in petitioner's head, and petitioner's mental health both prior to and following that accident.[83] Attorney Hilbig made a tactical decision not to introduce those records into evidence because (1) strategically, the focus of the defense at the guilt-innocence phase of trial was on whether petitioner had acted intentionally and, at the punishment phase, on whether petitioner had acted deliberately in shooting the decedent, (2) the records in question contained information that could have been harmful to the petitioner because they arguably showed petitioner had engaged in violent behavior prior to the date of his head injury, i.e., petitioner had taken knives to school, threatened other students, and directed profanity toward teachers prior to his head injury, and (3) the records contained information showing that no specific behavioral or intellectual changes appeared to have resulted from petitioner's head injury and parietal plate implant.[84]

79. *See* Exhibit 6 attached to Petitioner's Second Amended Petition for Post–Conviction Writ of Habeas Corpus, filed June 25, 1996, docket entry no. 25.

80. *Id.*

81. *See* Statement of Facts from the evidentiary hearing held November 21, 1994, in petitioner's state habeas corpus proceeding, Testimony of Steven C. Hilbig, at pp. 33–41.

82. *Id.* at pp. 34–35 and 40–41.

83. *Id.* at pp. 43–49. Contrary to the suggestions contained in petitioner's federal habeas corpus

petitions, attorney Hilbig testified during the hearing in petitioner's state habeas corpus proceeding that the petitioner's medical records which he reviewed had been obtained by the defense investigator Charles Lowe, not from the Bexar County District Attorney. *Id.* at p. 43.

84. *Id.* at pp. 44–49. Petitioner's medical records from the Austin State School, which attorney Hilbig reviewed prior to trial and which were also in the possession of the prosecution, reveal petitioner had a long history of violent and aggressive behavior before he suffered his head injury in a horseback-riding accident in March, 1969. More specifically, those records reveal (1)

At the request of petitioner's counsel in this federal habeas corpus proceeding, petitioner was examined in June, 1995 by psychologist Dr. Robert Geffner who, with the assistance of another person, prepared a report styled "Neuropsychological and Psychological Evaluation." [85] That report contains observations, among others, that (1) petitioner was the youngest of seven children, (2) the brother to whom petitioner was the closest and who was petitioner's role model, Elmer Adanandus, was convicted and sent to the penitentiary in January, 1970 for armed robbery, (3) petitioner was sent to the Austin State School in September, 1970 with a diagnosis of borderline mental retardation, but an IQ test showed petitioner was in the average range of intellectual ability, (4) petitioner was diagnosed at the time of his discharge from the Austin State School as suffering from a "non-psychotic organic brain syndrome with a personality disorder, NOS" possibly resulting from petitioner's skull fracture in the right parietal region and the insertion of a plate in petitioner's head in July, 1970, (5) medical records showed petitioner had undergone another craniotomy in 1974, possibly following a second head injury sustained in a motorcycle accident; petitioner began to experience headaches and a metallic cranialplasty device was placed in the right posterior parietal portion of petitioner's skull, (6) a CAT-scan conducted in December, 1993 showed no intracranial abnormalities, (7) petitioner's medical records from state prison and Bexar County indicated a long history of non-specific seizure disorder for which petitioner had been treated with Phenobarbital and Dilantin and petitioner had been treated in state prison with Midrin for chronic migraine headaches, (8) petitioner's conduct disorder behaviors appear to predate his head injury but may have exacerbated petitioner's condition, (9) petitioner completed only the ninth grade but earned a GED while incarcerated, (10) petitioner was employed for one year as a dishwasher when he was approximately 16-years-old, has also held other low-skill jobs, such as a baggage and freight handler for American Airlines, and worked for two years at an iron foundry, (11) petitioner once again tested within the normal range of intellectual functioning and within the normal range on the vast majority of neuropsychological tests administered, (12) there were some indications of a mild neuropsychological impairment, particularly in the areas of fine motor skills, abstract reasoning, and concept formation, (13) psychological testing revealed petitioner (a) is currently pessimistic, depressed, and possibly insecure in interpersonal relationships, (b) suffers from low self-esteem, marked anxiety, and possibly a thought disorder, (c) had attempted to injure himself on one or more occasions, (d) has difficulty with planning and judgment, (e) may also have difficulty controlling impulsiveness, (f) can best be described as having a confused self-identity, perfectionistic traits, feelings of recklessness and uselessness, and tendencies toward being a loner with unstable relationships, (g) displays a tendency toward insecurity, indecisiveness, and repression, (h) is motivated by a desire to strive for and achieve power, and (i) may suffer from significant trauma resulting in anxiety, depression, sleep distur-

petitioner burned his hands with lighter fluid shortly after his mother's wedding to petitioner's stepfather Namon Davis in 1965, (2) as early as 1966, petitioner began to skip school and get into enough trouble at school to be periodically suspended, (3) between ages 11 and 13 he grew destructive of teachers' property and fought with other children in school, (4) on an unspecified date he stole a bicycle and fell, was struck by a car, hospitalized for eleven days, and underwent unspecified surgery, (5) at age 12 he stole pencils from school and was warned by juvenile authorities, (6) in grade seven he was expelled from school, (7) in grade eight he went to school only four months, bought knives with his lunch money, threatened other students, and directed profanity at teachers, (8) at age 13, he kept stealing to buy knives and grew more oppositional, and

(9) shortly before Easter, 1969, he left school, tried to ride horses, hit his head, subsequently had two operations, and ignored doctor's advice to abstain from football and other heavy sports. The foregoing is a summary of some of the information included in the September 25, 1970 admissions evaluation report on petitioner prepared upon his admission to the Austin State School and a March 13, 1971 social service survey included among petitioner's medical records from the Austin State School.

**85.** A copy of that report appears as Exhibit 5 attached to Petitioner's Second Amended Petition for Post–Conviction Writ of Habeas Corpus, filed June 25, 1996, docket entry no. 25.

bance, and sexual difficulties, (14) petitioner is currently experiencing significant emotional distress as well as mild neuropsychological impairment that appears to have produced significant disruptions in his behavior and functioning,[86] (15) given petitioner's history of impulsive behavior, interpersonal conflicts, polysubstance abuse, and personality dysfunction, petitioner may have organic personality disorder, (16) the decline in petitioner's IQ score since 1970 may indicate a reduction in intellectual functioning possibly caused by a head injury in the mid–1970's, (17) petitioner admitted to being prone to explosive and impulsive behaviors and his test scores indicate the possibility of an intermittent explosive disorder that may be related to childhood abuse or organic processes affecting neuropsychological functioning, (18) these disorders could lead to violent impulsive acts during periods of situational stress, (19) petitioner's improved performance on some tests may be due to his living in a structured environment without the opportunity for substance abuse, (20) at the time of his offense in 1988, petitioner likely was suffering from an even greater loss of functional and cognitive abilities than at present, probably exacerbated by petitioner's psychological disturbances and polysubstance abuse, (21) those conditions likely rendered petitioner incapable of coping with stress and conflicts, (22) in 1988, petitioner likely suffered from mild to moderate brain impairment while simultaneously suffering from severe emotional and psychological disturbances, and (23) with proper treatment and structuring of petitioner's environment, it is unlikely petitioner would be a danger to himself or others.[87]

### b. At the Guilt–Innocence Phase

Petitioner argues his trial counsel should have introduced evidence of petitioner's head injuries and neuropsychological deficiencies in mitigation at the guilt-innocence phase of trial.

### (1) Deficient Performance

■ As previously discussed, the deficiency prong of Strickland is judged by counsel's conduct under the law existing at the time of the conduct.[88] Based on the foregoing evidence, the tactical decision by petitioner's trial counsel not to assert either a diminished capacity defense or some other defense premised upon petitioner's childhood head injury at the guilt-innocence phase of trial did not cause the performance of petitioner's trial counsel to "fall below an objective standard of reasonableness." On the contrary, based on the information then available to petitioner's trial counsel, the tactical decision not to assert either of these defenses at the guilt-innocence phase of trial fell well within the very broad range of tactical decision-making to which this Court must give deference. Petitioner's trial counsel reviewed petitioner's medical records from the Austin State School as well as Dr. Costello's report and reasonably concluded that either a diminished capacity defense or a defense premised on petitioner's childhood head injury could have been readily negated by petitioner's medical history and the results of Dr. Costello's examination. It is strongly presumed counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.[89]

Even assuming further independent investigation by petitioner's trial counsel into petitioner's psychosocial background in 1989 would have revealed all of the information contained in Dr. Geffner's 1995 report, the tactical decision by attorney Hilbig not to

---

86. In view of the repeated references to anxiety, depression, low self-esteem, and a pessimistic attitude included in petitioner's evaluation, it is indeed curious Dr. Geffner made virtually no mention in his report of the possible psychological implications of the fact that, at the time of testing, petitioner had spent the past six years of his life on death row.

87. See Exhibit 5 attached to Petitioner's Second Amended Petition for Post–Conviction Writ of Habeas Corpus, filed June 25, 1996, docket entry no. 25.

88. Westley v. Johnson, 83 F.3d at 723 (citing Lockhart v. Fretwell, 506 U.S. at 372, 113 S.Ct. at 844).

89. See Strickland v. Washington, 466 U.S. at 690, 104 S.Ct. at 2066; Duff–Smith v. Collins, 973 F.2d at 1182; Drew v. Collins, 964 F.2d at 422; Wilkerson v. Collins, 950 F.2d at 1064–65; Bates v. Blackburn, 805 F.2d at 578 n. 7; Martin v. McCotter, 796 F.2d at 816; Lockhart v. McCotter, 782 F.2d at 1279.

attempt to use petitioner's head injuries as the basis for a defense at the guilt-innocence phase of trial was well within the realm of reasonable trial strategy. Introduction by petitioner's defense counsel of such psychological evidence at the guilt-innocence phase of trial would, necessarily, have opened the door to the admission of testimony and other evidence concerning petitioner's entire criminal history, including his prior armed robberies. It was well within the parameters of a sound trial strategy for petitioner's defense counsel to have avoided a course of action which would have permitted the prosecution to introduce evidence of petitioner's prior criminal and violent acts at the guilt-innocence phase of petitioner's capital murder trial. Furthermore, the conclusions regarding petitioner's capacity for planning and executing a course of action contained in Dr. Geffner's 1995 report are inconsistent with the conclusions contained in the report generated by Dr. Costello in 1988. Moreover, petitioner has not alleged facts showing attorney Hilbig's reliance upon Dr. Costello's conclusions was unreasonable or unjustified. In fact, attorney Hilbig reviewed petitioner's medical records from the Austin State School, Dr. Costello's report, conferred extensively with petitioner, and concluded there was no legitimate basis for a plea of insanity or a claim of mental incompetence. Therefore, attorney Hilbig was not required to conduct additional investigation into petitioner's psychological condition.[90] For the foregoing reasons, the failure of petitioner's trial counsel to conduct further investigation into petitioner's psychological and mental condition and to develop and introduce evidence at the guilt-innocence phase of trial relating to petitioner's head injuries did not cause the performance of said counsel to fall below an objective level of reasonableness. Thus, this aspect of petitioner's ineffective claim fails to satisfy the initial prong of *Strickland.*

### (2) *Prejudice*

■ In addition, despite the length and breadth of Dr. Geffner's report, nothing in that report clearly establishes petitioner was incapable on January 28, 1988, of forming the intent to either rob a bank or shoot anyone who got in his way. As explained above, there was no genuine dispute petitioner robbed the bank and shot the decedent when the decedent attempted to stop the petitioner from leaving the bank. Instead, the critical issue at the guilt-innocence phase of trial was whether the actual shooting had been an intentional, as opposed to an accidental or negligent, act. The evidence introduced at the guilt-innocence phase of trial included photographs of the robbery and shooting taken by bank security cameras, as well as extensive eyewitness testimony. This evidence established that (1) petitioner planned his actions with forethought, first inspecting the bank the week before the robbery and meticulously printing a written note that directed the bank teller to take specific actions and included very specific threats, (2) on January 28, 1988, petitioner entered the bank with a fully loaded semiautomatic pistol and a bag concealed inside an expandable file folder, and made verbal and written threats on the life of bank teller Patricia Martinez, (3) petitioner obtained approximately thirteen thousand dollars from Martinez and began to walk away very quickly from Martinez toward the door, (4) after Martinez began yelling she had been robbed and threw a small sign at petitioner, petitioner pulled a gun from the waistband of his pants as he attempted to leave the bank, (5) Vernon Hanan attempted to tackle petitioner, petitioner dropped the bag containing the money, and the two men wrestled with each other from the bank lobby into the foyer, (5) petitioner pushed Hanan away from himself, (6) petitioner pointed his gun at Hanan, (7) petitioner pulled the trigger of his gun, which had a heavy trigger pull, and (8) petitioner fatally shot Hanan through the forearm, into the chest, and through the heart from a distance of approximately two feet while Hanan was falling toward a sitting position.[91] Nothing

**90.** *See Smith v. Collins,* 977 F.2d at 960 ("The defense of a criminal case is not an undertaking in which everything not prohibited is required. Nor does it contemplate the employment of wholly unlimited time and resources.").

**91.** *See* Statement of Facts from petitioner's state court trial, Volume 17 of 27, Testimony of Judy K. Hilton, at pp. 5230–37; Volume 18 of 27, Testimony of Rita Perez, at pp. 5640–52; Volume 18 of 27, Testimony of Patricia Martinez, at pp.

in Dr. Geffner's report indicates petitioner was mentally incompetent or otherwise incapable, on January 28, 1988, of intentionally performing any of the foregoing acts. Petitioner offered no testimony or other direct evidence at the guilt-innocence phase of trial regarding his mental state. Prejudice within the meaning of *Strickland* is measured by current law and not by the law as it existed at the time of the alleged error.[92]

The evidence introduced at the guilt-innocence phase of trial also established that (1) after petitioner shot Hanan, petitioner turned, pointed his gun at a bank customer, re-entered the bank lobby, and recovered the bag containing the money petitioner had dropped during his struggle with Hanan,[93] (2) petitioner then fled out the front door of the bank,[94] (3) petitioner then ran across an embankment, jumped down, paused and smiled at a couple parked in their automobile, and continued his flight into a nearby residential neighborhood,[95] (4) because the crime occurred during the noon hour, a number of persons walking near the bank chased after petitioner and one bank employee gave pursuit in an automobile,[96] (5) at one point during the chase, petitioner became entangled in a fence and pointed his gun at his pursuers as they approached,[97] (6) after freeing himself from the fence, petitioner took off running again but slipped in the middle of the street, dropped some of the money from his bag, again pointed his gun at his pursuers, picked up some of the money he had dropped, and then ran off once again,[98] (7) petitioner's pursuers recovered some of the money petitioner dropped on the ground during his flight,[99] (8) law enforcement authorities closed off the area, recovered additional money petitioner had taken in the robbery that was scattered on the ground as well as petitioner's robbery note, recovered petitioner's shoes and file folder, and began a search of the neighborhood using trained dogs to locate petitioner, who was eventually found

5685–5718; Volume 20 of 27, Testimony of John Calhoun; Volume 20 of 27, Testimony of Richard Stengel, at pp. 6311–51; Volume 21 of 27, Testimony of Vincent DiMaio, at pp. 6475–99 and 6505–24; Volume 21 of 27, Testimony of Nehemiah Cantu, at pp. 6636–52; and Volume 22 of 27, Testimony of Celia Pena, at p. 6853.

At least some of the prosecution's eyewitnesses testified Vernon Hanan was lying flat on his back when petitioner fired the fatal shot. *Id.*, Volume 18 of 27, Testimony of Patricia Martinez, at pp. 5718 and 5791; and Volume 21 of 27, Testimony of Nehemiah Cantu, at pp. 6644–47 and 6673–77. A defense witness testified he heard a shot and turned to see Hanan falling with Hanan's buttocks almost in contact with the floor and Hanan's legs on the floor. *Id.*, Volume 22 of 27, Testimony of Rudolph Kasper, at pp. 6734 and 6738–41. Another eyewitness called by the defense testified she saw Hanan fall to the ground after the shot was fired. *Id.*, Volume 22 of 27, Testimony of Celia Pena, at pp. 6836–37, 6844, and 6848. The medical examiner testified the decedent's wounds did not display evidence of close-range firing and in his opinion, the fatal shot was probably fired while Hanan was falling toward a sitting position but still one to two feet off the floor. *Id.*, Volume 21 of 27, Testimony of Vincent DiMaio, at pp. 6490–91, 6514–22, 6546–66, 6573–74, and 6598–6600. The firearms expert who examined petitioner's gun and the other physical evidence testified petitioner's gun was fired at least two feet away from Hanan's forearm. *Id.*, Volume 20 of 27, Testimony of Richard Stengel, at pp. 6348–51. The confusion in the eyewitness testimony at the guilt-innocence phase of trial over the exact position of Hanan's body when petitioner fired the fatal shot might be explained by the petitioner's testimony at the punishment phase of trial that, after he shot Hanan, he looked down at Hanan for four or five seconds. *Id.*, Volume 26 of 27, Testimony of Dwight Dwayne Adanandus, at pp. 7562 and 7565–66.

92. *Westley v. Johnson*, 83 F.3d at 723 (citing *Lockhart v. Fretwell*, 506 U.S. at 372–73, 113 S.Ct. at 844).

93. *See* Statement of Facts from petitioner's state court trial, Volume 21 of 27, Testimony of Nehemiah Cantu, at pp. 6645–50; Volume 22 of 27, Testimony of William McGinty, at pp. 6780–81; Volume 22 of 27, Testimony of Alvaro Gonzales, at pp. 6805–09 and 6820; and Volume 22 of 27, Testimony of Celia Pena, at pp. 6850.

94. *Id.*, Volume 22 of 27, Testimony of Rudolph Kasper, at pp. 6735–36.

95. *Id.*, Volume 19 of 27, Testimony of Melody Tuttle, at pp. 5915–17.

96. *Id.*, Volume 19 of 27, Testimony of Guadalupe Lozano, at pp. 5822–44; Testimony of Mark Molden, at pp. 5989–99.

97. *Id.*

98. *Id.*

99. *Id.*

hiding beneath a house,[100] (9) law enforcement officers found petitioner's jacket inside a hole in the house under which petitioner was hiding and several thousand dollars in cash stuffed into the lining of the jacket,[101] (10) after several hours of unsuccessfully attempting to coax petitioner out from underneath the house, police first sent in a trained dog and then an officer, and the shoeless petitioner crawled out from under the house,[102] (11) law enforcement officers looked unsuccessfully for petitioner's gun that day but returned to the house the following day and, with the aid of a metal detector, found petitioner's pistol buried in several inches of soft dirt beneath the house in question,[103] (12) a law enforcement officer recovered a spent shell casing from petitioner's gun in the foyer of the bank,[104] and (13) both the spent shell casing found in the foyer of the bank and the fatal bullet removed from the body of Vernon Hanan showed signs they had been fired by petitioner's gun.[105]

There is no evidence or factual allegations currently before this Court establishing a reasonable probability that, but for the failure of petitioner's trial counsel to conduct further investigation into petitioner's psychological and mental condition and to develop and introduce evidence at the guilt-innocence phase of trial relating to petitioner's head injuries, the outcome of the guilt-innocence

phase of petitioner's trial would have been different. The physical evidence introduced at the guilt-innocence phase of trial established the fatal shot was fired while petitioner and Hanan were separated by at least two feet and while Hanan was falling toward a sitting position.[106] Nothing in Dr. Geffner's report establishes a reasonable probability that either (1) petitioner was mentally incompetent or otherwise incapable on January 28, 1988, of intentionally performing any of the criminal acts with which he was charged or (2) petitioner's criminal acts on January 28, 1988, were anything other than intentional. Thus, petitioner's first ineffective assistance claim also fails to satisfy the prejudice prong of *Strickland.*

### c. At the Punishment Phase

Petitioner argues further his trial counsel should have introduced available evidence concerning petitioner's unstable childhood and head injuries as mitigating evidence at the punishment phase of his trial.

#### (1) Deficient Performance

■ The deficiency prong of *Strickland* is judged by counsel's conduct under the law existing at the time of the conduct.[107] As explained above, at the time of petitioner's May, 1989 trial, the Supreme Court's decision in *Penry* was not yet the law of the

---

**100.** *Id.,* Volume 17 of 27, Testimony of John Carroll, at pp. 5377–84; Volume 19 of 27, Testimony of Delbert Horne, at pp. 5884–5898; Volume 19 of 27, Testimony of Edward Adame, at pp. 6017–36; Volume 19 of 27, Testimony of Lionel F. Solis, at pp. 6040–55; Volume 20 of 27, Testimony of T.J. Jagge, at pp. 6078–6120; Volume 20 of 27, Testimony of Garland Gaston, at pp. 6235–96.

**101.** *Id.,* Volume 20 of 27, Testimony of Garland Gaston, at pp. 6251–52.

**102.** *Id.,* at pp. 6265–94.

**103.** *Id.,* Volume 17 of 27, Testimony of Trinidad Noyola, at pp. 5371–74; Volume 20 of 27, Testimony of James Holguin, at pp. 6141–52; Volume 20 of 27, Testimony of Garland Gaston, at pp. 6272 and 6289.

**104.** *Id.,* Volume 17 of 27, Testimony of Trinidad Noyola, at pp. 5341–42 and 5366–69; Volume 20 of 27, Testimony of Richard Stengel, at pp. 6328–35.

**105.** *Id.,* Volume 17 of 27, Testimony of Trinidad Noyola, at pp. 5341–42 and 5366–69; Volume 20 of 27, Testimony of Richard Stengel, at pp. 6328–35; Volume 21 of 27, Testimony of Vincent DiMaio, at p. 6499.

**106.** The medical examiner testified the decedent's wounds did not display evidence of close-range firing and in his opinion, the fatal shot was probably fired while Hanan was falling toward a sitting position but still one to two feet off the floor. *Id.,* Volume 21 of 27, Testimony of Vincent DiMaio, at pp. 6490–91, 6514–22, 6546–66, 6573–74, and 6598–6600. The firearms expert, who examined petitioner's gun and the other physical evidence, testified the petitioner's gun was fired at least two feet away from Hanan's forearm. *Id.,* Volume 20 of 27, Testimony of Richard Stengel, at pp. 6348–51.

**107.** *Westley v. Johnson,* 83 F.3d at 723 (citing *Lockhart v. Fretwell,* 506 U.S. at 372, 113 S.Ct. at 844).

land.[108] Thus, the only three issues before the jury at the punishment phase of petitioner's trial were those listed above, i.e., questions asking whether petitioner's conduct had been deliberate, whether petitioner posed a continuing threat of violence to society, and whether petitioner's conduct in shooting Vernon Hanan had been unreasonable in response to Hanan's actions toward petitioner. The goal of petitioner's trial counsel at the punishment phase of trial was to obtain a negative answer to one or more of those jury issues.

As explained above, petitioner's trial counsel obtained a psychiatric evaluation of petitioner in July, 1988 which, in pertinent part, included a finding that petitioner's "ability to plan and execute a rational course of action ... is not in question." [109] In addition, attorney Hilbig also reviewed petitioner's medical records from the Austin State School and noted that at least some portions of those records indicated petitioner had a history of violent behavior prior to any of his head injuries, and petitioner had not demonstrated any significant behavioral or intellectual deficiencies after his horseback-riding accident. The thrust of this portion of petitioner's ineffective assistance claim amounts to an argument that attorney Hilbig should have disregarded Dr. Costello's report and the contents of petitioner's medical records and conducted a far-ranging search for psychological evidence that might have mitigating value at the punishment phase of trial. However, the fact that Dr. Geffner's June, 1995 report contains arguably mitigating psychological evidence regarding petitioner's psychosocial history does not establish that attorney Hilbig's performance was professionally deficient in 1988 and 1989. "The defense of a criminal case is not an undertaking in which

everything not prohibited is required. Nor does it contemplate the employment of wholly unlimited time and resources." [110] Given the clarity of Dr. Costello's conclusions with regard to petitioner's ability to plan and execute a rational course of action, the contents of petitioner's medical records, as well as petitioner's long track record for violent offenses including robbery discussed below, attorney Hilbig could have rationally concluded in 1988–89 that further investigation into petitioner's psychosocial history was not the most efficient use of the time and resources then available to defense counsel.

Even if petitioner's trial counsel had conducted a more thorough investigation into petitioner's psychosocial background in 1988–89 and had obtained evidence consistent with the findings and conclusions reported by Dr. Geffner in 1995, at best, such evidence would have represented a double-edged sword. While such evidence might have tended to support petitioner's argument that petitioner's shooting of Vernon Hanan had not been a deliberate act but rather a violent outburst resulting from a stressful situation, it would also have supported the prosecution's contention that petitioner posed a continuing threat of violence to society. Furthermore, given the statements contained in both the reports of Dr. Costello and Dr. Geffner relating to petitioner's normal intellectual functioning, psychological testimony or other evidence along the lines of that contained in Dr. Geffner's report could have been used by the prosecution to bolster its contention that, when he entered the bank with a loaded weapon and note that included express death threats, petitioner deliberately placed himself in a situation in which he knew he might be required to use deadly force. Testimony

**108.** As will be discussed in greater detail hereinafter, petitioner's trial counsel requested several jury instructions at the punishment phase of trial relating to the jury's consideration of mitigating evidence, all of which were rejected by the trial court. Given the state of the law in Texas in May, 1989, the eventual denial of petitioner's requests for those punishment phase jury instructions were readily foreseeable to petitioner's trial counsel, even prior to the commencement of the punishment phase of trial. Thus, at the commencement of the punishment phase of trial, attorney Hilbig faced the very real prospect the

only instructions petitioner's jury would have before it when it retired at the end of the punishment phase of trial would be those defining the terms used in the three special punishment issues outlined above.

**109.** *See* Exhibit 6 attached to Petitioner's Second Amended Petition for Post–Conviction Writ of Habeas Corpus, filed June 25, 1996, docket entry no. 25.

**110.** *Smith v. Collins,* 977 F.2d at 960.

such as that contained in Dr. Geffner's report establishing that petitioner functioned within the normal intelligence range would have bolstered the prosecution's contention that petitioner fully understood the gravity of his act of robbery and was fully prepared to use such force if necessary to complete his robbery. While the evidence relating to petitioner's head injuries, neuropsychological and psychological deficiencies, and propensity toward violent, explosive behavior contained in Dr. Geffner's report could have assisted petitioner's trial counsel in its argument that petitioner's action in shooting Vernon Hanan was not deliberate, there is nothing in Dr. Geffner's report suggesting petitioner's criminal actions on January 28, 1988, were actually caused by or the product of those injuries, deficiencies, or propensities. In addition, Dr. Geffner's report contains considerable information which would have supported positive answers to each of the three special punishment phase jury issues, such as indications that petitioner's older-brother-role-model had been convicted of armed robbery and sent to the penitentiary, petitioner's antisocial behavior predated his first head injury, petitioner had difficulty relating to others, and petitioner was capable of violent, explosive behavior.

Had petitioner's trial counsel attempted to use petitioner's medical records and history of head injuries to attack the prosecution's position on the deliberateness or provocation issues, the prosecution could have cited to the very same portions of those records discussed by attorney Hilbig at the evidentiary hearing on petitioner's state habeas corpus application.[111] Those records arguably showed petitioner's tendency toward violent behavior predated his head injuries and petitioner had not sustained any significant behavioral changes or diminution in intellectual capacity following his horseback-riding accident.[112] Furthermore, while there was evidence indicating petitioner was treated initially for a seizure disorder and later for epilepsy after his horseback-riding accident, there was nothing contained in any of petitioner's medical records establishing petitioner had sought or received any psychological care since his last stay at the Austin State Hospital in the early 1970's. There was no evidence introduced at trial and there is no evidence in any of the material currently before this Court establishing that petitioner experienced any sort of epileptic seizure or other neurological dysfunction during the actual commission of his offense or that his criminal conduct was caused by his epileptic condition.

The evidence at the punishment phase of petitioner's trial established that (1) on May 12, 1974, petitioner shot Lloyd Joe McGrew in the head during an altercation between petitioner and one of McGrew's brothers,[113] (2) petitioner was arrested on November 19, 1978, for unlawfully carrying a handgun and booked under the name "Paul Brown," [114] (3) petitioner was arrested in San Antonio, Texas, on September 28, 1979, while in the course of burglarizing a store,[115] (4) petitioner robbed a convenience store at gun point on August 16, 1980, in Sweetwater, Texas, demanded the lone female store clerk's car keys and purse, ripped the telephone off the wall before he left the store, and threatened to shoot the clerk if she left the store within

111. In fact, during the punishment phase of petitioner's trial, the prosecution expressly threatened to introduce additional evidence showing other acts of misconduct by the petitioner if petitioner attempted to present mitigating evidence in the form of petitioner's medical or mental health records. *See* Statement of Facts from petitioner's state court trial, Volume 25 of 27, at p. 7522.

112. *See* Statement of Facts from evidentiary hearing held November 21, 1994, in petitioner's state habeas corpus proceeding, Testimony of Steven Hilbig, at pp. 45–49.

113. *See* Statement of Facts from petitioner's state court proceeding, Volume 25 of 27, Testimony of Lloyd Joe McGrew, at pp. 7344–51.

114. *See* Statement of Facts from petitioner's state court trial, Volume 24 of 27, Testimony of Valentine Lopez, at pp. 7189–95; Testimony of Everett Mann, at pp. 7195–7207; Testimony of Cruz Morua, at pp. 7208–18.

115. *See* Statement of Facts from petitioner's state court trial, Volume 24 of 27, Testimony of Larry Bodiford, at pp. 7106–19.

ten minutes of petitioner's departure,[116] (5) also in August, 1980, petitioner robbed another lone female convenience store clerk in Abilene, Texas, at gun point,[117] (6) on August 20, 1980, petitioner was arrested while driving a pickup truck that had been stolen just hours before from a residence in Amarillo, Texas, after a unknown person burglarized the residence and took the keys to that vehicle,[118] (7) on August 21, 1986, petitioner robbed the Sunbelt Savings branch office in Hurst, Texas, by handing an employee a note containing almost verbatim the same death threats contained in the note petitioner used in his robbery of the Continental National Bank ["CNB"] in San Antonio on January 28, 1988,[119] (8) during his robbery of the Sunbelt Savings branch, petitioner wore a brace over his forearm and wrist similar to the one he wore on January 28, 1988, when he robbed the CNB,[120] (9) the wrist brace concealed a prominent and noticeable tatoo on the back of petitioner's hand,[121] and (10) the note petitioner gave to Patricia Martinez at the CNB on January 28, 1988, was written in two different colors of ink and showed signs it had been drawn with a straight-edge and portions of it had been re-touched.[122]

Petitioner testified at the punishment phase of his trial and admitted (1) he committed the two convenience store robberies in August, 1980 listed above, (2) he was also convicted of multiple counts of burglary and forgery, (3) he committed the pair of convenience store robberies in question while he was free on bond pending the disposition of his burglary and forgery charges, (4) he took the store clerk's car when he robbed the convenience store in Sweetwater, (5) he did not intend to kill Vernon Hanan, although he did point his gun at Hanan and pull the trigger, (6) after he shot Hanan, he looked down at Hanan on the floor for four or five seconds before returning to the bank lobby to recover the bag containing the money and knew Hanan was hurt, and (7) he removed his wrist brace while underneath the house.[123]

As explained above, attorney Hilbig requested and obtained a psychiatric evaluation of the petitioner in July, 1988 which resulted, in pertinent part, in Dr. Costello's clear and unambiguous written finding that petitioner's "ability to plan and execute a rational course of action ... is not in question." [124] Faced with that finding, the other evidence discussed above, the potential double-edged sword nature of the contents of petitioner's medical records concerning head injuries, and the unavailability of a *Penry* instruction at the time of petitioner's trial, the decision by petitioner's trial counsel not to introduce petitioner's medical records or to assert a defense at the punishment phase of trial based on petitioner's prior head injuries was within the realm of reasonable trial tactics. Because petitioner was tried prior to the date of the Supreme Court's opinion in *Penry*, the only way the jury could have given effect to any potentially mitigating evidence regarding petitioner's prior head injuries would have been through the deliberateness and provocation issues. As explained above, however, the same medical records and psychological

116. *Id.*, Volume 24 of 27, Testimony of Linda Eileen Davidson, at pp. 7158–69.

117. *Id.*, Volume 24 of 27, Testimony of Lucille McGee, at pp. 7178–86.

118. *Id.*, Volume 25 of 27, Testimony of Odell McGroan, at pp. 7442–52 and 7510–11; Testimony of Reed McDonald, at pp. 7454–62; Testimony of L.J. Dulin, at pp. 7464–71.

119. *Id.*, Volume 24 of 27, Testimony of Helen Marie Horsley, at pp. 7254–78; Testimony of David Smith, at pp. 7285–88; Testimony of Lisa Boley, at pp. 7290–7303.

120. *See* Statement of Facts from petitioner's state court trial, Volume 18 of 27, Testimony of Patricia Martinez, at pp. 5707–08; Volume 24 of 27,

Testimony of Helen Marie Horsley, at p. 7276; Volume 24 of 27, Testimony of Lisa Boley, at p. 7296.

121. *Id.*, Testimony of Dwight Dwayne Adanandus, at pp. 7529–30.

122. *Id.*, Volume 24 of 27, Testimony of Marvin Morgan, at pp. 7221–35.

123. *See* Statement of Facts from petitioner's state trial court proceedings, Volume 26 of 27, Testimony of Dwight Dwayne Adanandus, at pp. 7526–7610.

124. *See* Exhibit 6 attached to Petitioner's Second Amended Petition for Post–Conviction Writ of Habeas Corpus, filed June 25, 1996, docket entry no. 25.

evaluations which petitioner now argues would have shown he shot Vernon Hanan reflexively rather than deliberately would also have shown that despite the fact his propensity toward violent behavior predated any of his head injuries and the fact he was prone to violent outbursts, petitioner had always performed within the normal range of intellectual functioning.

Under such circumstances, the failure of attorney Hilbig to conduct a more searching investigation into petitioner's psychosocial history or to present other evidence then available showing petitioner had suffered a childhood head injury did not cause the performance of said counsel to fall below an objective level of reasonableness. In addition, given the evidence of petitioner's extensive criminal record and long-term history of violent behavior, petitioner's trial counsel did not act unreasonably in failing to present testimony from petitioner's family members and close personal friends purportedly establishing petitioner was kind and gentle with others. Furthermore, petitioner's trial counsel could reasonably have believed calling members of petitioner's immediate family and close personal friends to testify at the punishment phase of trial, and make a appeal

for mercy, could alienate a jury which had already convicted petitioner of a capital murder.[125] Thus, this aspect of petitioner's ineffective assistance claim does not satisfy the initial prong of *Strickland.*

### (2) Prejudice

■■■■ As previously stated, prejudice within the meaning of *Strickland* is measured by current law and not by the law as it existed at the time of the alleged error.[126] The Fifth Circuit has held that, in order to constitute "relevant" mitigating evidence for *Penry* purposes, evidence of a defendant's background and character must relate to and diminish the defendant's moral culpability for the offense with which he is charged.[127] Mitigating evidence is "relevant" at the punishment phase of a Texas capital murder trial only if it implicates the basic concern of *Penry*—defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse. In order to meet this relevance standard, the evidence must show (1) a uniquely severe permanent handicap with which the defendant is burdened through no fault of his own and (2) the

**125.** While this Court acknowledges that such appeals to jury sympathy by a capital murder defendant's family members have proven successful in at least some recent trials held in Bexar County, the decision to make such an appeal falls within the broad range of tactical decisions by defense counsel to which this Court must give deference.

**126.** *Westley v. Johnson,* 83 F.3d at 723 (citing *Lockhart v. Fretwell,* 506 U.S. at 372–73, 113 S.Ct. at 844).

**127.** *See Harris v. Johnson,* 81 F.3d 535, 539 (5th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 1863, 134 L.Ed.2d 961 (1996) (holding no *Penry* instruction necessary where no evidence showing defendant's borderline intelligence bore nexus to his criminal actions); *Allridge v. Scott,* 41 F.3d 213, 223 (5th Cir.1994), *cert. denied,* 115 S.Ct. 1959, 131 L.Ed.2d 851 (1995) (holding no *Penry* instruction necessary in absence of evidence showing defendant's criminal conduct was attributable to mental illness and abuse defendant suffered during a previous incarceration); *Lackey v. Scott,* 28 F.3d 486, 489 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 743, 130 L.Ed.2d 644 (1995) (holding evidence of defendant's low

intelligence and history of childhood abuse not relevant for *Penry* purposes where no evidence showing defendant's criminal act attributable to same); *Madden v. Collins,* 18 F.3d 304, 307–08 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1114, 130 L.Ed.2d 1078 (1995) (holding evidence defendant suffered from anti-social personality, dyslexia, and troubled childhood not relevant for *Penry* purposes absent showing defendant's criminal conduct attributable to same); *Barnard v. Collins,* 958 F.2d 634, 638–39 (5th Cir.1992) (holding that in order to warrant *Penry* instruction, evidence defendant had troubled childhood must be accompanied by evidence defendant's childhood experiences had psychological effect on defendant, i.e., defendant's criminal conduct was attributable to his disadvantaged background); *Graham v. Collins,* 950 F.2d 1009, 1033 (5th Cir.1992), (holding that "mitigating" evidence must be able to raise inference "that the crime is attributable to the disability"); *see also Barnard v. Collins,* 958 F.2d at 639 (holding evidence from lay witnesses that defendant had drinking problem and was intoxicated at time of his offense insufficient to permit jury to conclude defendant therein suffered from alcoholism or drug addiction or some other "uniquely severe permanent handicap" through no fault of his own).

criminal act was attributable to this severe permanent condition.[128]

It is unlikely the evidence of petitioner's childhood head injuries would even qualify as "relevant" mitigating evidence for *Penry* purposes. As explained above, petitioner's medical records from the Austin State School and other information contained in Dr. Geffner's report, which petitioner now argues should have been introduced as "mitigating" evidence at the punishment phase of his trial, included information which established (1) petitioner's violent, antisocial behavior predated his head injuries, (2) petitioner's older brother and role model had been convicted of armed robbery when petitioner was thirteen years old, (3) petitioner had a long history of polysubstance abuse beginning at an early age, and (4) despite petitioner's head injuries, seizure disorder, and history of substance abuse, petitioner had completed the ninth grade, earned a GED, and always tested within the normal range of intellectual functioning. Thus, there was nothing in the medical records then available to petitioner's trial counsel establishing petitioner's criminal conduct on January 28, 1988, was the product of or attributable to the head injuries petitioner had sustained as a child.

Also as explained above, the evidence introduced during petitioner's trial established that (1) petitioner carefully used two different pens and a straight edge to write a menacing note threatening the bank teller with death,[129] (2) petitioner "cased" or inspected the bank the week before the robbery,[130] (3) petitioner carried a fully loaded pistol in the waistband of his pants when he entered the CNB on January 28, 1988,[131] (4) petitioner wore a wrist brace over his hand and wrist to conceal noticeable tatoos,[132] (5) petitioner not only gave the teller the threatening note but also orally threatened to kill her if she ever identified him,[133] (6) petitioner withdrew his gun after the teller began shouting and threw a sign at him,[134] (7) before he had any physical contact with Vernon Hanan, petitioner told Vernon Hanan and a companion to "get out of my way," [135] (8) petitioner swung at Hanan several times immediately after Hanan lunged at petitioner,[136] (9) the two men wrestled from the bank lobby into the foyer,[137] and (10) petitioner shoved Hanan away from himself, pointed his gun at Hanan, pulled the heavy trigger, and shot Hanan through the heart while Hanan was falling in a sitting position at least two feet from petitioner's outstretched arm and gun.[138]

128. *Harris v. Johnson*, 81 F.3d 535, 539 (5th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 1863, 134 L.Ed.2d 961 (1996); *Davis v. Scott*, 51 F.3d 457, 460 (5th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 525, 133 L.Ed.2d 432 (1995).

129. *See* Statement of Facts from petitioner's state court trial, Volume 24 of 27, Testimony of Marvin Morgan, at pp. 7223–35; and Volume 26 of 27, Testimony of Dwight Dwayne Adanandus, at pp. 7553–55.

130. *Id.*, Volume 22 of 27, Testimony of Celia Pena, at p. 6853.

131. *Id.*, Volume 20 of 27, Testimony of James Holguin, at pp. 6144–48; and Volume 20 of 27, Testimony of Richard Stengel, at pp. 6311–20; and Volume 21 of 27, Testimony of Richard Stengel, at pp. 6433–45.

132. *Id.*, Volume 26 of 27, Testimony of Dwight Dwayne Adanandus, at pp. 7529–30.

133. *Id.*, Volume 18 of 27, Testimony of Patricia Martinez, at pp. 5705, 5777–79, and 5799.

134. *Id.*, Volume 18 of 27, Testimony of Rita Perez, at pp. 5649–50. The plaintiff can plainly

be seen reaching into the waistband of his pants to remove his pistol in State's Exhibits 99–39 through 99–43, photographs of the petitioner's robbery introduced into evidence at the guilt-innocence phase of petitioner's trial.

135. *Id.*, Volume 21 of 27, Testimony of Nehemiah Cantu, at pp. 6640–42.

136. *Id.*, Volume 21 of 27, Testimony of Nehemiah Cantu, at pp. 6643 and 6671.

137. *Id.*, Volume 18 of 27, Testimony of Patricia Martinez, at pp. 5717–18; and Volume 21 of 27, Testimony of Nehemiah Cantu, at pp. 6642–45.

138. *Id.*, Volume 18 of 27, Testimony of Patricia Martinez, at pp. 5717–18; Volume 21 of 27, Testimony of Nehemiah Cantu, at pp. 6642–45; Volume 20 of 27, Testimony of Richard Stengel, at pp. 6318–23, 6331–36, and 6345–51; and Volume 21 of 27, Testimony of Vincent DiMaio, at pp. 6483–99, 6504–06, 6514–24, 6546–66, 6573–74, and 6598–99. Eyewitnesses Patricia Martinez and Nehemiah Cantu both testified petitioner pointed his gun at Hanan. *Id.*, Volume 18 of 27, Testimony of Patricia Martinez, at p. 5718; and Volume 21 of 27, Testimony of Nehemiah

Eyewitnesses Patricia Martinez and Nehemiah Cantu both testified petitioner pointed his gun at Hanan.[139] Petitioner admitted during his testimony at the punishment phase of trial he had pulled the trigger of his gun.[140] A firearms expert testified at petitioner's trial that petitioner's gun had a heavy trigger pull.[141] While petitioner did repeatedly state during his testimony at the punishment phase of trial he had not intentionally killed Hanan,[142] he admitted to having pulled the trigger of his gun,[143] admitted he refused to advise the police regarding the location of his gun at the time of his arrest,[144] and admitted he returned to the bank lobby after shooting Hanan to retrieve the bag containing the money.[145] During his testimony at the punishment phase of trial, petitioner specifically denied he was mentally incompetent,[146] and the jury had the first-hand opportunity to view petitioner's demeanor. In addition, no evidence was introduced at trial and there is no evidence in the record now before this Court establishing petitioner

was suffering from any sort of epileptic seizure-related condition at the time he fired the fatal shot.

Petitioner did testify at the punishment phase of his trial he felt remorse for having caused the death of Vernon Hanan.[147] Thus, there was at least some potentially mitigating evidence presented at the punishment phase of petitioner's trial. For the reasons discussed above, however, given the potentially damaging evidence contained in petitioner's records from the Austin State School,[148] the tactical decision by petitioner's trial counsel not to assert that petitioner's head injuries lessened petitioner's moral culpability for his crime was a reasonable one and well within the broad range of counsel's tactical discretion. Moreover, given the evidence contained in petitioner's records from the Austin State School indicating petitioner had a long history of behavioral problems prior to the date of petitioner's initial head injury and the findings made by Dr. Costello after his examination of the petitioner, there is no reason-

Cantu, at pp. 6645. Petitioner admitted during his testimony at the punishment phase of trial he had pulled the trigger of his gun. *Id.*, Volume 26 of 27, Testimony of Dwight Dwayne Adanandus, at p. 7572. State's Exhibit 99–95 and a blow-up of same introduced as State's Exhibit 160 were identified by a prosecution expert witness as showing the instant the petitioner fired the fatal shot. *See Id.*, Volume 20 of 27, Testimony of Richard Stengel, at p. 6351; and Volume 21 of 27, Testimony of Richard Stengel, at pp. 6392 and 6445–53.

139. *Id.*, Volume 18 of 27, Testimony of Patricia Martinez, at p. 5718; Volume 21 of 27, Testimony of Nehemiah Cantu, at pp. 6645.

140. *Id.*, Volume 26 of 27, Testimony of Dwight Dwayne Adanandus, at p. 7572.

141. *Id.*, Volume 20 of 27, Testimony of Richard Stengel, at pp. 6318–23.

142. *Id.*, Volume 26 of 27, Testimony of Dwight Dwayne Adanandus, at pp. 7526–27, 7556, 7559, 7571, 7573, and 7605. Petitioner also expressed remorse for his actions during his testimony at the punishment phase of trial. *Id.*, at p. 7550.

143. *Id.*, at p. 7572.

144. *Id.*, at p. 7570.

145. *Id.*, at pp. 7564, 7568, and 7581–82. Petitioner claimed during his testimony he returned to the lobby of the bank to retrieve the bag

primarily because it contained documents which could identify him. *Id.*

146. *Id.*, at p. 7571.

147. *Id.*, at p. 7550.

148. As explained above, the admissions evaluation report prepared September 25, 1970, upon petitioner's admission to the Austin State School details a long history of behavioral problems exhibited by petitioner prior to the date petitioner suffered his initial head injury in March, 1969. This report was included among the medical records introduced at the evidentiary hearing held November 21, 1994, in petitioner's state habeas corpus proceeding and is also included in petitioner's medical records submitted to this Court on July 31, 1996, by respondent. Petitioner's trial counsel could reasonably have believed any effort to present "mitigating" evidence relating to petitioner's head injury at the punishment phase of petitioner's trial would have been so completely refuted and undermined by the contents of petitioner's records from the Austin State School the defense would have lost credibility with the jury in its efforts to obtain one negative answer to the special sentencing issues. This belief was a rational and realistic one given the fact petitioner's records from the Austin State School indicate petitioner was exhibiting behavioral problems of sufficient severity to get him periodically suspended from school as early as 1966, three years before petitioner suffered his horseback-riding accident and initial head injury.

able likelihood that, but for the decision by petitioner's trial counsel not to present evidence or argue that petitioner's head injuries mitigated petitioner's moral culpability, the outcome of the punishment phase of petitioner's trial would have been different.

Analysis of the second or "prejudice" prong of the *Strickland* test must include examination of whether counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair.[149] "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." [150] As explained above, the decision by petitioner's trial counsel not to pursue further investigation into petitioner's psychosocial history and background in search of potential mitigating evidence was a rational decision made after review of petitioner's medical records, review of Dr. Costello's report, and said counsel's own examination of petitioner during their conferences prior to trial. The decisions by petitioner's trial counsel not to introduce petitioner's medical records into evidence at the punishment phase of petitioner's trial and not to argue petitioner's head injuries lessened petitioner's moral culpability were rational ones based on the results of Dr. Costello's examination of petitioner and the presence in those records of information which could have harmed petitioner's chances of obtaining a negative answer to one or more of the special sentencing issues. Those decisions did not render the outcome of the punishment phase of petitioner's trial unreliable and did not render that proceeding fundamentally unfair.

Given petitioner's lengthy and violent criminal record, there is no reasonable probability that, but for the failure of petitioner's trial counsel to either investigate further the petitioner's psychosocial history or introduce evidence concerning petitioner's childhood head injuries and subsequent history of seizure disorders, or introduce testimony regarding the petitioner's capacity for gentleness and kindness toward close friends and family members, the outcome of the punishment phase of petitioner's trial would have been any different.[151] Thus, petitioner's second ineffective assistance claim also fails to satisfy the prejudice prong of *Strickland*.

### 4. Conflict of Interest

In his third claim of ineffective assistance by trial counsel, petitioner argues attorney Hilbig's "political ambitions caused a conflict of interest." [152] More specifically, petitioner alleges that, during an unspecified time period, attorney Hilbig was a candidate for the position of United States Attorney for the Western District of Texas and later successfully ran for the office of Bexar County District Attorney.[153] Petitioner argues attorney Hilbig's conflict of interest is demonstrated by his admission during closing arguments at the punishment phase of petitioner's trial that he (attorney Hilbig) firmly believed in the efficacy of the death penalty.[154]

Petitioner argues further that because of this conflict of interest, prejudice within the meaning of *Strickland* must be presumed. However, in *Beets v. Scott*,[155] the Fifth Circuit rejected such a broad-ranging approach to conflict of interest issues.[156] In

**149.** *See Lockhart v. Fretwell*, 506 U.S. at 368–73, 113 S.Ct. at 841–44; *Vuong v. Scott*, 62 F.3d at 685; *Armstead v. Scott*, 37 F.3d at 207.

**150.** *Lockhart v. Fretwell*, 506 U.S. at 372, 113 S.Ct. at 844.

**151.** In a capital sentencing proceeding, the prejudice analysis focuses on whether there is a reasonable probability that, absent counsel's errors, the sentencer would have concluded that the balance of aggravating and mitigating factors did not warrant death. *See Strickland v. Washington*, 466 U.S. at 695, 104 S.Ct. at 2069; *Belyeu v. Scott*, 67 F.3d at 538.

**152.** *See* Petitioner's Second Amended Petition for Post–Conviction Writ of Habeas Corpus, filed June 25, 1996, docket entry no. 25, at p. 12.

**153.** *Id.*

**154.** *Id.*, at p. 13, *citing* Statement of Facts from Petitioner's State Court Trial, Volume 26 of 27, at pp. 7666 and 7670–72.

**155.** 65 F.3d 1258 (5th Cir.1995) (*en banc*), *cert. denied*, —— U.S. ——, 116 S.Ct. 1547, 134 L.Ed.2d 650 (1996).

**156.** *See Beets v. Scott*, 65 F.3d at 1268 (holding not every potential conflict, even in multiple rep-

so doing, the Fifth Circuit rejected a broad application of the presumed prejudice rule announced in *Cuyler v. Sullivan*,[157] choosing instead a more pragmatic approach under which a petitioner asserting an ineffective assistance claim based on a purported conflict of interest must ordinarily satisfy both prongs of the *Strickland* test.[158] Petitioner admits in his second amended petition his trial counsel revealed to him that he (attorney Hilbig) was a candidate for the U.S. Attorney position. Petitioner suggests this revelation was made in conjunction with a threat that withdrawal of said counsel would cause great delay in petitioner's trial. Assuming arguendo that petitioner's trial counsel breached some unspecified ethical standard in the course of advising petitioner of counsel's candidacy for the U.S. Attorney position, that breach does not establish a per se violation of petitioner's Sixth Amendment right to effective assistance.[159] Thus, to warrant federal habeas relief, petitioner's final ineffective assistance claim must satisfy both prongs of the *Strickland* test.

 To establish ineffective assistance based on a conflict of interest, a petitioner who failed to raise an objection at trial must demonstrate that an actual conflict of interest adversely affected his attorney's performance.[160] However, the presumption of prejudice resulting from this rule applies only in multiple representation cases.[161] The purported conflict of interest asserted by petitioner herein does not fall within the scope of the presumed prejudice rule as defined in *Beets*. While the fact petitioner's trial counsel was engaged in seeking the position of U.S. Attorney at the time of petitioner's trial might have presented a potential conflict of interest, petitioner has alleged no facts showing this potential conflict ever evolved into an actual conflict.[162] Petitioner argues his trial counsel's candidacy for the position in question tainted counsel's closing argument during the punishment phase of trial because attorney Hilbig admitted his own beliefs in the efficacy of the death penalty in arguing the death penalty should not be imposed on petitioner. However, these assertions are far too speculative to support a finding of prejudice under *Strickland*.[163] Petitioner had no constitutional right to be defended at trial by an attorney who was personally, politically, or morally opposed to the death penalty per se. Likewise, the mere fact petitioner's trial attorney was, at the

resentation cases, is "actual" conflict for Sixth Amendment purposes).

157. 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

158. *See Beets v. Scott*, 65 F.3d at 1268–71.

159. *See Beets v. Scott*, 65 F.3d at 1271 (quoting *Nix v. Whiteside*, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986)).

160. *See United States v. Placente*, 81 F.3d 555, 558 (5th Cir.1996); *Perillo v. Johnson*, 79 F.3d 441, 447 (5th Cir.1996); *Bullock v. Whitley*, 53 F.3d 697, 702 (5th Cir.1995) (quoting *Cuyler v. Sullivan*, 446 U.S. at 348, 100 S.Ct. at 1718).

161. *See Beets v. Scott*, 65 F.3d at 1270–71. The presumption of prejudice which petitioner seeks to invoke through his assertion of a conflict of interest applies only when an "actual" conflict exists. An "actual conflict" exists when an attorney represents two clients whose interests in the outcome of a matter are different. *Perillo v. Johnson*, 79 F.3d at 447. To establish an actual conflict, "[t]he petitioner must specifically identify instances in the record that reflect that his counsel made a choice between possible alternative courses of action." *Id.* However, despite the length and breadth of petitioner's pleadings in this cause, petitioner has not identified with the requisite specificity any instances in which his trial counsel was forced to make such a choice during petitioner's trial. Thus, petitioner has failed to establish the existence of an "actual conflict."

162. *See Perillo v. Johnson*, 79 F.3d at 447 (holding "actual" conflict of interest exists when attorney represents two clients whose interests in outcome of matter are different); *Zuck v. State of Alabama*, 588 F.2d 436, 439 (5th Cir.), *cert. denied*, 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979) (holding conflict of interest must be actual rather than speculative before constitutional guarantee of effective assistance of counsel is implicated and actual conflict of interest occurs only when defense counsel places himself in situation inherently conducive to divided loyalties, i.e., if attorney owes duties to party whose interests are adverse to those of defendant).

163. *See Anderson v. Collins*, 18 F.3d at 1221; *United States v. Pineda*, 988 F.2d at 23; *Koch v. Puckett*, 907 F.2d at 530; *Russell v. Lynaugh*, 892 F.2d at 1213; *United States v. Woods*, 870 F.2d at 288 n. 5; *Ross v. Estelle*, 694 F.2d at 1011–12 & n. 2.

time of trial, a candidate for an appointed federal office, without more, is insufficient to support a finding of an actual conflict of interest.[164]

Further, this Court has independently reviewed the entirety of attorney Hilbig's closing argument at the punishment phase of trial and finds (1) the argument was consistent in both tenor and tone with the arguments made by petitioner's other trial counsel, attorney David R. Weiner, (2) the dual prongs of attorney Hilbig's argument at the punishment phase of petitioner's trial were that the death penalty was not an appropriate penalty in petitioner's case and the prosecution had employed appeals to emotion in lieu of presenting evidence establishing petitioner had acted deliberately in shooting Vernon Hanan, (3) attorney Hilbig argued that, in view of the very brief period of time between Vernon Hanan's initial lunge at petitioner and the firing of the fatal shot, petitioner's shooting of Hanan was not "deliberate," and (4) attorney Hilbig argued that despite petitioner's criminal record of previous robberies, there was no evidence petitioner had previously fired his weapon during any of those robberies.[165] When viewed in the context of the entire closing argument made by petitioner's two defense counsel and in light of the evidence that was then before the petitioner's jury, as outlined above, attorney Hilbig's expression of his own personal belief in the efficacy of the death penalty did not cause the performance of said counsel to

fall below an objective level of reasonableness, and there is no reasonable probability that, but for those admissions, the outcome of the punishment phase of petitioner's trial would have been different. Finally, when viewed in this context, the admissions made by attorney Hilbig during closing argument at the punishment phase of petitioner's trial did not render the outcome of the punishment phase of petitioner's trial unreliable and did not render that proceeding fundamentally unfair.

Moreover, the potential for a conflict of interest in petitioner's case is far less than the potential conflict found wanting by the Fifth Circuit in *Beets*.[166] Petitioner has alleged no facts showing his interests, financial or otherwise, were ever adverse to the interests of his trial counsel. Thus, this is not a situation in which petitioner's defense counsel represented parties with adverse interests simultaneously or even sequentially.[167] As in *Beets*, petitioner has failed to demonstrate any constitutional deficiency in the performance of his trial counsel resulting from the fact his attorney was then a candidate for the position of U.S. Attorney. In short, petitioner has alleged no facts showing that because (1) his trial counsel was a candidate for the position of U.S. Attorney at the time of petitioner's trial and (2) petitioner's trial counsel subsequently successfully campaigned for election to the position of Bexar County Criminal District Attorney, an actual conflict of interest existed which impacted

---

**164.** *See Bullock v. Whitley,* 53 F.3d at 702 (rejecting as frivolous petitioner's argument that conflict of interest existed by virtue of fact his defense counsel also served as part-time mayor of the small town in which petitioner's murder trial was held because petitioner had not alleged any facts showing his counsel's representation of petitioner hampered by performance of said counsel's duties as mayor).

**165.** *See* Statement of Facts from Petitioner's State Court Trial Volume 26 of 27, at pp. 7665–74.

**166.** *See Beets v. Scott,* 65 F.3d at 1268–73 (holding that despite ethical issues raised by defense counsel's taking of a contract for media rights in full satisfaction of his fee, petitioner required to show contract actually hindered her attorney's performance or prejudiced petitioner by rendering result of trial fundamentally unreliable).

**167.** Thus, petitioner's situation is distinguishable from the one in *Zuck v. State of Alabama,* 588 F.2d at 439. In *Zuck,* the law firm defending Zuck at trial also represented the prosecuting attorney who tried Zuck. The Fifth Circuit found the prosecutor and Zuck's defense counsel were adversaries for purposes of Zuck's criminal trial and, therefore, an actual conflict of interest existed warranting a new trial for Zuck. In contrast, petitioner has alleged no facts showing his interests were ever adverse to those of his trial counsel or that petitioner's trial counsel was ever subject to the type of conflict involved in *Zuck.* Instead, petitioner's conflict of interest claim herein is more analogous to the claim found to be frivolous in *Bullock v. Whitley,* 53 F.3d at 702 (rejecting as frivolous complaint that defense counsel had conflict of interest arising from his service as part-time mayor of town in which case tried).

petitioner's trial or prejudiced petitioner within the meaning of *Strickland.* Therefore, petitioner's arguments in support of his final assertion of ineffective assistance of counsel do not warrant federal habeas relief.

B. *Trial Court's Failure to Define "Reasonable Doubt" at Guilt–Innocence Phase of Trial*

 In his second ground for federal habeas corpus relief, petitioner argues the state trial court erred in failing to instruct the jury at the guilt-innocence phase of trial as to the definition of the term "reasonable doubt." Petitioner also points out that in *Geesa v. State,*[168] decided after petitioner's trial but while petitioner's direct appeal was still pending before the Texas Court of Criminal Appeals, the same state appellate court ruled a definition of reasonable doubt must be given in all Texas criminal cases, even in the absence of an objection or request for same.[169] Petitioner attempts to characterize the rule announced in *Geesa* as one of federal constitutional principle and argues, therefore, the refusal of the Texas Court of Criminal Appeals to retroactively apply that rule to petitioner's and other cases tried prior to the date of the opinion in *Geesa* violates federal equal protection principles.

However, the Fifth Circuit has held the failure to include a definition of "reasonable doubt" in the jury charge does not deprive a defendant of due process or render a capital murder trial unfair:

Although the jury must be instructed that the state bears the burden of proving the defendant's guilt beyond a reasonable doubt, attempts by trial courts to define "reasonable doubt" have been disfavored by this court. Such attempts often result in using the term itself in the definition and serve only to confuse the concept in the minds of jurors.[170]

Moreover, the Fifth Circuit has expressly rejected the same arguments raised herein by petitioner, holding the rule announced in *Geesa* is not mandated by federal constitutional principles and recognizing a state need only satisfy the rational basis test to pass equal protection scrutiny with regard to the non-retroactivity of a new state procedural rule.[171] "[T]he rule announced in *Geesa* was not required by the federal constitution or law." [172] Petitioner has presented no factual allegations showing the absence of a rational basis for the refusal of the Texas Court of Criminal Appeals to give its holding in *Geesa* retroactive effect.[173] Therefore, petitioner's second ground for federal habeas relief does not warrant same.

C. *Absence of Lesser–Included Offense Instructions*

 In his third ground for federal habeas corpus relief, petitioner argues the state trial court erred in denying petitioner's requests for jury instructions at the guilt-innocence phase of trial on the lesser-included offenses of felony murder, voluntary manslaughter, and involuntary manslaughter.[174] In a capital murder case, a criminal defendant is constitutionally entitled to an instruction on a lesser-included offense if the evidence would permit a jury rationally to find

---

**168.** 820 S.W.2d 154 (Tex.Crim.App.1991).

**169.** *See* Petitioner's Second Amended Petition for Post–Conviction Writ of Habeas Corpus, filed June 25, 1996, docket entry no. 25, at pp. 18–21.

**170.** *Thompson v. Lynaugh,* 821 F.2d 1054, 1061 (5th Cir.), *cert. denied,* 483 U.S. 1035, 108 S.Ct. 5, 97 L.Ed.2d 794 (1987).

**171.** *See Lackey v. Scott,* 28 F.3d 486, 491 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 743, 130 L.Ed.2d 644 (1995).

**172.** *Id.* (citing *Victor v. Nebraska,* 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994)); *Thompson v. Lynaugh,* 821 F.2d at 1060–61.

**173.** Retroactive application of the new rule announced in *Geesa,* a rule which had been rejected by both Texas state courts and the federal courts located in Texas for many years prior to that decision, might very well have necessitated the re-trial of thousands of criminal cases by the already over-burdened Texas court system. Therefore, it was not irrational for the Texas Court of Criminal Appeals to have refused to give that new rule retroactive effect, especially given its holding that a definition of reasonable doubt was necessary despite the absence of a request therefor.

**174.** *See* Petitioner's Second Amended Petition for Post–Conviction Writ of Habeas Corpus, filed June 25, 1996, docket entry no. 25, at pp. 21–27.

**1058**

the defendant guilty of the lesser offense and acquit him of the greater.[175] The Fifth Circuit has routinely applied this same standard to its review of Texas capital murder cases.[176] Therefore, a Texas capital murder defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and to acquit him of the greater.[177] This necessarily requires a showing that the facts of the case and the laws of the state warrant such an instruction.[178]

### 1. Felony Murder

■■■■ The Texas Court of Criminal Appeals held petitioner was not entitled to an instruction under Texas law on the lesser-included offense of felony murder.[179] After independently reviewing the extensive testimony from the guilt-innocence phase of petitioner's state court trial, this Court agrees. Felony murder under Texas law consists of a person committing or attempting to commit an underlying offense and, in the course and furtherance of that commission or attempt, that person commits or attempts to commit an act clearly dangerous to human life that causes the death of the victim.[180] As the Texas Court of Criminal Appeals noted in its opinion affirming petitioner's conviction, the principal difference between capital murder and felony murder at the time of petitioner's trial was the mental state necessary to support a conviction for those two offenses; capital murder required proof of an intentional killing while felony murder required only proof of an intent to commit the underlying felony, in this case robbery.[181] Therefore, to require an instruction on felony murder under Texas law as a matter of constitutional principle, the evidence at petitioner's trial had to permit a rational jury to conclude that petitioner had intended merely to commit the underlying offense of robbery but, during the commission of or attempt to commit that robbery, petitioner actually caused the death of the decedent by committing an act clearly dangerous to human life without actually intending to kill the decedent.[182]

■■■■ Petitioner argues there was no direct evidence at the guilt-innocence phase of his trial showing he subjectively formulated the intent to cause the death of the decedent or did so during the actual commission of the underlying predicate offense. However, petitioner misconstrues applicable state

**175.** *See Hopper v. Evans,* 456 U.S. 605, 611–12, 102 S.Ct. 2049, 2052–53, 72 L.Ed.2d 367 (1982); *Beck v. Alabama,* 447 U.S. 625, 637–38, 100 S.Ct. 2382, 2389–90, 65 L.Ed.2d 392 (1980).

**176.** *See East v. Scott,* 55 F.3d 996, 1005 (5th Cir.1995); *Mann v. Scott,* 41 F.3d 968, 976 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1977, 131 L.Ed.2d 865 (1995); *Allridge v. Scott,* 41 F.3d 213, 218–19 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1959, 131 L.Ed.2d 851 (1995); *Kinnamon v. Scott,* 33 F.3d 462, 464–65 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 660, 130 L.Ed.2d 595 (1994); *Andrews v. Collins,* 21 F.3d 612, 629 (5th Cir.1994), *cert. denied,* ——U.S. ——, 115 S.Ct. 908, 130 L.Ed.2d 790 (1995); *Cantu v. Collins,* 967 F.2d 1006, 1013 (5th Cir.1992), *cert. denied,* 509 U.S. 926, 113 S.Ct. 3045, 125 L.Ed.2d 730 (1993); *Lincecum v. Collins,* 958 F.2d 1271, 1275 (5th Cir.), *cert. denied,* 506 U.S. 957, 113 S.Ct. 417, 121 L.Ed.2d 340 (1992); *Montoya v. Collins,* 955 F.2d 279, 285–86 (5th Cir.), *cert. denied,* 506 U.S. 1036, 113 S.Ct. 820, 121 L.Ed.2d 692 (1992); *Cordova v. Lynaugh,* 838 F.2d 764, 767 (5th Cir.), *cert. denied* 486 U.S. 1061, 108 S.Ct. 2832, 100 L.Ed.2d 932 (1988).

**177.** *Id.*

**178.** *See East v. Scott,* 55 F.3d at 1005–06; *Mann v. Scott,* 41 F.3d at 976–78; *Cantu v. Collins,* 967 F.2d at 1013–14 (examining state law to determine whether a capital murder defendant was entitled to instructions on the lesser included offense of voluntary manslaughter); *Lincecum v. Collins,* 958 F.2d at 1275–77 (examining state law to determine whether capital murder defendant entitled to jury instructions on lesser included offenses of murder and voluntary manslaughter).

**179.** *See Adanandus v. State,* 866 S.W.2d at 230–31.

**180.** *See Adanandus v. State,* 866 S.W.2d at 230; *Rousseau v. State,* 855 S.W.2d 666, 673 (Tex. Crim.App.), *cert. denied,* 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993); *Creel v. State,* 754 S.W.2d 205, 211 (Tex.Crim.App.1988).

**181.** *See Adanandus v. State,* 866 S.W.2d at 230.

**182.** This is a round-about way of explaining the constitutional issue in this case, i.e., whether petitioner's jury could have rationally acquitted petitioner of the capital offense while convicting petitioner of the non-capital offense. *See East v. Scott,* 55 F.3d at 1005; *Mann v. Scott,* 41 F.3d at 976.

law. First, there is no requirement under Texas law in a case of capital murder committed in the course of a robbery that the intent to cause death be premeditated or formulated prior to the commission of the robbery; the offender must only have formulated the intent to cause death when he actually committed the murder.[183] Second, under applicable Texas law, intent to kill may be inferred from the use of a deadly weapon in a deadly manner; further, that inference is virtually conclusive on the issue of the defendant's intent to kill.[184] Petitioner offered absolutely no evidence at the guilt-innocence phase of trial to rebut the inference petitioner intended to kill Vernon Hanan when he aimed a fully loaded pistol at Vernon Hanan's heart and pulled the trigger.

Petitioner did not testify at the guilt-innocence phase of his trial or offer any other direct evidence at that phase of trial establishing he intended only to commit a robbery and not to kill Vernon Hanan. On the contrary, the evidence, described above, established that (1) petitioner carried a fully loaded pistol in the waistband of his pants when he entered the CNB on January 28, 1988,[185] (2) petitioner wore a wrist brace over his hand and wrist to conceal noticeable tatoos,[186] (3) petitioner not only gave the teller the threatening note but also orally threatened to kill her if she ever identified him,[187] (4) petitioner withdrew his gun after the teller began shouting and threw a sign at him,[188] (5) petitioner told Vernon Hanan and a companion to "get out of my way," before he had any physical contact with Vernon Hanan,[189] (6) petitioner swung at Hanan several times immediately after Hanan lunged at the petitioner,[190] (7) the two men wrestled from the bank lobby into the foyer,[191] and (8) petitioner shoved Hanan away from himself, pointed his gun at Hanan, pulled the heavy trigger, and shot Hanan through the heart while Hanan was falling in a sitting position at least two feet away from petitioner's outstretched arm and gun.[192] As noted by the Texas Court of Criminal Appeals, there was absolutely no evidence at the guilt-innocence phase of trial establishing petitioner and Hanan ever struggled over the gun, that the

**183.** *Rousseau v. State,* 855 S.W.2d at 674.

**184.** *See Garcia v. State,* 887 S.W.2d 862, 869 (Tex.Crim.App.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 1368, 131 L.Ed.2d 223 (1995); *Adanandus v. State,* 866 S.W.2d at 215 (quoting *Godsey v. State,* 719 S.W.2d 578, 580–81 (Tex.Crim.App.1986)); *Thompson v. State,* 691 S.W.2d 627, 630 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985).

**185.** *See* Statement of Facts from petitioner's state court trial, Volume 20 of 27, Testimony of James Holguin, at pp. 6144–48; and Volume 20 of 27, Testimony of Richard Stengel, at pp. 6311–20; and Volume 21 of 27, Testimony of Richard Stengel, at pp. 6433–45.

**186.** *Id.,* Volume 26 of 27, Testimony of Dwight Dwayne Adanandus, at pp. 7529–30.

**187.** *Id.,* Volume 18 of 27, Testimony of Patricia Martinez, at pp. 5705, 5777–79, and 5799.

**188.** *Id.,* Volume 18 of 27, Testimony of Rita Perez, at pp. 5649–50. The plaintiff can plainly be seen reaching into the waistband of his pants to remove his pistol in State's Exhibits 99–39 through 99–43, photographs of the petitioner's robbery introduced into evidence at the guilt-innocence phase of petitioner's trial.

**189.** *Id.,* Volume 21 of 27, Testimony of Nehemiah Cantu, at pp. 6640–42.

**190.** *Id.,* Volume 21 of 27, Testimony of Nehemiah Cantu, at pp. 6643 and 6671.

**191.** *Id.,* Volume 18 of 27, Testimony of Patricia Martinez, at pp. 5717–18; and Volume 21 of 27, Testimony of Nehemiah Cantu, at pp. 6642–45.

**192.** *Id.,* Volume 18 of 27, Testimony of Patricia Martinez, at pp. 5717–18; Volume 21 of 27, Testimony of Nehemiah Cantu, at pp. 6642–45; Volume 20 of 27, Testimony of Richard Stengel, at pp. 6318–23, 6331–36, and 6345–51; Volume 21 of 27, Testimony of Vincent DiMaio, at pp. 6483–99, 6504–06, 6514–24, 6546–66, 6573–74, and 6598–99. Eyewitnesses Patricia Martinez and Nehemiah Cantu both testified petitioner pointed his gun at Hanan. *Id.,* Volume 18 of 27, Testimony of Patricia Martinez, at p. 5718; Volume 21 of 27, Testimony of Nehemiah Cantu, at pp. 6645. Petitioner admitted during his testimony at the punishment phase of trial he had pulled the trigger of his gun. *Id.,* Volume 26 of 27, Testimony of Dwight Dwayne Adanandus, at p. 7572. State's Exhibit 99–95 and a blow-up of same introduced as State's Exhibit 160 were identified by a prosecution expert witness as showing the instant the petitioner fired the fatal shot. *See Id.,* Volume 20 of 27, Testimony of Richard Stengel, at p. 6351; Volume 21 of 27, Testimony of Richard Stengel, at pp. 6392 and 6445–53.

**1060**

fatal shot was fired at close range, or that petitioner's pistol misfired or discharged accidentally.[193] Thus, there was simply no evidence introduced at the guilt-innocence phase of petitioner's trial from which the jury could have rationally inferred that petitioner intended to commit only a robbery or that his fatal shooting of Vernon Hanan was anything other than intentional. The unambiguously deadly manner in which petitioner used a deadly weapon, i.e., petitioner's fully-loaded pistol, to shoot Vernon Hanan through the heart gave rise to a near-conclusive inference petitioner intended to kill Vernon Hanan when he engaged in that act.[194] Thus, petitioner was not entitled to a jury instruction on the lesser-included offense of felony murder, and the state trial court's denial of petitioner's request for same did not violate his federal constitutional rights.

### 2. *Voluntary Manslaughter*

■ The Texas Court of Criminal Appeals also held petitioner was not entitled to a jury instruction on the lesser-included offense of voluntary manslaughter.[195] This Court has independently reviewed the extensive testimony from the guilt-innocence phase of petitioner's state court trial and agrees. At the time of petitioner's offense and trial, a charge on voluntary manslaughter was appropriate under Texas law when there was evidence the defendant had caused the death of the decedent under the "immedi-

ate influence of sudden passion arising from adequate cause."[196] However, as noted by the Texas Court of Criminal Appeals, under applicable Texas law, when a defendant initiates the criminal episode which leads to the victim's death and the victim was acting in an attempt to prevent the commission of the felony by the defendant, the victim's actions cannot, as a matter of law, rise to the level of "adequate cause" from which sudden passion may arise under the former Texas voluntary manslaughter statute.[197] In petitioner's case, it was undisputed Vernon Hanan was attempting to thwart petitioner's robbery of the CNB when Hanan initiated his contact with petitioner. Thus, nothing Hanan did during the course of attempting to thwart petitioner's robbery could rise to the level of "adequate cause" under applicable Texas law, and petitioner was not entitled to a jury instruction on the lesser-included offense of voluntary manslaughter. Accordingly, the state trial court's denial of petitioner's request for same did not violate petitioner's federal constitutional rights.

### 3. *Involuntary Manslaughter*

■ The Texas Court of Criminal Appeals also held petitioner was not entitled to a jury instruction on the lesser-included offense of involuntary manslaughter.[198] Again, this Court has independently reviewed the extensive testimony from the guilt-innocence

**193.** *See Adanandus v. State,* 866 S.W.2d at 231.

**194.** *See Adanandus v. State,* 866 S.W.2d at 215; *Godsey v. State,* 719 S.W.2d at 580–81.

**195.** *See Adanandus v. State,* 866 S.W.2d at 231–32.

**196.** *See Adanandus v. State,* 866 S.W.2d at 231; *Vuong v. State,* 830 S.W.2d 929, 938 (Tex.Crim. App.), *cert. denied,* 506 U.S. 997, 113 S.Ct. 595, 121 L.Ed.2d 533 (1992); *Marquez v. State,* 725 S.W.2d 217, 223–24 (Tex.Crim.App.), *cert. denied,* 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987); *former* Section 19.04(a), Texas Penal Code Annotated (Vernon 1989).

The Texas Penal Code provision defining the offense of "voluntary manslaughter," i.e., former Section 19.04, was repealed effective September 1, 1994, and former Section 19.05 was redesignated as new Section 19.04. *See* Act approved June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex.Gen.Laws. The former offense of "vol-

untary manslaughter" is now treated by Texas law as an issue which may be raised by the defendant at the punishment phase of a murder trial in mitigation of punishment. *See* Tex.Penal Code Ann. § 19.02(d) (Vernon 1994).

**197.** *See Adanandus v. State,* 866 S.W.2d at 231; *Vuong v. State,* 830 S.W.2d at 939; *Harris v. State,* 784 S.W.2d 5, 10 (Tex.Crim.App.1989), *cert. denied,* 494 U.S. 1090, 110 S.Ct. 1837, 108 L.Ed.2d 966 (1990) (victim's action in shooting defendant could not rise to level of adequate cause where victim's action in shooting defendant was attempt to prevent defendant from kidnapping a third party); *Lincecum v. State,* 736 S.W.2d 673, 679 (Tex.Crim.App.1987), *cert. denied,* 486 U.S. 1061, 108 S.Ct. 2835, 100 L.Ed.2d 936 (1988) (holding victim's action in stabbing her assailant could not rise to level of adequate cause where stabbing was not only an act of self-defense but also attempt to protect victim's son).

**198.** *See Adanandus v. State,* 866 S.W.2d at 232.

phase of petitioner's state court trial and agrees with the state court. At the time of petitioner's offense and trial, a charge on involuntary manslaughter was appropriate under Texas law when there was evidence establishing the defendant recklessly caused the death of the decedent.[199] However, as noted by the Texas Court of Criminal Appeals, there was no evidence at the guilt-innocence phase of trial establishing petitioner and Hanan ever struggled over petitioner's gun, the fatal shot was fired at close range, or petitioner's pistol misfired or discharged accidentally.[200] The petitioner did not testify at the guilt-innocence phase of trial. Moreover, the evidence at the guilt-innocence phase of trial included photographs of petitioner aiming his gun at Hanan and the gun firing while Hanan was falling a few feet away from petitioner.[201] Finally, there is the fact the fatal shot pierced Hanan's sternum and ripped through Hanan's heart.[202] Given the overwhelming and largely uncontroverted eyewitness testimony, physical evidence, and photographic evidence establishing petitioner aimed his fully-loaded pistol directly at Hanan's heart and pulled the heavy trigger of his pistol, there was no evidence before the jury at the guilt-innocence phase of petitioner's trial from which a rational jury could have found petitioner acted only with a conscious disregard of a substantial and unjustifiable risk to Hanan's life. Consequently, petitioner was not entitled to a jury instruction on the lesser-included offense of involuntary manslaughter, and the state trial court's denial of petitioner's request for same did not violate petitioner's federal constitutional rights.

### D. Trial Court's Refusal to Give Petitioner's Definition of "Deliberately"

■ In his fourth ground for federal habeas relief, petitioner complains the state trial court refused to give the entire definition of the term "deliberately" requested by him as a part of the jury instructions at the punishment phase of petitioner's trial.[203] The petitioner's state trial court defined the term "deliberately" in its punishment phase jury instructions as having "a meaning different and distinct from the word 'intentionally' as that word is defined below" and then set forth the appropriate definition of "intentionally." [204] Petitioner has identified no error in that definition of "deliberately" under applicable Texas law nor has petitioner cited any authority holding the additional language included in defense counsel's requested definition of "deliberately" was required under applicable state law.[205] Further, the Fifth Circuit has repeatedly held a Texas trial court's refusal to give definitions of the terms "deliberately" and "deliberateness" does not violate a Texas capital murder defendant's

199. *See Adanandus v. State,* 866 S.W.2d at 232; *former* Section 19.05(a), Texas Penal Code Annotated (Vernon 1989). The Texas Penal Code provision defining the former offense of "involuntary manslaughter," i.e., former Section 19.05, was redesignated as new Section 19.04 and retitled "Manslaughter" effective September 1, 1994. *See* Act approved June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex.Gen.Laws.

200. *See Adanandus v. State,* 866 S.W.2d at 231; Statement of Facts from petitioner's state court trial, Volume 21 of 27, Testimony of Vincent DiMaio, at pp. 6483–99, 6504–06, 6514–24, 6546–66, 6573–74, and 6598–99.

201. *See* State's Exhibit 160. State's Exhibit 99–95 and a blow-up of same introduced as State's Exhibit 160 were identified by a prosecution expert witness as showing the instant the petitioner fired the fatal shot. *See Id.,* Volume 20 of 27, Testimony of Richard Stengel, at p. 6351; and Volume 21 of 27, Testimony of Richard Stengel, at pp. 6392 and 6445–53. This is one instance in which a picture is truly worth a thousand words.

202. *See* Statement of Facts from petitioner's state court trial, Volume 21 of 27, Testimony of Vincent DiMaio, at pp. 6483–99, 6504–06, 6514–24, 6546–66, 6573–74, and 6598–99.

203. *See* Petitioner's Second Amended Petition for Post–Conviction Writ of Habeas Corpus, filed June 25, 1996, docket entry no. 25, at pp. 27–30.

204. *See* Statement of Facts from petitioner's state court trial, Volume IB, at p. 446.

205. In support of his request for the additional definition, the focus of this ground for relief, petitioner relies primarily upon a dissenting opinion issued by one judge of the Texas Court of Criminal Appeals more than a decade ago. *See* Petitioner's Second Amended Petition for Post–Conviction Writ of Habeas Corpus, filed June 25, 1996, docket entry no., 25, at p. 29.

constitutional rights.[206]

Alternatively, petitioner does not cite to any authority existing at the time his conviction became final which mandated the precise language included in petitioner's requested definition of "deliberately" as a matter of constitutional principle. Thus, adoption of the new requirement urged by petitioner in his fourth ground for federal habeas relief would run afoul of the non-retroactivity doctrine recognized in *Teague v. Lane*.[207] Federal courts are generally barred from applying new constitutional rules of criminal procedure retroactively on collateral review.[208] Under *Teague*, a "new rule" is one which was not dictated by precedent existing at the time the defendant's conviction became final.[209] Under this doctrine, unless reasonable jurists hearing the defendant's claim at the time his conviction became final would have felt compelled by existing precedent to rule in his favor, a federal habeas court is barred from doing so

on collateral review.[210] This non-retroactivity doctrine applies equally to a novel application of an old rule.[211] Adoption of the rule suggested by petitioner would violate the non-retroactivity doctrine of *Teague*. Petitioner's fourth ground for federal habeas corpus relief is also denied.

### E. *Alleged Failure to Provide Exculpatory Evidence: Brady Claim*

In his fifth ground for federal habeas relief, petitioner argues the prosecution withheld from defense counsel a copy of a transcript from an evidentiary hearing held on April 27, 1981, in state district court in Nolan County, Texas. The evidentiary hearing was held in connection with petitioner's entry of a guilty plea to a charge of aggravated robbery, and during the hearing, petitioner's counsel expressed his opinion that petitioner was not competent to enter a guilty plea.[212]

---

**206.** *See Russell v. Collins*, 998 F.2d 1287, 1293 (5th Cir.1993), *cert. denied*, 510 U.S. 1185, 114 S.Ct. 1236, 127 L.Ed.2d 580 (1994) (holding a Texas trial court's failure to define term "deliberately" as used in the first Texas capital sentencing special issue did not prevent jury from giving effect to any of defendant's mitigating evidence); *James v. Collins*, 987 F.2d 1116, 1120 (5th Cir.), *cert. denied*, 509 U.S. 947, 114 S.Ct. 30, 125 L.Ed.2d 780 (1993) (holding terms "deliberately," "probability," "criminal acts of violence," and "continuing threat to society," have a common-sense core of meaning that criminal juries should be capable of understanding); *Barnard v. Collins*, 958 F.2d 634, 641 (5th Cir.1992), *cert. denied*, 506 U.S. 1057, 113 S.Ct. 990, 122 L.Ed.2d 142 (1993) (holding terms "deliberateness," "probability," and "society" not so vague as to deprive jury of meaningful guidance in its deliberations); *Ellis v. Lynaugh*, 873 F.2d 830, 839 (5th Cir.), *cert. denied*, 493 U.S. 970, 110 S.Ct. 419, 107 L.Ed.2d 384 (1989) (holding term "deliberately" sufficiently clear to permit jury to decide the first Texas capital sentencing special issue).

**207.** 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

**208.** *See Teague v. Lane*, 489 U.S. at 310, 109 S.Ct. at 1075; *Johnson v. Scott*, 68 F.3d 106, 111 n. 10 (5th Cir.1995), *cert. denied*, — U.S. —, 116 S.Ct. 1358, 134 L.Ed.2d 525 (1996); *Lackey v. Scott*, 52 F.3d 98, 100 (5th Cir.), *stay granted and cert. dism'd*, — U.S. —, 115 S.Ct. 1818, 131 L.Ed.2d 741 (1995); *Davis v. Scott*, 51 F.3d 457, 466–67 (5th Cir.), *cert. denied*, — U.S. —,

116 S.Ct. 525, 133 L.Ed.2d 432 (1995); *Mann v. Scott*, 41 F.3d 968, 976 (5th Cir.1994), *cert. denied*, — U.S. —, 115 S.Ct. 1977, 131 L.Ed.2d 865 (1995); *Crank v. Collins*, 19 F.3d 172, 175 (5th Cir.), *cert. denied*, — U.S. —, 114 S.Ct. 2699, 129 L.Ed.2d 825 (1994); *Motley v. Collins*, 18 F.3d 1223, 1230 (5th Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 418, 130 L.Ed.2d 333 (1994); *Webb v. Collins*, 2 F.3d 93, 95 (5th Cir.1993); *Nethery v. Collins*, 993 F.2d 1154, 1162 (5th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 1416, 128 L.Ed.2d 87 (1994); *Cordova v. Collins*, 953 F.2d 167, 173 (5th Cir.), *cert. denied*, 502 U.S. 1067, 112 S.Ct. 959, 117 L.Ed.2d 125 (1992).

**209.** *See Davis v. Scott*, 51 F.3d at 459–60; *Mann v. Scott*, 41 F.3d at 976; *Crank v. Collins*, 19 F.3d at 175; *Motley v. Collins*, 18 F.3d at 1230.

**210.** *Id.*

**211.** *See Stringer v. Black*, 503 U.S. 222, 227–29, 112 S.Ct. 1130, 1134–36, 117 L.Ed.2d 367 (1992); *Butler v. McKellar*, 494 U.S. 407, 414–15, 110 S.Ct. 1212, 1217–18, 108 L.Ed.2d 347 (1990); *Lackey v. Scott*, 52 F.3d at 100.

**212.** *See* Petitioner's Second Amended Petition for Post–Conviction Writ of Habeas Corpus, filed June 25, 1996, docket entry no. 25, at pp. 30–32. A copy of the transcript from the April 27, 1981 hearing in state district court in Nolan County appears among the state court papers submitted by respondent relating to petitioner's state habeas corpus proceeding at pp. 181–211.

 The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution.[213] Impeachment evidence also falls within the *Brady* rule.[214] Even inadmissible evidence may be material for *Brady* purposes.[215] There are three elements to a valid *Brady* claim: (1) the prosecution must suppress or withhold evidence, (2) which is favorable, and (3) material to the defense.[216] Undisclosed evidence is "material" if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.[217] A reasonable probability of a different result is shown when nondisclosure puts the case in a different light so as to undermine confidence in the jury verdict.[218] If materiality is established, no harmless error analysis is employed.[219] Petitioner's *Brady* claim fails for at least three reasons.

First, there is nothing in the record before this Court establishing the prosecution ever withheld, suppressed, or concealed from petitioner's trial counsel either the fact that a hearing relating at least tangentially to petitioner's competence was held in state district court in April, 1981, or that one of the subjects of that hearing was petitioner's competence. In fact, petitioner as well as petitioner's mother testified at that hearing, and must, therefore, have had personal knowledge of both the fact that such a hearing was held in April, 1981, as well as the subjects of that hearing. Petitioner does not allege he failed to advise his own trial counsel of either of those subjects or that he concealed from his own trial counsel information relating to that hearing. By definition, information already within the personal knowledge of a criminal defendant cannot be "suppressed or withheld" from the defense.[220] Moreover, as pointed out by the state habeas court in its factual findings, the information which petitioner now alleges was "suppressed or withheld" by the prosecution was in the form of a public record.[221] A *Brady* violation does not

**213.** *Brady v. State of Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963); *Kopycinski v. Scott* 64 F.3d 223, 225 (5th Cir. 1995); *Allridge v. Scott,* 41 F.3d 213, 217 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1959, 131 L.Ed.2d 851 (1995); *Williams v. Scott,* 35 F.3d 159, 163 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 959, 130 L.Ed.2d 901 (1995).

**214.** *See United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985); *Kopycinski v. Scott,* 64 F.3d at 225; *East v. Scott,* 55 F.3d at 1002.

**215.** *See Spence v. Johnson,* 80 F.3d 989, 1005 n. 14 (5th Cir.1996).

**216.** *See Spence v. Johnson,* 80 F.3d 989, 994 (5th Cir.1996); *East v. Scott,* 55 F.3d at 1002; *Lawrence v. Lensing,* 42 F.3d 255, 257 (5th Cir.1995); *Wilson v. Whitley,* 28 F.3d 433, 435 (5th Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 754, 130 L.Ed.2d 653 (1995); *Blackmon v. Scott,* 22 F.3d 560, 564 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 671, 130 L.Ed.2d 604 (1994); *Drew v. Collins,* 964 F.2d 411, 419 (5th Cir. 1992), *cert. denied,* 509 U.S. 925, 113 S.Ct. 3044, 125 L.Ed.2d 730 (1993).

**217.** *See Wood v. Bartholomew,* —— U.S. ——, ——, 116 S.Ct. 7, 10, 133 L.Ed.2d 1 (1995); *United States v. Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383; *Kopycinski v. Scott,* 64 F.3d at 225; *East v. Scott,* 55 F.3d at 1002; *Allridge v. Scott,* 41 F.3d at 217; *Williams v. Scott,* 35 F.3d at 159;

*Blackmon v. Scott,* 22 F.3d at 564. In recent opinions, both the Supreme Court and Fifth Circuit have analogized the "materiality" standard under *Brady* to the "prejudice" standard under *Strickland. See Kyles v. Whitley,* —— U.S. ——, ——, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995); *Johnson v. Scott,* 68 F.3d 106, 109 n. 5 (5th Cir.1995).

**218.** *Kyles v. Whitley,* —— U.S. at ——, 115 S.Ct. at 1566; *Spence v. Johnson,* 80 F.3d at 994; *Kopycinski v. Scott,* 64 F.3d at 226.

**219.** *See Kyles v. Whitley,* —— U.S. at ————, 115 S.Ct. at 1566–67; *Kopycinski v. Scott,* 64 F.3d at 226.

**220.** *See United States v. Newman,* 849 F.2d 156, 161 (5th Cir.1988) (holding government is not required to furnish defendant with information he already has or can obtain with reasonable diligence).

**221.** *See* Statement of Facts from petitioner's state habeas corpus proceeding, at p. 240. Because the April 27, 1981 hearing in state district court in Nolan County was transcribed by a court reporter, it was fully available to petitioner and his counsel pursuant to applicable state law at least as early as September 1, 1985. *See* TEX. GOV'T CODE ANN. § 52.047(a) (Vernon 1988). That statutory provision was amended in 1991 with regard to the fees that could be charged for

arise if the defendant, using reasonable diligence, could have obtained the information.[222] Petitioner has alleged no facts establishing he was unaware a hearing had been held in Nolan County on April 27, 1981, or that he was unable to obtain a transcript of same despite the exercise of reasonable diligence on his part.

Second, petitioner has not established there was any "favorable" information contained in the hearing transcript. At the Nolan County hearing on April 27, 1981, (1) petitioner's criminal defense counsel expressed his opinion petitioner was not competent to stand trial,[223] (2) petitioner's mother, Mrs. Frances Ruth Davis, was sworn and testified (a) petitioner suffered a "nervous breakdown" after the death of his maternal grandmother, (b) on an unspecified occasion, petitioner suffered a head injury in a horseback-riding accident and later had a metal plate placed in his head, (c) petitioner was sent to the Austin State School and stayed there initially for nine months and then returned there for a second, six-week stay on another occasion, (d) petitioner behaves irrationally at times, (e) petitioner does not know right from wrong, (f) while hospitalized, petitioner was declared insane, (g) petitioner's head injury occurred prior to his entry into junior high, (h) petitioner had not been hospitalized for his mental problems since 1968, (i) subsequent to his head injury, petitioner completed the tenth or eleventh grade in school and held a number of jobs, (j) at some point petitioner was prescribed valium but petitioner last took that medication in 1973, (k) petitioner has not seen a psychiatrist since 1973, (*l*) despite the foregoing, she has spoken with her son and believed he understood the nature of the charge that was then pending against him, (m) she believed petitioner was competent to communicate effectively with his attorney, (n) she had no disagreement with the trial court's ruling petitioner was competent to enter a guilty plea, and (*o*) she wanted the trial court to accept petitioner's plea,[224] (3) petitioner himself testified (a) he understood the nature of the aggravated robbery charge then pending against him arising out of petitioner's armed robbery of a convenience store on August 16, 1980, (b) he had taken the purse and automobile of Linda Davidson during that robbery, (c) he had previously been convicted of forgery in Gonzales County, and of burglary of a building, passing a forged check, and theft in Bexar County, and (d) he was guilty of the aggravated robbery charge against him,[225] and (4) the state trial court found petitioner competent to enter a guilty plea to that charge and accepted same.[226] Thus, at best, the April 27, 1981

official court transcripts but not in any manner relevant to this cause. The current version of that statute appears at Tex.Gov't Code Ann. § 52.047(a) (Vernon Supp.1996).

**222.** *See Williams v. Scott*, 35 F.3d 159, 163 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 959, 130 L.Ed.2d 901 (1995); *May v. Collins*, 904 F.2d 228, 231 (5th Cir.1990), *cert. denied,* 498 U.S. 1055, 111 S.Ct. 770, 112 L.Ed.2d 789 (1991); *United States v. Newman*, 849 F.2d at 161.

**223.** *See* Transcript from the hearing held on April 27, 1981, in cause no. 5173 in the state district court for Nolan County, Texas, included among the state court papers relating to petitioner's state habeas corpus proceeding now before this Court, at p. 183.

**224.** *Id.,* Testimony of Frances Ruth Davis, at pp. 185–205. It should be noted Mrs. Davis all but recanted the initial portion of her testimony regarding her son's alleged incompetence after a brief recess during which the benefits of the plea bargain offered to her son by the prosecution in that cause were apparently discussed with her.

*Id.,* at pp. 204–05. Mrs. Davis also testified at the April 27, 1981 hearing that she was unaware her son had previously been convicted of four felonies or that petitioner had been sentenced to serve a term in the penitentiary as a result of those prior convictions. *Id.,* at p. 197.

**225.** *Id.,* Testimony of Dwight Dwayne Davis, at pp. 207–210.

**226.** Petitioner's pen packet, introduced into evidence at the punishment phase of petitioner's capital murder trial established (1) on April 27, 1981, petitioner entered a guilty plea in the 32nd Judicial District Court, Nolan County, Texas, to a charge of aggravated robbery committed with a firearm arising out of an offense committed on August 16, 1980, (2) petitioner was sentenced that same date to serve a fifteen and one-half year term of imprisonment, and (3) the state trial court found petitioner was mentally competent to enter that plea and he did so voluntarily. *See* State's Exhibit 192 at pp. 28–30, included in Statement of Facts from petitioner's state court trial, Volume 27 of 27.

hearing transcript established (1) petitioner's defense counsel had raised a question as to petitioner's competence to enter a guilty plea on that date, (2) petitioner's mother provided information as to petitioner's head injury and mental problems, her opinion concerning petitioner's ability to tell right from wrong and his ability to effectively communicate with his counsel and understand the charge against him, information on petitioner's academic success following the head injury, his employment history, and the fact petitioner had not had any mental problems since 1973, (3) petitioner testified he understood the nature of the charge against him and the factual basis for his guilty plea thereto, and (4) the state trial court found petitioner competent to enter a guilty plea and petitioner had entered a voluntary plea to the charge then pending against him. "Favorable" evidence is either exculpatory or impeaching evidence which, if disclosed and used effectively, may make a difference between conviction or acquittal.[227] None of the information included in the April 27, 1981 hearing transcript satisfies this standard.[228]

Finally, petitioner has alleged no facts establishing any of the information contained in the April 27, 1981 hearing transcript was "material" for Brady purposes. As explained above, the ultimate outcome of the April 27, 1981 hearing was that the state trial court found petitioner competent to enter a guilty plea to a charge of aggravated robbery committed with a firearm and accepted petitioner's voluntary guilty plea to that charge. Although petitioner's mother testified at the April 27, 1981 hearing about petitioner's history of head injuries and her belief that petitioner did not know right from wrong, petitioner testified he understood the nature of the charges against him and the consequences of his guilty plea. The state trial court found petitioner mentally competent and capable of entering a voluntary guilty plea.

Moreover, the prosecution had available to it at petitioner's capital murder trial the same records from the Austin State School which petitioner's trial counsel had reviewed and found to undermine both an incompetence defense and any effort to assert that petitioner's head injuries mitigated his moral culpability for his crime. Also, Dr. Costello's report effectively negated any contention petitioner was mentally incompetent at the time of his capital murder trial or that he was incapable of planning and executing a scheme such as the robbery of the CNB. Petitioner himself testified at great length during the punishment phase of his capital murder trial and demonstrated a clear understanding of the evidence which had been introduced at trial as well as a high degree of familiarity with many items of evidence his trial counsel had successfully excluded during the guilt-innocence phase of trial.[229] Under these circumstances, the hearing transcript from peti-

227. See United States v. Bagley, 473 U.S. at 676, 105 S.Ct. at 3380.

228. The determination of whether evidence is "favorable" for Brady purposes must necessarily include a review of that evidence in light of the other evidence then available. Mrs. Davis' rather cryptic testimony at the April 27, 1981 hearing that petitioner had once been declared "insane" is refuted by petitioner's records from the Austin State School, records which had been examined by petitioner's trial counsel. Thus, petitioner's trial counsel could not have introduced testimony from Mrs. Davis regarding petitioner's alleged insanity in 1981 without either suborning perjury or opening the door to the admission of testimony along the lines of that contained in Dr. Costello's report establishing petitioner was not mentally incompetent. At best, the April 27, 1981 hearing transcript revealed an expression of doubt as to petitioner's competence to enter a guilty plea by petitioner's attorney, ambiguous testimony from petitioner's mother as to petitioner's competence, but also petitioner's own clear and straight-forward testimony admitting to an understanding of the nature of the charge against him and the accuracy of the factual basis therefor. Thus, at best, the April 27, 1981 hearing transcript, when viewed in its entirety, constituted "neutral" evidence. Such evidence cannot form the basis for a valid Brady claim. See United States v. Dillman, 15 F.3d 384, 390 (5th Cir.), cert. denied, —— U.S. ——, 115 S.Ct. 183, 130 L.Ed.2d 118 (1994) (holding that although exculpatory and impeaching evidence falls within rule in Brady, neutral evidence does not). When viewed in its entirety, the April 27, 1981 hearing transcript contained neither exculpatory nor impeaching evidence in connection with petitioner's capital murder trial.

229. See Statement of Facts from petitioner's state court trial, Volume 26 of 27, Testimony of Dwight Dwayne Adanandus, at pp. 7560–82.

tioner's April 27, 1981 guilty plea hearing was not "material" within the meaning of *Brady*. There is no reasonable probability that, had the April 27, 1981 hearing transcript been furnished to the defense by the prosecution, the result of either the guilt-innocence or punishment phase of petitioner's trial would have been different.[230]

For the foregoing reasons, petitioner's complaints in his fifth ground for relief about the prosecution's failure to furnish petitioner's trial counsel with a copy of the April 27, 1981 hearing transcript do not satisfy any of the three *Brady* criteria discussed above and do not warrant federal habeas relief.

### F. *Invalid Prior Conviction*

In his sixth ground for federal habeas relief, petitioner argues his death sentence was based, in part, upon an invalid prior conviction, to wit, petitioner's April 27, 1981 state court conviction in Nolan County for aggravated robbery committed with a firearm.[231] Respondent points out, however, the state habeas corpus court specifically held petitioner had procedurally defaulted on this claim by failing to object at trial to the introduction of evidence concerning this same prior conviction.

### 1. *Procedural Default*

The Fifth Circuit has repeatedly held that a finding by a Texas appellate court that a criminal defendant failed to comply with the Texas contemporaneous objection rule constitutes an independent and adequate basis for a federal habeas court's refusal to address the merits of a claim for federal habeas corpus relief.[232] When a state law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court.[233] Generally speaking, in order for a claim of procedural default to preclude federal review of a habeas petitioner's claim, the last state court issuing a reasoned decision must have clearly and unequivocally relied upon the procedural default as an independent and adequate ground for denying relief.[234] When a state court finds a federal claim is procedurally barred but goes on to reach the merits of that claim in the alternative, the state court's reliance on the procedural default still constitutes an independent and adequate ground which bars federal habeas review.[235] A state procedural rule is

---

**230.** *See Wood v. Bartholomew,* —— U.S. ——, ——, 116 S.Ct. 7, 10, 133 L.Ed.2d 1 (1995) (holding evidence "material" under *Brady* only where there exists reasonable probability that, had the evidence been disclosed, the result of trial would have been different); *United States v. Bagley,* 473 U.S. at 682; *Kopycinski v. Scott,* 64 F.3d at 225; *East v. Scott,* 55 F.3d at 1002; *Allridge v. Scott,* 41 F.3d at 217; *Williams v. Scott,* 35 F.3d at 159; *Blackmon v. Scott,* 22 F.3d at 564.

**231.** *See* Petitioner's Second Amended Petition for Post–Conviction Writ of Habeas Corpus, filed June 25, 1996, docket entry no. 25, at pp. 32–35.

**232.** *See Rogers v. Scott,* 70 F.3d 340, 342 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1881, 135 L.Ed.2d 176 (1996); *Nichols v. Scott,* 69 F.3d 1255, 1278 n. 44 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 2559, 135 L.Ed.2d 1076 (1996); *Amos v. Scott,* 61 F.3d 333, 338–45 (5th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 557, 133 L.Ed.2d 458 (1995).

**233.** *See Ylst v. Nunnemaker,* 501 U.S. 797, 801, 111 S.Ct. 2590, 2593, 115 L.Ed.2d 706 (1991); *Murray v. Carrier,* 477 U.S. 478, 485–92, 106 S.Ct. 2639, 2643–48, 91 L.Ed.2d 397 (1986); *Sawyers v. Collins,* 986 F.2d 1493, 1499 (5th Cir.), *cert. denied,* 508 U.S. 933, 113 S.Ct. 2405, 124 L.Ed.2d 300 (1993).

**234.** *See Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) (holding adequate and independent finding of procedural bar will bar federal habeas review of federal claim unless habeas petition can show "cause" for default and "prejudice attributable thereto" or demonstrate that failure to consider federal claim will result in "fundamental miscarriage of justice"); *Moore v. Roberts,* 83 F.3d 699, 702 (5th Cir.1996); *Reed v. Scott,* 70 F.3d 844, 846 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1452, 134 L.Ed.2d 570 (1996); *Amos v. Scott,* 61 F.3d at 338–39; *see also Coleman v. Thompson,* 501 U.S. 722, 735, 111 S.Ct. 2546, 2557, 115 L.Ed.2d 640 (1991) (holding federal court may address federal claim on which there has been finding of state procedural default if last state court opinion disposing of claim appears to rest primarily upon federal law, or to be interwoven with federal law, or when adequacy and independence of any possible state law ground is not clear from face of opinion); *Ylst v. Nunnemaker,* 501 U.S. at 803–04, 111 S.Ct. at 2594–95.

**235.** *See Harris v. Reed,* 489 U.S. at 264 & n. 10, 109 S.Ct. at 1044 & n. 10; *Rogers v. Scott,* 70

adequate for purposes of procedural default in a federal habeas proceeding only if it is firmly established at the time it is applied, i.e., it is strictly or regularly applied even-handedly to the vast majority of similar claims.[236]

 Ordinarily, the mere fact a federal habeas corpus claimant failed to abide by a state procedural rule does not, in and of itself, prevent federal review of a claim; the state court must actually have relied upon the procedural bar as an independent basis for its disposition of the case.[237] A federal claimant's procedural default usually precludes federal habeas review only if the last state court rendering a judgment in the case rests its judgment on the procedural default.[238] The federal courts presume there is no independent and adequate state ground

for a state court decision when (1) the decision fairly appears to rest primarily on federal law, (2) the decision fairly appears to be interwoven with the federal law, or (3) the adequacy and independence of any possible state law ground is not clear from the face of the opinion.[239] When the last state court to write a reasoned opinion rests its decision on a claim for relief on state procedural grounds, the petitioner may obtain federal habeas review of that same claim only if he can show cause and actual prejudice for his procedural default or that a failure to address the merits of the federal claim would result in a miscarriage of justice.[240] In order to satisfy the "miscarriage of justice" test, the petitioner must supplement his constitutional claim with a colorable showing of factual innocence.[241] To satisfy the "factual

---

F.3d at 342; *Sawyers v. Collins*, 986 F.2d at 1499. Where it is unclear whether the state court's judgment rests on state procedural grounds or on the merits of the federal claim, the basis for the state court judgment is identified by the following analysis: (1) where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting that same claim rest upon the same ground; (2) if an earlier opinion "fairly appears" to rest primarily upon federal law, we presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place; and (3) where the last reasoned opinion on the claim explicitly imposes a procedural default, the presumption is that a later decision rejecting the claim did not silently disregard that bar and consider the merits—but this presumption can be overcome by strong evidence that the subsequent rejection of the claim was based on an analysis of the merits of the federal claim. *See Sawyers v. Collins*, 986 F.2d at 1499–1500. In petitioner's case, the Texas Court of Criminal Appeals issued only a brief, one-page order on February 21, 1995, adopting the findings and conclusions issued by the state trial court in petitioner's state habeas corpus proceeding. Thus, the last, and only, reasoned opinion in petitioner's state habeas corpus proceeding is the state trial court's Order issued January 9, 1995, setting forth that court's findings of fact and conclusions of law. Therefore, we look to that state trial court Order of January 9, 1995, on petitioner's state habeas corpus application for any holding by a Texas court on state procedural default issues.

As an aside, the Court notes the rule in *Harris* referenced above is inapplicable where the federal habeas corpus claim was never presented to the state courts. *See Teague v. Lane*, 489 U.S. 288, 299, 109 S.Ct. 1060, 1069, 103 L.Ed.2d 334

(1989); *Nichols v. Scott*, 69 F.3d at 1280. In this case, however, petitioner did exhaust available state remedies on all of his grounds for federal habeas relief herein.

**236.** *See Reed v. Scott*, 70 F.3d at 846; *Amos v. Scott*, 61 F.3d at 339.

**237.** *Harris v. Reed*, 489 U.S. at 261–62, 109 S.Ct. at 1042.

**238.** *Harris v. Reed*, 489 U.S. at 262, 109 S.Ct. at 1043; *Caldwell v. Mississippi*, 472 U.S. 320, 327, 105 S.Ct. 2633, 2638–39, 86 L.Ed.2d 231 (1985).

**239.** *Coleman v. Thompson*, 501 U.S. at 734–35, 111 S.Ct. at 2556–57.

**240.** *See Coleman v. Thompson*, 501 U.S. at 750, 111 S.Ct. at 2565; *Harris v. Reed*, 489 U.S. at 262, 109 S.Ct. at 1043; *Moore v. Roberts*, 83 F.3d at 702.

**241.** *See Sawyer v. Whitley*, 505 U.S. 333, 335–36, 112 S.Ct. 2514, 2517, 120 L.Ed.2d 269 (1992); *May v. Collins*, 955 F.2d 299, 308 (5th Cir.), *cert. denied*, 504 U.S. 901, 112 S.Ct. 1925, 118 L.Ed.2d 533 (1992); *Sawyer v. Whitley*, 945 F.2d 812, 815 (5th Cir.1991), *aff'd*, 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). These opinions discuss the "miscarriage of justice" exception to the cause and prejudice test for successive federal habeas petitions. Basically, that exception provides that reconsideration of a ground for relief that was disposed of on the merits in a prior federal habeas proceeding is permissible only when the petitioner establishes a "fair probability" that, in light of all the evidence, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *See Sawyer v. Whitley*, 505 U.S. at 339 & n. 5, 112 S.Ct. at

innocence" standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.[242]

 In petitioner's case, the state trial court expressly concluded in its Order issued January 9, 1995, on petitioner's state habeas corpus application that petitioner had procedurally defaulted on his complaints regarding the validity of his April 27, 1981 aggravated robbery conviction and the admission of evidence concerning that conviction at the punishment phase of petitioner's trial by failing to make a contemporaneous objection to the admission of evidence concerning the conviction during petitioner's capital murder trial.[243] The Texas Court of Criminal Appeals expressly adopted that conclusion in its *per curiam* Order issued February 21, 1995.[244] Therefore, the holding by petitioner's state habeas corpus court precludes review by this Court of the petitioner's sixth ground for federal habeas corpus relief unless petitioner can establish either cause and actual prejudice for his procedural default or that a failure to address the merits of the federal claim would result in a miscarriage of justice.[245] While petitioner did assert a multifaceted ineffective assistance claim in this federal habeas corpus proceeding, he did not allege as a part of the claim his trial counsel rendered ineffective assistance by failing to object to the admission of evidence regarding

petitioner's April 27, 1981 state court conviction for aggravated robbery. Nor has petitioner alleged any other facts sufficient to establish both cause and actual prejudice for his trial counsel's failure to make a contemporaneous objection to the admission of evidence regarding petitioner's April 27, 1981 state court conviction. Further, as the detailed discussion of the evidence introduced at petitioner's trial set forth above demonstrates, petitioner has alleged no facts which establish petitioner is "factually innocent" of either the capital murder offense for which he was convicted or the sentence of death imposed upon him.[246] Thus, petitioner has procedurally defaulted on his sixth ground for federal habeas corpus relief, and this Court may not review the merits of that claim. For the foregoing reasons, petitioner's sixth ground for federal habeas relief does not warrant same.

### 2. *Harmless Error*

 Alternatively, even if this Court were to consider the merits of petitioner's sixth ground for federal habeas corpus relief, the matters about which petitioner complains in his sixth ground for relief, at best, present only harmless error. Any error committed by the state trial court in admitting evidence at the punishment phase of petitioner's capital murder trial regarding petitioner's April 27, 1981 state criminal conviction for aggra-

2518–19 & n. 5; *May v. Collins,* 955 F.2d at 308; *Sawyer v. Whitley,* 945 F.2d at 817.

**242.** See *Sawyer v. Whitley,* 505 U.S. at 335–40, 112 S.Ct. at 2516–19 (holding that to show "factual innocence" in context of capital sentencing scheme, one must show by clear and convincing evidence that, but for the constitutional error, no reasonable juror would have found petitioner eligible for death penalty under applicable state statute and "factual innocence" means fair probability that, in light of all the evidence, trier of facts would have entertained a reasonable doubt as to defendant's guilt); *Kuhlmann v. Wilson,* 477 U.S. 436, 455 n. 17, 106 S.Ct. 2616, 2627 n. 17, 91 L.Ed.2d 364 (1986); *Johnson v. Hargett,* 978 F.2d 855, 859–60 (5th Cir.1992), *cert. denied,* 507 U.S. 1007, 113 S.Ct. 1652, 123 L.Ed.2d 272 (1993); *May v. Collins,* 955 F.2d at 308; *Sawyer v. Whitley,* 945 F.2d at 817.

**243.** See Statement of Facts from petitioner's state habeas corpus proceeding, at p. 240.

**244.** See *Ex parte Adanandus,* Writ No. 27,875–01 (Tex.Crim.App. February 21, 1995).

**245.** See *Coleman v. Thompson,* 501 U.S. at 750, 111 S.Ct. at 2565; *Harris v. Reed,* 489 U.S. at 262, 109 S.Ct. at 1043; *Moore v. Roberts,* 83 F.3d at 702.

**246.** See *Sawyer v. Whitley,* 505 U.S. at 335–40, 112 S.Ct. at 2516–19 (holding that to show "factual innocence" in context of capital sentencing scheme, one must show by clear and convincing evidence that, but for the constitutional error, no reasonable juror would have found petitioner eligible for death penalty under applicable state statute and "factual innocence" means a fair probability that, in light of all the evidence, trier of facts would have entertained reasonable doubt as to defendant's guilt); *Kuhlmann v. Wilson,* 477 U.S. at 455 n. 17, 106 S.Ct. at 2627 n. 17; *Johnson v. Hargett,* 978 F.2d at 859–60; *May v. Collins,* 955 F.2d at 308; *Sawyer v. Whitley,* 945 F.2d at 817.

vated robbery was harmless beyond a reasonable doubt. The test for harmless error in a federal habeas corpus action brought by a state prisoner is "whether the error had substantial and injurious effect or influence in determining the jury's verdict." [247] Petitioner argues the evidence relating to his April 27, 1981 aggravated robbery conviction should have been excluded not because petitioner was incompetent at the time he committed the robbery but rather because petitioner was mentally incompetent at the time he entered his guilty plea to that charge. This is a significant distinction because petitioner's arguments in support of his sixth ground for federal habeas relief go not to the admissibility at the punishment phase of the petitioner's capital murder trial of evidence regarding petitioner's criminal conduct on August 16, 1980, but only to the admissibility of evidence concerning petitioner's ensuing criminal conviction on April 27, 1981.

To recapitulate, petitioner pleaded guilty on April 27, 1981, to an aggravated robbery committed on August 16, 1980. Evidence concerning that robbery was introduced at the punishment phase of petitioner's trial [248] as well as other evidence establishing petitioner had (1) committed a separate armed robbery of a different convenience store in August, 1980,[249] (2) robbed a bank in Hurst, Texas, on August 21, 1986,[250] (3) been previously convicted of burglary of a building, forgery of a check, and passing a forged check,[251] (4) been stopped and arrested while driving a stolen pickup truck,[252] and (5) once shot a man.[253] During his own testimony at the punishment phase of his capital murder trial, petitioner admitted to the armed robbery of convenience stores, admitted to his prior convictions for burglary, forgery, and passing a forged check, admitted the idea of robbing banks came to him while he was incarcerated but denied robbing the bank in Hurst and claimed he merely took the pickup truck after he found the keys inside that vehicle.[254]

Even assuming petitioner was mentally incompetent on April 27, 1981, when he entered his guilty plea to the aggravated robbery charge in Nolan County, Texas, there is no specific factual allegation, much less any

**247.** *See Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993); *Woods v. Johnson,* 75 F.3d 1017, 1026 (5th Cir.1996) (holding that to satisfy harmless error standard announced in *Brecht,* defendant must show there is more than mere reasonable possibility that error contributed to verdict); *Cupit v. Whitley,* 28 F.3d 532, 538–39 (5th Cir. 1994), *cert. denied,* — U.S. —, 115 S.Ct. 1128, 130 L.Ed.2d 1091 (1995) (discussing difference for purposes of harmless error analysis between structural and mere trial errors); *Ward v. Whitley,* 21 F.3d 1355, 1365 (5th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995); *Vanderbilt v. Collins,* 994 F.2d 189, 199 (5th Cir.1993). However, the *Brecht* harmless error standard does not require that for the error to be harmful, there be a reasonable probability the result would have been different. *See Woods v. Johnson,* 75 F.3d at 1027 (citing *Kyles v. Whitley,* — U.S. —, — — —, 115 S.Ct. 1555, 1566–67, 131 L.Ed.2d 490 (1995)). Likewise, if the court finds the evidence on the question of the harmlessness of the error is evenly balanced, federal habeas relief must be granted. *See Woods v. Johnson,* 75 F.3d at 1026 (citing *O'Neal v. McAninch,* 513 U.S. 432, —, 115 S.Ct. 992, 994, 130 L.Ed.2d 947 (1995)).

Determination of whether the erroneous admission of evidence is "harmless" depends on a host of factors, including (1) the importance of the evidence in the prosecution's case, (2) whether the evidence was cumulative, (3) the presence or absence of other evidence corroborating or contradicting the evidence in question, and (4) the overall strength of the prosecution's case against the defendant. *See Cupit v. Whitley,* 28 F.3d at 539. Of these factors, the strength of the prosecution's case is probably the most important in determining whether the error was harmless. *Id.*

**248.** *See* Statement of Facts from petitioner's state court trial, Volume 45 of 27, Testimony of Linda Eileen Davidson, at pp. 7158–76.

**249.** *Id.,* Testimony of Lucille McGee, at pp. 7177–88.

**250.** *Id.,* Testimony of Helen Marie Horsley, at pp. 7252–83; and Testimony of Lisa Boley, at pp. 7288–7308.

**251.** *Id.,* Volume 26 of 27, Testimony of Dwight Dwayne Adanandus, at pp. 7538–48.

**252.** *Id.,* Volume 25 of 27, Testimony of Reed McDonald, at pp. 7454–63; and Testimony of L.J. Dulin, at pp. 7464–72.

**253.** *Id.,* Volume 25 of 27, Lloyd Joe McGrew, at pp. 7343–51.

**254.** *Id.,* Volume 26 of 27, Testimony of Dwight Dwayne Adanandus, at pp. 7527–7600.

evidence, now before this Court establishing petitioner was mentally incompetent when he robbed the convenience store on August 16, 1980. The Fifth Circuit has repeatedly held that, under the Texas capital sentencing scheme, the admission of evidence of extraneous, unadjudicated offenses at the punishment phase of a Texas capital murder trial does not violate a defendant's constitutional rights.[255] Also, the federal courts routinely make use of evidence of other criminal conduct, including unadjudicated offenses, in the course of sentencing convicted criminal defendants.[256] Thus, even assuming petitioner's April 27, 1981 conviction was invalid due to petitioner's mental incompetence to enter a valid guilty plea on that date, the prosecution could still have introduced evidence at the punishment phase of petitioner's capital murder trial establishing the petitioner had committed an armed robbery on August 16, 1980.[257]

Given the overwhelming body of evidence establishing the petitioner had, in fact, committed an armed robbery on August 16, 1980, including petitioner's admission to same during his testimony at the punishment phase of his trial, any error committed by the state trial court in admitting evidence of petitioner's April 27, 1981 conviction for that offense was harmless beyond a reasonable doubt. Even if petitioner had never been convicted of the offense of aggravated robbery on April

27, 1981, evidence regarding his commission of the offense of armed robbery on August 16, 1980, would have been admissible at the punishment phase of petitioner's capital murder trial. Because the admission of evidence of petitioner's April 27, 1981 conviction had no substantial and injurious effect or influence in determining the jury's verdict at the punishment phase of petitioner's capital murder trial, petitioner's sixth ground for federal habeas relief does not warrant same.

## G. Racially–Motivated Use of a Peremptory Challenge: Batson Claim

In his seventh ground for federal habeas corpus relief, petitioner argues his constitutional rights were violated when the prosecution used a peremptory challenge to strike the sole remaining black member of the jury venire.[258] The Supreme Court first held in its opinion in *Batson v. Kentucky* [259] that a prosecutor's use of peremptory challenges could violate equal protection principles. Petitioner argues the prosecution violated those principles when it struck venireperson Sharon Diane King, the lone remaining black person on the panel, during the course of exercising its peremptory challenges.

Petitioner's trial counsel made a timely objection to the prosecution's exercise of a peremptory challenge to venireperson

**255.** See *Harris v. Johnson*, 81 F.3d 535, 541 (5th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 1863, 134 L.Ed.2d 961 (1996); *Montoya v. Scott*, 65 F.3d 405, 421 (5th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1417, 134 L.Ed.2d 542 (1996); *Kinnamon v. Scott*, 33 F.3d 462, 466 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 660, 130 L.Ed.2d 595 (1994); *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 432, 130 L.Ed.2d 344 (1994); *Duff–Smith v. Collins*, 973 F.2d 1175, 1184 (5th Cir. 1992), *cert. denied*, 507 U.S. 1056, 113 S.Ct. 1958, 123 L.Ed.2d 661 (1993); *Landry v. Lynaugh*, 844 F.2d 1117, 1121 (5th Cir.), *cert. denied*, 488 U.S. 900, 109 S.Ct. 248, 102 L.Ed.2d 236 (1988); *Williams v. Lynaugh*, 814 F.2d 205, 207–08 (5th Cir.), *cert. denied*, 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 270 (1987); *Milton v. Procunier*, 744 F.2d 1091, 1097 (5th Cir.1984), *cert. denied*, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985).

**256.** See, e.g., *United States v. Vital*, 68 F.3d 114, 118 (5th Cir.1995) (affirming sentencing court's

consideration for sentencing purposes of unadjudicated offenses which occurred after offense of conviction); *United States v. Wittie*, 25 F.3d 250, 260 (5th Cir.1994), *aff'd*, —— U.S. ——, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995).

**257.** See *Montoya v. Scott*, 65 F.3d at 421; *Kinnamon v. Scott*, 33 F.3d at 466; *Clark v. Collins*, 19 F.3d at 966; *Duff–Smith v. Collins*, 973 F.2d at 1184; *Landry v. Lynaugh*, 844 F.2d at 1121; *Williams v. Lynaugh*, 814 F.2d at 207–08; *Milton v. Procunier*, 744 F.2d at 1097. In each of these opinions, the Fifth Circuit held evidence of unadjudicated criminal conduct is admissible at the punishment phase of a Texas capital murder trial.

**258.** See Petitioner's Second Amended Petition for Post–Conviction Writ of Habeas Corpus, filed June 25, 1996, docket entry no. 25, at pp. 35–40.

**259.** 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

King.[260] Thereafter, the state trial court held a hearing in chambers on the matter. Assistant Bexar County Criminal District Attorney Jamie Boyd testified during the hearing that (1) Ms. King had not arrived on time earlier that day but had to be escorted to the courthouse by a deputy sheriff approximately one and one-half hours after the time she was supposed to have arrived,[261] (2) it was unclear what explanation, if any, Ms. King had given for her tardiness,[262] (3) he viewed the fact Ms. King had to be brought to the courthouse by a deputy sheriff as something that might prejudice her against the State,[263] (4) the court coordinator had informed the other jurors the delay in commencing that day's proceedings was caused by Ms. King's tardiness,[264] (5) Ms. King had given a noncommittal answer to a question in the juror questionnaire asking whether she believed there should be a death penalty,[265] (6) he tended to place greater trust in the answers given by members of the venire to the questionnaires rather than to the answers they gave in open court while the attorneys were talking to them,[266] (7) Ms. King had indicated in response to a question on her juror questionnaire she believed the proper role or aim of punishment was rehabilitation and explained her answer by writing "most crimes that are committed are done at a moments notice which means there was no clear thought of what was going on during the crime," [267] (8) Ms. King's answers to those questions, together with the fact she had earned a substantial amount of college credit in psychology, made him leery of having a "pseudo expert in psychology" on the jury,[268] (9) he was concerned Ms. King would be unable to distinguish between a knowing and intentional killing,[269] and (10) he noticed Ms. King had smiled during her voir dire questioning when asked about capital murder, and she gave an answer during her voir dire which led him to believe she was ambivalent about the death penalty.[270]

A three-step inquiry is necessary to determine whether a party has violated *Batson*, i.e., used peremptory challenges in a way that violates the Equal Protection Clause. First, the opponent of the strike must make a prima facie showing the proponent of the strike exercised it on the basis of a juror's cognizable racial background; second, the burden then shifts to the proponent of the strike to articulate a race-neutral explanation for removing the potential juror in question; and third, the trial court must determine whether the opponent of the strike has carried his burden of proving purposeful discrimination.[271] A prerequisite to the foregoing inquiry is, of course, a timely objection to the strike in question.[272] In this case,

260. *See* Statement of Facts from petitioner's state court trial, Volume 16 of 27, at pp. 5058–59.

261. *Id.*, Testimony of Jamie Boyd, at pp. 5070–72 and 5145.

262. *Id.*, at pp. 5072–74.

263. *Id.*, at pp. 5078–79, 5117, and 5145.

264. *Id.*, at pp. 5079 and 5128–29.

265. *Id.*, at pp. 5094–97. State's Exhibits 1 and 2 introduced during the evidentiary hearing on petitioner's *Batson* objection consisted of copies of Ms. King's juror questionnaire. In response to question 55, which asked whether she believed there should be a death penalty, Ms. King wrote "unsure, because I feel what facts are give [sic] through the media is unjust [sic] and facts are important."

266. *Id.*, at pp. 5095–96.

267. *Id.*, at pp. 5098–5100.

268. *Id.*, at pp. 5100 and 5112–15.

269. *Id.*, at pp. 5100–01.

270. *Id.*, at pp. 5109–11, 5114–16, and 5129–32.

271. *See Hernandez v. New York*, 500 U.S. 352, 358–59, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991); *United States v. Huey*, 76 F.3d 638, 640–41 (5th Cir.1996); *United States v. Fields*, 72 F.3d 1200, 1206 (5th Cir.), *petition for certs. filed*, 64 U.S.L.W. 3709 (U.S. Apr. 8, 1996) (No. 95–1639), *and* (U.S. Jun. 26, 1996) (No. 95–9441).

272. *See United States v. Krout*, 66 F.3d 1420, 1428 (5th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 963, 133 L.Ed.2d 884 (1996) (holding *Batson* objections must be raised before venire dismissed); *Thomas v. Moore*, 866 F.2d 803, 805 (5th Cir.), *cert. denied*, 493 U.S. 840, 110 S.Ct. 124, 107 L.Ed.2d 85 (1989) ("A timely objection and the corresponding opportunity to evaluate the circumstances of the jury selection process are essential to a trial court's reasoned application of the limitations placed on peremptory challenges by the *Batson* holding.").

petitioner's trial counsel made a timely Batson objection. Thus, the burden then shifted to the proponent to articulate a race-neutral explanation for the strike.

 Assistant District Attorney Boyd's testimony at the Batson hearing, summarized above, provides a plethora of race-neutral reasons for the prosecution's decision to exercise a peremptory challenge against venireperson King, among them her college training in psychology, her ambivalent answers regarding the death penalty both in her questionnaire answers and during her voir dire examination, and the fact she had to be escorted to the courthouse by a deputy sheriff. The Fifth Circuit has accepted a wide range of reasons for peremptory strikes as race-neutral.[273] Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason given will be deemed race-neutral.[274] A race-neutral reason for the prosecution's striking of a member of the petitioner's jury venire need not be plausible.[275] A prosecutor's explanation for a peremptory strike need not rise to the level of a challenge for cause; it merely must contain a clear and reasonably specific articulation of legitimate reasons for the strike.[276] The prosecutor's explanation need not be quantifiable and may include intuitive assumptions upon confronting a potential juror.[277] Prosecutor Boyd's testimony and clear articulation of several race-neutral reasons for striking Ms. King from the jury more than satisfied the prosecution's burden at the Batson hearing.

 Petitioner argues the prosecution's proffered reasons for striking Ms. King

**273.** *See United States v. Fike*, 82 F.3d 1315, 1320 (5th Cir.1996) (holding Afro–American venireman's expression of distrust in justice system was sufficient race-neutral reason for striking that venireman); *United States v. Moeller*, 80 F.3d 1053, 1060 (5th Cir.1996) (holding venireman's lack of education was proper race-neutral reason for exercise of peremptory strike in complex conspiracy case); *United States v. Jimenez*, 77 F.3d 95, 100–01 (5th Cir.1996) (upholding striking of a black member of venire against Batson challenge where prosecution pointed out venireman in question was young, uneducated, had not worked in a company setting, and had no religious preference, upholding striking of hispanic venireman because close relative had been convicted of DWI, and upholding striking of another hispanic venireman because he was unhappy with prosecutions in two cases in which close family members were killed); *United States v. Fields*, 72 F.3d at 1206 (upholding striking of black female member of venire because she was young, had avoided eye contact with prosecution, and had looked at defendants in flirtatious manner); *United States v. Jackson*, 50 F.3d 1335, 1341 (5th Cir.1995) (holding prosecutor's statement that potential juror had given him "hostile look" when prosecutor pointed out to court that jurors were seated out of order and requested juror change places with juror seated next to him was sufficiently race-neutral reason to support peremptory strike and overcome Batson objection); *United States v. Seals*, 987 F.2d 1102, 1108–09 (5th Cir.), *cert. denied*, 510 U.S. 853, 114 S.Ct. 155, 126 L.Ed.2d 116 (1993) (upholding against Batson objections strikes of two black members of venire based on prosecution's observations that primary activities of one of the black men struck consisted of reading the Bible and watching television and fact other person struck worked with the mentally retarded); *Polk v. Dixie Ins. Co.*, 972 F.2d 83, 85–86 (5th Cir.1992),

*cert. denied*, 506 U.S. 1055, 113 S.Ct. 982, 122 L.Ed.2d 135 (1993) (holding eye contact is legitimate race-neutral reason for exercising peremptory strike); *United States v. Hinojosa*, 958 F.2d 624, 632 (5th Cir.1992) (holding venireman's disinterested demeanor or inattentiveness are race-neutral valid reasons for exclusion); *United States v. Clemons*, 941 F.2d 321, 325 (5th Cir. 1991) (holding venireperson's age, hairstyle, dress and general appearance are legitimate race-neutral reasons for exercising peremptory strike); *United States v. Terrazas–Carrasco*, 861 F.2d 93, 94–95 & n. 1 (5th Cir.1988) (holding age, eye contact, body language, length of residence in community, marital status, and having same name as person prosecutor previously convicted all legitimate race-neutral reasons for exercising peremptory strike).

**274.** *Purkett v. Elem*, —— U.S. ——, ——, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995); *Hernandez v. New York*, 500 U.S. at 360, 111 S.Ct. at 1866; *United States v. Fike*, 82 F.3d at 1320; *United States v. Fields*, 72 F.3d at 1206; *United States v. Clemons*, 941 F.2d at 325.

**275.** *See Purkett v. Elem*, —— U.S. at ——, 115 S.Ct. at 1771 (holding any race-neutral reason will suffice to defeat Batson claim even if reason less plausible); *United States v. Huey*, 76 F.3d at 640–41 n. 12.

**276.** *See United States v. Fields*, 72 F.3d at 1206; *United States v. Hinojosa*, 958 F.2d at 632; *United States v. Clemons*, 941 F.2d at 325.

**277.** *See United States v. Hinojosa*, 958 F.2d at 632; *United States v. Clemons*, 941 F.2d at 325; *United States v. Terrazas–Carrasco*, 861 F.2d at 94.

were pretextual, pointing out that several other jurors had also been tardy in arriving at the courthouse that same day, Ms. King's father was a police officer, she had another relative who was a judge, and suggesting Ms. King's answers during her voir dire examination established she believed in the death penalty. However, there appears to be no genuine dispute Ms. King was the only member of the venire whose presence at the courthouse was compelled on the date in question with the assistance of a deputy sheriff. Further, Ms. King's written answers to questions 55 and 57 on her juror questionnaire revealed not just an ambivalence about the death penalty but also a clear predisposition in favor of the exact position the defense took during both the guilt-innocence and punishment phases of petitioner's trial, i.e., the argument that because of the brief time sequence between Vernon Hanan's lunge at petitioner and petitioner's firing of the fatal shot, petitioner had acted neither intentionally nor deliberately in shooting Vernon Hanan. Thus, the prosecution's proffered explanations for its strike of Ms.

King were facially race-neutral and neither inherently implausible nor overtly pretextual. Finally, the state trial court's ruling on petitioner's timely *Batson* objection was primarily a credibility determination made after first-hand observation of the prosecutor during his testimony and cross-examination at the *Batson* hearing.[278] The state trial court's implicit factual finding on that credibility determination is entitled to deference from this Court in this federal habeas corpus proceeding.[279] "Federal courts in habeas proceedings are required to grant a presumption of correctness to a state court's explicit and implicit findings of fact if supported by the record."[280] Both implied and explicit fact findings fall within the ambit of Section 2254(d).[281] Even an ambiguous record entitles state court fact findings to the presumption of correctness.[282] Prosecutor Boyd's testimony at the *Batson* hearing furnished several plausible, even compelling, race-neutral reasons for the prosecution's use of a peremptory challenge to strike venireperson King. Thus, the state habeas court's implicit factual finding as to the credibility of prose-

278. *See Hernandez v. New York*, 500 U.S. at 364, 111 S.Ct. at 1868–69 (recognizing trial court's ultimate decision on question of discriminatory intent is factual finding entitled to great deference); *United States v. Moeller*, 80 F.3d at 1060 (recognizing trial court's ruling on timely *Batson* objection essentially one of credibility); *United States v. Seals*, 987 F.2d at 1109 (holding trial court's determination on *Batson* objection entitled to great deference); *Polk v. Dixie Ins. Co.*, 972 F.2d at 86 (recognizing *Batson* findings largely will turn on evaluations of credibility of counsel's explanations); *United States v. Terrazas–Carrasco*, 861 F.2d at 94 (giving deference to trial judge's credibility choice and recognizing valid reasons for exercise of peremptory challenge include intuitive assumptions based on prosecution's confrontation of venireperson).

279. *See* 28 U.S.C. § 2254(d); *Burden v. Zant*, 498 U.S. 433, 436–37, 111 S.Ct. 862, 864, 112 L.Ed.2d 962 (1991); *Sumner v. Mata*, 449 U.S. 539, 551, 101 S.Ct. 764, 771, 66 L.Ed.2d 722 (1981); *Amos v. Scott*, 61 F.3d 333, 346 (5th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 557, 133 L.Ed.2d 458 (1995); *Gilley v. Collins* 968 F.2d 465, 469 (5th Cir.1992); *Smith v. Collins*, 964 F.2d 483, 485 (5th Cir.1992); *Lincecum v. Collins*, 958 F.2d at 1278–79; *Barnard v. Collins*, 958 F.2d at 636; *King v. Collins*, 945 F.2d 867, 868 (5th Cir.1991); *Carter v. Collins*, 918 F.2d 1198, 1202 (5th Cir.1990); *Loyd v. Smith*, 899

F.2d 1416, 1425 (5th Cir.1990). "A state court's determinations on the merits of a factual issue are entitled to a presumption of correctness on federal habeas review. A federal court may not overturn such determinations unless it concludes that they are not 'fairly supported by the record.'" *Demosthenes v. Baal*, 495 U.S. 731, 735, 110 S.Ct. 2223, 2225, 109 L.Ed.2d 762 (1990). State court factual findings are entitled to this presumption absent one of eight statutory exceptions. *Cantu v. Collins*, 967 F.2d 1006, 1015 (5th Cir.1992), *cert. denied*, 509 U.S. 926, 113 S.Ct. 3045, 125 L.Ed.2d 730 (1993).

280. *Loyd v. Smith*, 899 F.2d at 1425; *see also Demosthenes v. Baal*, 495 U.S. 731, 735, 110 S.Ct. 2223, 2225, 109 L.Ed.2d 762 (1990); *Wainwright v. Witt*, 469 U.S. 412, 426, 105 S.Ct. 844, 853, 83 L.Ed.2d 841 (1985); *Monroe v. Collins*, 951 F.2d 49, 51 (5th Cir.1992).

281. *See Marshall v. Lonberger*, 459 U.S. 422, 433–34, 103 S.Ct. 843, 850–51, 74 L.Ed.2d 646 (1983); *Cantu v. Collins*, 967 F.2d at 1015; *McCoy v. Cabana*, 794 F.2d 177, 182 (5th Cir. 1986).

282. *See Teague v. Scott*, 60 F.3d 1167, 1170 (5th Cir.1995); *James v. Whitley*, 39 F.3d 607, 610 (5th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1704, 131 L.Ed.2d 565 (1995).

cutor Boyd's testimony in overruling petitioner's timely *Batson* objection is fully supported by the record in this case, and this Court may not reject that finding.[283] Petitioner has failed to carry his burden of showing the prosecution's action in striking venireperson King was racially-motivated.[284] Under such circumstances, petitioner's seventh ground for federal habeas relief does not warrant same.

### H. *Improper Admission of Reputation Testimony*

■ In his eight, ninth, and tenth grounds for relief, petitioner argues his state trial court erred in admitting, at the punishment phase of petitioner's capital murder trial, testimony from three San Antonio Police Officers that petitioner's reputation for being peaceful and law-abiding was bad.[285] While petitioner argues the admission of this reputation testimony violated his constitutional rights, he does not cite to any authori-

ty other than state court opinions interpreting state evidentiary rules.

■ The primary problem with these arguments is that, in the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court.[286] A state prisoner seeking federal court review of his conviction pursuant to 28 U.S.C. § 2254 must assert a violation of a federal constitutional right.[287] Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also presented.[288] Therefore, the question before a federal habeas corpus court is not whether the state court correctly applied its own interpretation of state law; rather, the question is whether the petitioner's federal constitutional rights were violated.[289]

When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254 it must decide whether the petitioner is "in custody in violation of the Constitution or laws or treaties of the

---

**283.** See *Burden v. Zant*, 498 U.S. at 436–37, 111 S.Ct. at 864; *Marshall v. Lonberger*, 459 U.S. at 432–36, 103 S.Ct. at 849–52 (holding federal habeas court should not overturn state court findings of fact if findings have "fair support" in record); *Harris v. Johnson*, 81 F.3d at 539 (recognizing federal habeas corpus court must ordinarily accept implicit fact findings made by state trial court in ruling on *Batson* objection); *Monroe v. Collins*, 951 F.2d at 51. "A state court's determinations on the merits of a factual issue are entitled to a presumption of correctness on federal habeas review. A federal court may not overturn such determinations unless it concludes that they are not 'fairly supported by the record.'" *Demosthenes v. Baal*, 495 U.S. 731, 735, 110 S.Ct. 2223, 2225, 109 L.Ed.2d 762 (1990). State court factual findings are entitled to this presumption absent one of eight statutory exceptions. *Cantu v. Collins*, 967 F.2d at 1015.

**284.** See *Purkett v. Elem*, —— U.S. at ——, 115 S.Ct. at 1771 (holding opponent of strike bears burden of proving racial motivation underlying strike).

**285.** See Petitioner's Second Amended Petition for Post-Conviction Writ of Habeas Corpus, filed June 25, 1996, docket entry no. 25, at pp. 40–45.

**286.** "[F]ederal courts do not sit as courts of appeal and error for state court convictions." *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir.1986); *Bridge v. Lynaugh*, 838 F.2d 770, 772 (5th Cir.1988). This Court does not review a

state prisoner's federal habeas corpus petition to determine whether the state appellate courts correctly construed and applied state law. Federal habeas corpus relief does not lie for errors of state law. See *Estelle v. McGuire*, 502 U.S. at 67–68, 112 S.Ct. at 489–80; *Lewis v. Jeffers*, 497 U.S. at 780, 110 S.Ct. at 3102; *Pulley v. Harris*, 465 U.S. at 41, 104 S.Ct. at 874; *Pemberton v. Collins*, 991 F.2d at 1223; *Lavernia v. Lynaugh*, 845 F.2d at 496; *Rault v. Butler*, 826 F.2d at 302 n. 1; *Neyland v. Blackburn*, 785 F.2d at 1293.

**287.** *Lawrence v. Lensing*, 42 F.3d 255, 258 (5th Cir.1994); *Gray v. Lynn*, 6 F.3d 265, 268 (5th Cir.1993); *Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir.1993).

**288.** See *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 479–80, 116 L.Ed.2d 385 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 874–75, 79 L.Ed.2d 29 (1984); *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir.), cert. denied, 510 U.S. 1025, 114 S.Ct. 637, 126 L.Ed.2d 596 (1993); *Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir.1988); *Rault v. Butler*, 826 F.2d 299, 302 n. 1 (5th Cir.), cert. denied, 483 U.S. 1042, 108 S.Ct. 14, 97 L.Ed.2d 803 (1987); *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir.), cert. denied, 479 U.S. 930, 107 S.Ct. 399, 93 L.Ed.2d 352 (1986).

**289.** See *Neyland v. Blackburn*, 785 F.2d at 1289.

United States." The court does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter*.[290]

Thus, the issue before this Court is not whether the trial court properly applied state law principles during petitioner's trial or whether the Texas Court of Criminal Appeals correctly affirmed petitioner's conviction and sentence and correctly denied petitioner's state habeas corpus application. The issue is whether petitioner's federal constitutional rights have been violated.

 When a federal court reviews state court evidentiary rulings on a petition for habeas corpus, it will grant relief only if the state court error is sufficiently egregious as to render the entire trial fundamentally unfair.[291] "A state court's evidentiary ruling presents a cognizable habeas claim only if it runs afoul of a specific constitutional right or renders the trial fundamentally unfair."[292] The challenged evidence must be a crucial, critical, or highly significant factor in the context of the entire case.[293] The test to determine whether a trial error makes a trial fundamentally unfair is whether there is a reasonable probability that the verdict might have been different had the trial been properly conducted.[294]

As explained above, at the punishment phase of petitioner's trial, the jury heard testimony and saw documentary evidence establishing that petitioner had previously been convicted of (1) two separate armed robberies of convenience stores, (2) robbery of a bank in Hurst, Texas, (3) forgery, (4) passing a forged check, and (5) burglary of a building. More specifically, the evidence at the punishment phase of petitioner's trial also established (1) petitioner shot Lloyd Joe McGrew in the head on May 12, 1974, during an altercation between petitioner and one of McGrew's brothers,[295] (2) petitioner was arrested on November 19, 1978, for unlawfully carrying a handgun and booked under the name "Paul Brown,"[296] (3) petitioner was arrested in San Antonio, Texas, on September 28, 1979, while in the course of burglarizing a store,[297] (4) petitioner robbed a convenience store at gun point in Sweetwater, Texas, on August 16, 1980, demanded the lone female store clerk's car keys and purse, ripped the telephone off the wall before he left the store, and threatened to shoot the clerk if she left the store within ten minutes of petitioner's departure,[298] (5) in August, 1980, petitioner robbed another lone female convenience store clerk at gun point in Abilene, Texas,[299] (6) on August 20, 1980, petitioner was arrested while driving a pickup truck that had been stolen just hours before from a residence in Amarillo, Texas, after an unknown person burglarized the residence

**290.** *Coleman v. Thompson,* 501 U.S. 722, 730, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991).

**291.** *Pemberton v. Collins,* 991 F.2d at 1226; *Jernigan v. Collins,* 980 F.2d 292, 298 (5th Cir. 1992), *cert. denied,* 508 U.S. 978, 113 S.Ct. 2977, 125 L.Ed.2d 675 (1993); *Edwards v. Butler,* 882 F.2d 160, 164 (5th Cir.1989); *Bridge v. Lynaugh,* 838 F.2d at 772; *Mullen v. Blackburn,* 808 F.2d 1143, 1145 (5th Cir.1987); *Dillard v. Blackburn,* 780 F.2d 509, 513 (5th Cir.1986).

**292.** *Cupit v. Whitley,* 28 F.3d 532, 536 (5th Cir. 1994), *cert. denied,* — U.S. —, 115 S.Ct. 1128, 130 L.Ed.2d 1091 (1995); *Pemberton v. Collins,* 991 F.2d at 1226; *Trussell v. Estelle,* 699 F.2d 256, 259 & 262 (5th Cir.), *cert. denied,* 464 U.S. 853, 104 S.Ct. 168, 78 L.Ed.2d 153 (1983).

**293.** *Jernigan v. Collins,* 980 F.2d at 298; *Bridge v. Lynaugh,* 838 F.2d at 772; *Thomas v. Lynaugh,* 812 F.2d 225, 230 (5th Cir.), *cert. denied,* 484 U.S. 842, 108 S.Ct. 132, 98 L.Ed.2d 89 (1987); *Mullen v. Blackburn,* 808 F.2d at 1145.

**294.** *See Guidroz v. Lynaugh,* 852 F.2d 832, 835 (5th Cir.1988); *Rogers v. Lynaugh,* 848 F.2d 606, 609 (5th Cir.1988).

**295.** *See* Statement of Facts from petitioner's state court proceeding, Volume 25 of 27, Testimony of Lloyd Joe McGrew, at pp. 7344–51.

**296.** *See* Statement of Facts from petitioner's state court trial, Volume 24 of 27, Testimony of Valentine Lopez, at pp. 7189–95; Testimony of Everett Mann, at pp. 7195–7207; and Testimony of Cruz Morua, at pp. 7208–18.

**297.** *See* Statement of Facts from petitioner's state court trial, Volume 24 of 27, Testimony of Larry Bodiford, at pp. 7106–19.

**298.** *Id.,* Volume 24 of 27, Testimony of Linda Eileen Davidson, at pp. 7158–69.

**299.** *Id.,* Volume 24 of 27, Testimony of Lucille McGee, at pp. 7178–86.

and took the keys to that vehicle,[300] (7) on August 21, 1986, petitioner robbed the Sunbelt Savings branch office in Hurst, Texas, by handing an employee a note containing almost verbatim the same death threats contained in the note petitioner used in his robbery of the Continental National Bank ["CNB"] in San Antonio on January 28, 1988,[301] (8) during his robbery of the Sunbelt Savings branch, petitioner wore a brace over his forearm and wrist similar to the one he wore on January 28, 1988, when he robbed the CNB,[302] (9) the wrist brace concealed a prominent and noticeable tatoo on the back of petitioner's hand,[303] and (10) the note which petitioner gave to Patricia Martinez at the CNB on January 28, 1988, was written in two different colors of ink and showed signs it had been drawn with a straight-edge and portions of it had been re-touched.[304] Petitioner testified at the punishment phase of his trial and admitted to most of the foregoing criminal conduct except he claimed McGrew had been armed when he shot him,

denied he had robbed the bank in Hurst, Texas, and denied he had burglarized a residence to obtain the keys to the stolen truck he was driving when arrested on August 20, 1980.[305]

Other than some rather vague allusions to the Sixth Amendment's Confrontation Clause, petitioner has identified no specific federal constitutional right which he claims was violated by the admission of the bad reputation testimony given by the three San Antonio Police Officers in question. Moreover, petitioner has identified no federal constitutional authority barring the admission of reputation testimony at the punishment phase of a state capital murder trial, and this Court's independent research has disclosed none.[306] The Confrontation Clause does not necessarily prohibit the admission of hearsay statements against a criminal defendant even though the admission of the statement might be thought to violate the literal terms of that Clause.[307] Thus, the issue before this Court

**300.** *Id.*, Volume 25 of 27, Testimony of Odell McGroan, at pp. 7442–52 and 7510–11; Testimony of Reed McDonald, at pp. 7454–62; and Testimony of L.J. Dulin, at pp. 7464–71.

**301.** *Id.*, Volume 24 of 27, Testimony of Helen Marie Horsley, at pp. 7254–78; Testimony of David Smith, at pp. 7285–88; and Testimony of Lisa Boley, at pp. 7290–7303.

**302.** *See* Statement of Facts from petitioner's state court trial, Volume 18 of 27, Testimony of Patricia Martinez, at pp. 5707–08; Volume 24 of 27, Testimony of Helen Marie Horsley, at p. 7276; and Volume 24 of 27, Testimony of Lisa Boley, at p. 7296.

**303.** *Id.*, Testimony of Dwight Dwayne Adanandus, at pp. 7529–30.

**304.** *Id.*, Volume 24 of 27, Testimony of Marvin Morgan, at pp. 7221–35.

**305.** *Id.*, Volume 26 of 27, Testimony of Dwight Dwayne Adanandus, at pp. 7527–7610.

**306.** The Sixth Amendment's right to confrontation does not perforce preclude the admission of any hearsay testimony at a state criminal trial. *See Cupit v. Whitley*, 28 F.3d at 536 (citing *Johnson v. Blackburn*, 778 F.2d 1044, 1051 (5th Cir. 1985)). For the admission of hearsay evidence to violate the Confrontation Clause, the improperly admitted evidence must have been not only inadmissible but also material, i.e., a crucial, critical, or highly significant factor in the framework of the entire trial. *Cupit v. Whitley*, 28 F.3d

at 537. As explained above, however, when viewed in the context of petitioner's entire trial, including petitioner's own testimony at the punishment phase of his trial, the reputation testimony of the three San Antonio Police Officers was almost totally superfluous. The jury was made aware of petitioner's entire criminal record, most of which petitioner readily admitted during his testimony, and was fully aware of the details of petitioner's capital offense from the testimony at the guilt-innocence phase of trial. Given the largely undisputed evidence regarding petitioner's extensive criminal record, the jury could not have helped but assume petitioner's reputation for being peaceful and law-abiding was poor. The reputation testimony in question was, therefore, not crucial, critical, or significant with regard to any of the three special sentencing issues before the jury at the punishment phase of petitioner's capital murder trial.

**307.** *Sherman v. Scott*, 62 F.3d 136, 140 (5th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 816, 133 L.Ed.2d 760 (1996) (quoting *Idaho v. Wright*, 497 U.S. 805, 813, 110 S.Ct. 3139, 3145, 111 L.Ed.2d 638 (1990)). If the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility, then the hearsay rule and the Confrontation Clause do not bar admission of the statement at trial. *See Sherman v. Scott*, 62 F.3d at 140. As explained above, given the largely undisputed evidence regarding petitioner's extensive criminal record, the jury could not have helped but assumed petitioner's reputation for being peaceful and law-abiding

is whether the admission of the testimony at the punishment phase of the trial by the three witnesses regarding petitioner's bad reputation rendered the petitioner's trial "fundamentally unfair."[308] For the reasons set forth below, it did not.

In rejecting petitioner's complaints about the admission of this same testimony during petitioner's direct appeal, the Texas Court of Criminal Appeals specifically held that evidence of an accused's character may be offered under Texas law at the punishment phase of a criminal trial, and a reputation witness's testimony may be based on discussions with other police officers.[309] Thus, at best, petitioner's eighth, ninth, and tenth grounds for federal habeas relief consist of nothing more than claims that petitioner's trial court and the Texas Court of Criminal Appeals erroneously applied applicable Texas rules of evidence. As discussed, such arguments do not furnish a basis for federal habeas relief.[310] Given the wealth of evidence establishing petitioner's long track-record for violent and criminal behavior, admission of the reputation testimony in question did not render petitioner's trial fundamentally unfair. Even assuming the admission of this reputation testimony violated applicable state evidentiary rules, there is no reasonable probability the verdict might have been different had the trial been conducted properly. The evidence of petitioner's criminal record introduced at the punishment phase of trial was long and detailed. Furthermore, petitioner testified extensively, and the jury had the opportunity firsthand to review his demeanor and to determine not only whether petitioner would pose a continuing threat of violence to society but also whether petitioner's testimony that his shooting of Vernon Hanan was not deliberate was credible.

Finally, any error in admitting the reputation testimony in question at the punishment phase of petitioner's trial was harmless beyond a reasonable doubt.[311] Given the wealth of evidence concerning petitioner's violent history and criminal record, admission of the reputation testimony in question did not have a "substantial and injurious effect or influence in determining the jury's verdict."[312] In petitioner's case, there is absolutely no reasonable possibility the reputation testimony given by the three San Antonio Police Officers at the punishment phase of petitioner trial had any impact whatsoever on the outcome of petitioner's trial. Therefore, petitioner's eighth, ninth, and tenth grounds for federal habeas relief do not warrant same.

I. *Jury Instructions Deprived Jury of Opportunity to Make a Reasoned Response to Mitigating Evidence: Penry Claims*

In his eleventh, twelfth, thirteenth, fourteenth, fifteenth, and sixteenth grounds for relief, petitioner argues the jury was unable to give proper consideration to the mitigating evidence he presented at the punishment phase of trial, and the state trial court erred

was poor. Thus, even assuming the state trial court's admission of the reputation testimony in question somehow violated hearsay principles, the record before the jury at the punishment phase of petitioner's capital murder trial was such that cross-examination of those persons who had commented to the three San Antonio Police Officers in question on petitioner's reputation for being peaceful and law-abiding would have been of only marginal utility.

**308.** *See Cupit v. Whitley*, 28 F.3d at 536; *Pemberton v. Collins*, 991 F.2d at 1226.

**309.** *See Adanandus v. State*, 866 S.W.2d at 225–26 (citing *Turner v. State*, 805 S.W.2d 423, 429 (Tex.Crim.App.), *cert. denied*, 502 U.S. 870, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991)).

**310.** *See Estelle v. McGuire*, 502 U.S. at 67–68, 112 S.Ct. at 479–80; *Lewis v. Jeffers*, 497 U.S. at 780, 110 S.Ct. at 3102; *Pulley v. Harris*, 465 U.S. at 41, 104 S.Ct. at 874–75.

**311.** Harmless error analysis is appropriately applied to Confrontation Clause claims. *See United States v. Alexius*, 76 F.3d 642, 646–47 (5th Cir. 1996); *Offor v. Scott*, 72 F.3d 30, 33–34 (5th Cir.1995); *United States v. McCormick*, 54 F.3d 214, 219 (5th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 264, 133 L.Ed.2d 187 (1995); *Cupit v. Whitley*, 28 F.3d at 537–42; *Shaw v. Collins*, 5 F.3d 128, 132–33 (5th Cir.1993). In each of the foregoing opinions, the Fifth Circuit applied harmless error analysis to a Confrontation Clause Claim.

**312.** *See Woods v. Johnson*, 75 F.3d at 1026 (holding to satisfy harmless error standard announced in *Brecht*, defendant must show there is more than mere reasonable possibility error contributed to verdict).

in denying petitioner's requests for supplemental jury instructions regarding the manner in which the jury could give effect to that same mitigating evidence.[313] More specifically, petitioner argues the jury was unable to give full effect to his mitigating evidence— petitioner's testimony he had not intended to kill Vernon Hanan and he felt remorse for his actions. In essence, petitioner complains his state trial court refused to give instructions like those mandated by the Supreme Court's opinion in *Penry*.

The Supreme Court and Fifth Circuit have each emphasized that a jury in a capital murder trial must be permitted to examine the defendant's character and record as well as the circumstances of the particular offense in determining whether to impose the death penalty:

[I]n capital cases the fundamental respect for humanity underlying the Eighth Amendment requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death.[314]

Therefore, a sentencing jury in a capital murder trial may not be prevented from

considering any mitigating evidence presented by the defendant which relates to the defendant's character or the circumstances of the offense.[315] In other words, the jury at petitioner's trial must have been afforded adequate opportunity to give effect to petitioner's mitigating evidence of his character and background, as well as his evidence of the circumstances surrounding his offense. The state trial court did not give petitioner's jury any special instructions such as the one suggested by the Supreme Court's opinion in *Penry* and denied petitioner's requests for similar instructions regarding mitigating evidence. Thus, the question before this Court is whether the absence of such an instruction in petitioner's case violated constitutional principles.

The Fifth Circuit has held a *Penry* instruction is only required in those instances in which the major mitigating thrust of the evidence is substantially beyond the scope of all the special issues under the Texas capital sentencing scheme.[316] The Fifth Circuit has recognized a wide range of potentially mitigating evidence can be considered within the scope of the Texas capital sentencing special issues without the necessity for a *Penry* instruction.[317] The Supreme Court and Fifth

**313.** *See* Petitioner's Second Amended Petition for Post–Conviction Writ of Habeas Corpus, filed June 25, 1996, docket entry no. 25, at pp. 45–53.

**314.** *Sawyers v. Collins,* 986 F.2d 1493, 1497 (5th Cir.1993), *cert. denied,* 508 U.S. 933, 113 S.Ct. 2405, 124 L.Ed.2d 300 (1993) (quoting *Woodson v. North Carolina,* 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976)).

**315.** *Sawyers v. Collins,* 986 F.2d at 1497. The Fifth Circuit's opinion in *Sawyers* must be read in conjunction with the Supreme Court's two most recent opinions addressing the former Texas capital sentencing statute. *See Johnson v. Texas,* 509 U.S. at 372–73, 113 S.Ct. at 2671–72 (rejecting contention that *Penry* instruction is necessary in every case in which defendant offers mitigating evidence that has some arguable relevance beyond the special issues and emphasizing its previous opinions do not require jury be able to dispense mercy on basis of sympathetic response to defendant); *Graham v. Collins,* 506 U.S. 461, 475–76, 113 S.Ct. 892, 902, 122 L.Ed.2d 260 (1993) (rejecting contention *Penry* instruction is necessary in every case in which defendant offers mitigating evidence that has some arguable relevance beyond the special issues).

**316.** *See Nethery v. Collins,* 993 F.2d 1154, 1161 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1416, 128 L.Ed.2d 87 (1994); *Bridge v. Collins,* 963 F.2d 767, 770 (5th Cir.1992), *cert. denied,* 509 U.S. 925, 113 S.Ct. 3044, 125 L.Ed.2d 729 (1993); *Holland v. Collins,* 962 F.2d 417, 419–20 (5th Cir.1992), *cert. denied,* 509 U.S. 925, 113 S.Ct. 3043, 125 L.Ed.2d 729 (1993); *White v. Collins,* 959 F.2d 1319, 1322 (5th Cir.), *cert. denied,* 503 U.S. 1001, 112 S.Ct. 1714, 118 L.Ed.2d 419 (1992); *Barnard v. Collins,* 958 F.2d 634, 637 (5th Cir.1992), *cert. denied,* 506 U.S. 1057, 113 S.Ct. 990, 122 L.Ed.2d 142 (1993); *Graham v. Collins,* 950 F.2d 1009, 1030–33 (5th Cir.1992), (*en banc*), *aff'd,* 506 U.S. 461, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993).

**317.** *See Nichols v. Scott,* 69 F.3d 1255, 1267–68 & 1278 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 2559, 135 L.Ed.2d 1076 (1996) (holding that neither evidence defendant was not triggerman nor evidence showing defendant's good character warranted *Penry* instruction); *Briddle v. Scott,* 63 F.3d 364, 377 (5th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 687, 133 L.Ed.2d 531 (1995) (holding evidence of defendant's remorse and voluntary intoxication did not warrant *Penry* instruction); *Lackey v. Scott,* 28 F.3d

Circuit have each held that the Texas capital sentencing special issues allow adequate con-

486, 489 (5th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 743, 130 L.Ed.2d 644 (1995) (holding evidence of defendant's intoxication did not warrant *Penry* instruction); *Crank v. Collins,* 19 F.3d 172, 175 (5th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 2699, 129 L.Ed.2d 825 (1994) (holding evidence of defendant's good character did not require *Penry* instruction); *Nethery v. Collins,* 993 F.2d 1154, 1161 (5th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1416, 128 L.Ed.2d 87 (1994) (holding the Texas special issues sufficiently broad in themselves to allow jury to give meaningful consideration to accused's voluntary intoxication); *James v. Collins,* 987 F.2d 1116, 1121–22 (5th Cir.), *cert. denied,* 509 U.S. 947, 114 S.Ct. 30, 125 L.Ed.2d 780 (1993) (holding the Texas special issues alone permit adequate consideration by jury of accused's voluntary intoxication, impoverished and abusive family history, redeeming character traits, including his remorse for his actions, his cooperation with law enforcement authorities, and his positive familial ties); *Jernigan v. Collins,* 980 F.2d 292, 295 (5th Cir.1992), *cert. denied,* 508 U.S. 978, 113 S.Ct. 2977, 125 L.Ed.2d 675 (1993) (holding the Texas capital sentencing special issues adequate, despite absence of *Penry* instruction, to permit jury to consider and give effect to defendant's mitigating evidence that he was a kind, gentle person who had rededicated his life to God); *Stewart v. Collins,* 978 F.2d 199, 201 (5th Cir.1992), *cert. denied,* 507 U.S. 1053, 113 S.Ct. 1951, 123 L.Ed.2d 656 (1993) (holding the Texas capital murder special issues permitted jury to consider and weigh mitigating evidence that defendant was not triggerman during the murder); *Demouchette v. Collins,* 972 F.2d 651, 653–54 (5th Cir.), *cert. denied,* 505 U.S. 1246, 113 S.Ct. 27, 120 L.Ed.2d 952 (1992) (holding first Texas special issue permits adequate consideration by jury of evidence defendant suffered from antisocial personality disorder); *Cantu v. Collins,* 967 F.2d 1006, 1012–13 (5th Cir.1992), *cert. denied,* 509 U.S. 926, 113 S.Ct. 3045, 125 L.Ed.2d 730 (1993) (holding Texas capital sentencing special issues permit jury to give adequate consideration to mitigating aspects of defendant's youth without need for supplemental *Penry* instruction); *Drew v. Collins,* 964 F.2d 411, 420–21 (5th Cir.1992), *cert. denied,* 509 U.S. 925, 113 S.Ct. 3044, 125 L.Ed.2d 730 (1993) (holding Texas special issues permit adequate consideration by jury of mitigating evidence that defendant had troubled childhood, had chronic drinking problem, was under influence of alcohol and marijuana at the time he committed the crime, was only 23 years old at the time of the offense, and did not strike the fatal blow); *Bridge v. Collins,* 963 F.2d 767, 769–70 (5th Cir.1992), *cert. denied,* 509 U.S. 925, 113 S.Ct. 3044, 125 L.Ed.2d 729 (1993) (holding the Texas capital sentencing special issues adequately permitted jury to consider mitigating effects of defendant's evidence that his accomplice actually shot the victim, he was intoxicated at time of offense, he did not plan the robbery, he was operating under influence of others during the offense, he expressed extreme remorse following the offense, he was young and immature at time of the offense, and he had no previous history of violence); *Holland v. Collins,* 962 F.2d 417, 419–20 (5th Cir.1992), *cert. denied,* 509 U.S. 925, 113 S.Ct. 3043, 125 L.Ed.2d 729 (1993) (holding mitigating effect of evidence of defendant's positive personality traits could be considered by jury without *Penry* instruction); *Black v. Collins,* 962 F.2d 394, 404–05 (5th Cir.), *cert. denied,* 504 U.S. 992, 112 S.Ct. 2983, 119 L.Ed.2d 601 (1992) (holding no *Penry* instructions needed to permit jury to consider defendant's mitigating evidence of his good character, military service, and work with Boy Scouts); *White v. Collins,* 959 F.2d 1319, 1324 (5th Cir.), *cert. denied,* 503 U.S. 1001, 112 S.Ct. 1714, 118 L.Ed.2d 419 (1992) (holding Texas capital murder special issues permitted jury to give adequate consideration to defendant's youthful age at the time of his offense); *Lincecum v. Collins,* 958 F.2d 1271, 1282–84 (5th Cir.), *cert. denied,* 506 U.S. 957, 113 S.Ct. 417, 121 L.Ed.2d 340 (1992) (holding Texas special issues need not be accompanied by instructions in order for jury to adequately consider accused's troubled childhood and his emotional turmoil at the time of offense); *Barnard v. Collins,* 958 F.2d 634, 638–39 (5th Cir.1992), *cert. denied,* 506 U.S. 1057, 113 S.Ct. 990, 122 L.Ed.2d 142 (1993) (holding Texas special issues permitted jury to give adequate consideration to defendant's evidence of his head injury, troubled childhood, drug and alcohol abuse, good character, work history, carpentry skills, and familial responsibility and support); *Cordova v. Collins,* 953 F.2d 167, 170 (5th Cir.), *cert. denied,* 502 U.S. 1067, 112 S.Ct. 959, 117 L.Ed.2d 125 (1992) (holding no *Penry* instruction necessary to permit jury to adequately consider defendant's testimony of his voluntary intoxication at time of his offense); *Graham v. Collins,* 950 F.2d 1009, 1032–33 (5th Cir.1992), *(en banc), aff'd,* 506 U.S. 461, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993) (holding Texas capital sentencing special issues permitted consideration of mitigating effect of evidence that defendant was of normal or good character, respected his mother and stepfather, cared for and was close to his mother, was never violent, never had weapons, helped out around the house without being asked, went to school and church regularly, loved "The Lord", and worked and contributed to the support of his two children); *Green v. Collins,* 947 F.2d 1230, 1232 (5th Cir.), *cert. denied,* 502 U.S. 954, 112 S.Ct. 412, 116 L.Ed.2d 433 (1991) (holding Texas capital sentencing special issues permitted consideration of mitigating effects of evidence that defendant was a good worker, had been a foreman, would have been re-employed by his former employer had he not been incarcerated, was highly intelligent, optimistic, and had the mental capacity to address small details).

sideration of the mitigating effects of evidence of a defendant's youth so as to negate the necessity for a *Penry* instruction on such evidence.[318] Likewise, the Fifth Circuit has repeatedly held that the Texas capital sentencing special issues are sufficiently broad to permit adequate consideration of evidence the accused was voluntarily intoxicated at the time of his offense.[319]

■ The Fifth Circuit has held that in order to constitute mitigating evidence for *Penry* purposes, evidence of a defendant's background and character must relate to and diminish the defendant's moral culpability for the offense with which he is charged.[320] Thus, the first inquiry in a *Penry* claim is whether the mitigating evidence is relevant, i.e., does the evidence implicate the basic concern of *Penry* that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse. In order to meet this relevance standard, the evidence must show (1) a uniquely severe permanent handicap with which the defendant is burdened through no fault of his own and (2) the criminal act was attributable to this severe permanent condition.[321] A properly preserved *Penry* claim will only prove meritorious if two requirements are met: first, the evidence proffered at trial must actually be "mitigating," i.e., it must relate to the defendant's character or background or to the circumstances of the offense and be sufficient to lead a reasonable juror to impose a penalty less than death; second, the evidence proffered at trial must have been beyond the "effective reach" of the jury, i.e., there must be a reasonable likelihood the jury applied the Texas special issues in a way that prevented consideration of the constitutionally relevant mitigating evidence.[322] A failure to satisfy either prong of this analysis

**318.** *See Johnson v. Texas,* 509 U.S. 350, 365–70, 113 S.Ct. 2658, 2667–70, 125 L.Ed.2d 290 (1993); *Drew v. Collins,* 964 F.2d at 420–21; *Barnard v. Collins,* 958 F.2d at 637–38; *Wilkerson v. Collins,* 950 F.2d 1054, 1060–61 (5th Cir. 1992), *cert. denied,* 509 U.S. 921, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993); *Graham v. Collins,* 950 F.2d at 1030–32.

**319.** *See Briddle v. Scott,* 63 F.3d at 377; *Lackey v. Scott,* 28 F.3d at 489; *Anderson v. Collins,* 18 F.3d at 1214 n. 5; *Nethery v. Collins,* 993 F.2d at 1161; *James v. Collins,* 987 F.2d at 1121; *Sawyers v. Collins,* 986 F.2d at 1502 n. 14; *Drew v. Collins,* 964 F.2d at 420; *Bridge v. Collins,* 963 F.2d at 770; *Barnard v. Collins,* 958 F.2d at 639; *Cordova v. Collins,* 953 F.2d at 170; *Graham v. Collins,* 950 F.2d at 1029.

**320.** *See Harris v. Johnson,* 81 F.3d 535, 539 (5th Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 1863, 134 L.Ed.2d 961 (1996) (holding no *Penry* instruction necessary where no evidence showing defendant's borderline intelligence bore nexus to his criminal actions); *Allridge v. Scott,* 41 F.3d 213, 223 (5th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1959, 131 L.Ed.2d 851 (1995) (holding no *Penry* instruction necessary in absence of evidence showing defendant's criminal conduct attributable to the mental illness and abuse defendant suffered during a previous incarceration); *Lackey v. Scott,* 28 F.3d 486, 489 (5th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 743, 130 L.Ed.2d 644 (1995) (holding evidence of defendant's low intelligence and history of childhood abuse not relevant for *Penry* purposes where no evidence showing defendant's criminal act attributable to same); *Madden v.*

*Collins,* 18 F.3d 304, 307–08 (5th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1114, 130 L.Ed.2d 1078 (1995) (holding evidence defendant suffered from anti-social personality, dyslexia, and a troubled childhood not relevant for *Penry* purposes absent showing defendant's criminal conduct attributable to same); *Barnard v. Collins,* 958 F.2d at 638–39 (holding that, in order to warrant a *Penry* instruction, evidence defendant had troubled childhood must be accompanied by evidence defendant's childhood experiences had psychological effect on defendant, i.e., defendant's criminal conduct attributable to his disadvantaged background); *Graham v. Collins,* 950 F.2d at 1033 (holding "mitigating" evidence must be able to raise inference "that the crime is attributable to the disability"); *see also Barnard v. Collins,* 958 F.2d at 639 (holding evidence from lay witnesses defendant had drinking problem and intoxicated at time of his offense insufficient to permit jury to conclude defendant suffered from alcoholism or drug addiction or some other "uniquely severe permanent handicap" through no fault of his own).

**321.** *Harris v. Johnson,* 81 F.3d 535, 539 (5th Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 1863, 134 L.Ed.2d 961 (1996); *Davis v. Scott,* 51 F.3d 457, 460 (5th Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 525, 133 L.Ed.2d 432 (1995).

**322.** *Madden v. Collins,* 18 F.3d 304, 308 (5th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1114, 130 L.Ed.2d 1078 (1995); *Russell v. Collins,* 998 F.2d 1287, 1292 (5th Cir.1993), *cert. denied,* 510 U.S. 1185, 114 S.Ct. 1236, 127 L.Ed.2d 580 (1994).

renders a *Penry* claim meritless. Furthermore, *Penry* does not require a sentencer be able to give effect to a defendant's mitigating evidence in whatever manner or to whatever extent the defendant desires.[323] A jury need only be provided one fair vehicle for considering mitigating evidence,[324] and the State can "structure" the jury's consideration of mitigating evidence.[325]

In this case, petitioner's "mitigating" evidence consisted of expressions of remorse and testimony that after he shot Vernon Hanan, he stood over him for a few seconds to see how badly Hanan had been injured. However, petitioner's evidence of his remorse after his offense could be properly and adequately considered by the jury without the necessity of a *Penry* instruction.[326] Thus, petitioner was not entitled to supplemental instructions like those mandated in *Penry* for the purpose of enabling his jury to consider his evidence of remorse.

Additionally, because trial counsel made a tactical decision not to introduce evidence of petitioner's childhood head injury and troubled childhood, petitioner was not entitled to *Penry*-like instructions with regard to this other potentially mitigating evidence which was not actually introduced into evidence at his trial.[327] A defendant cannot base a *Penry* claim on evidence that could have been but was not proffered at trial;[328] such a claim is procedurally barred.[329]

For the foregoing reasons, petitioner's eleventh through sixteenth grounds for federal habeas relief do not warrant same.

## J. *Exclusion of Testimony Re Settlement of Civil Lawsuit*

■ In his seventeenth ground for federal habeas relief, petitioner argues the state trial court erred in excluding testimony regarding the fact the CNB had settled a civil negligence lawsuit brought against it by the Vernon Hanan family.[330] More specifically, petitioner argues the settlement of that civil lawsuit constituted an admission on the part of CNB that its teller was at least partially responsible for the fatal shooting of Vernon Hanan. The evidence petitioner sought to introduce before the jury at the guilt-innocence phase of petitioner's trial consisted of testimony by attorney Williams Stolhanske that (1) he represented the family of Vernon

---

**323.** *Marquez v. Collins*, 11 F.3d 1241, 1248 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 215, 130 L.Ed.2d 143 (1994); *White v. Collins*, 959 F.2d 1319, 1322 (5th Cir.), *cert. denied*, 503 U.S. 1001, 112 S.Ct. 1714, 118 L.Ed.2d 419 (1992).

**324.** *Harris v. Collins*, 990 F.2d 185, 189 (5th Cir.), *cert. denied*, 509 U.S. 933, 113 S.Ct. 3069, 125 L.Ed.2d 746 (1993); *White v. Collins*, 959 F.2d at 1322–23.

**325.** *See Rogers v. Scott*, 70 F.3d 340, 343 (5th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1881, 135 L.Ed.2d 176 (1996) (citing *Johnson v. Texas*, 509 U.S. 350, 362, 113 S.Ct. 2658, 2666, 125 L.Ed.2d 290 (1993)).

**326.** *See Briddle v. Scott*, 63 F.3d 364, 377 (5th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 687, 133 L.Ed.2d 531 (1995) (holding evidence of defendant's remorse did not require *Penry* instructions); *Callins v. Collins*, 998 F.2d 269, 275 (5th Cir.1993), *cert. denied*, 510 U.S. 1141, 114 S.Ct. 1127, 127 L.Ed.2d 435 (1994) (holding evidence of defendant's remorse toward and consideration for his victim could be adequately considered by jury under Texas capital sentencing special issues); *James v. Collins*, 987 F.2d at 1122 (holding evidence defendant showed signs of remorse for his actions was within scope of second special issue); *Bridge v. Collins*, 963 F.2d at 769–70 (holding evidence defendant in tears immediately after offense could be adequately considered by jury in answering Texas capital murder special issues); *Wilkerson v. Collins*, 950 F.2d at 1060 (holding evidence defendant accepted responsibility for his criminal actions could be considered adequately within jury's deliberations on second special issue).

**327.** *See Marquez v. Collins*, 11 F.3d at 1248 (holding deliberate failure to introduce mitigating evidence as tactical decision not within requirements announced in *Penry* ); *May v. Collins*, 904 F.2d at 232 (holding same).

**328.** *See Briddle v. Scott*, 63 F.3d at 377; *Allridge v. Scott*, 41 F.3d at 223; *Crank v. Collins*, 19 F.3d at 176; *Anderson v. Collins*, 18 F.3d at 1213–14; *Barnard v. Collins*, 958 F.2d at 637; *Wilkerson v. Collins*, 950 F.2d at 1061; *May v. Collins*, 904 F.2d at 232; *DeLuna v. Lynaugh*, 890 F.2d 720, 722 (5th Cir.1989).

**329.** *See Mann v. Scott*, 41 F.3d at 979; *Motley v. Collins*, 18 F.3d at 1228; *Black v. Collins*, 962 F.2d at 407; *Lincecum v. Collins*, 958 F.2d at 1282.

**330.** *See* Petitioner's Second Amended Petition for Post–Conviction Writ of Habeas Corpus, filed June 25, 1996, docket entry no. 25, at pp. 53–55.

Hanan in a civil lawsuit against the CNB, (2) the lawsuit included allegations of negligence and that CNB teller Patricia Martinez had not been properly trained in handling robberies, (3) the lawsuit had been settled, (4) although the settlement included certain settlement concessions, the terms of the settlement were confidential, and (5) Patricia Martinez had not been a party to that lawsuit.[331] On direct appeal, the Texas Court of Criminal Appeals ruled the state trial court had not abused its discretion in excluding the testimony.[332] The court held that "theories of 'contributory negligence' or 'comparative negligence' are not applicable in the context of determining guilt or innocence on a criminal charge of capital murder."[333]

As explained above in connection with petitioner's eighth through tenth grounds for relief, a state court's evidentiary ruling presents a cognizable federal habeas claim only if it "runs afoul of a specific constitutional right or renders the trial fundamentally unfair."[334] When a federal court reviews state court evidentiary rulings on a petition for habeas corpus, it will grant relief only if the state court error is sufficiently egregious as to render the entire trial fundamentally unfair.[335] The challenged evidence must be a crucial, critical, or highly significant factor in the context of the entire case.[336] The test to determine whether a trial error makes a trial fundamentally unfair is whether there is a reasonable probability the verdict might have

been different had the trial been properly conducted.[337]

This Court agrees with the Texas Court of Criminal Appeals that the testimony in question did not make the issue of petitioner's intentional conduct any more or less probable. The proffered testimony of William Stolhanske established only that the family of Vernon Hanan had been compensated to an unknown extent by the CNB in settlement of a civil lawsuit. There is no indication in either the record of petitioner's trial or in the record now before this Court that petitioner was named as a defendant in that civil lawsuit or that the settlement entered into by CNB in connection with that civil lawsuit included any specific admissions of fault by it or any of its employees in connection with petitioner's fatal shooting of Vernon Hanan. Thus, there is no indication the civil lawsuit in question was a true effort to assign fault among all the relevant parties in a comparative negligence setting. Furthermore, a civil proceeding with its diminished burden of proof and in which the criminal defendant was not a party is not an appropriate setting in which to resolve issues of petitioner's criminal culpability.[338] A criminal defendant may possess the right to introduce testimony in his defense, but a state trial court retains the authority to exclude irrelevant, immaterial, or prejudicial evidence.[339] Accordingly, the state trial court properly excluded the evidence in question.

**331.** *See* Statement of Facts from petitioner's state court trial, Volume 22 of 27, Testimony of William Stolhanske, at pp. 6750–62.

**332.** *See Adanandus v. State,* 866 S.W.2d at 228.

**333.** *See* Id.

**334.** *See Cupit v. Whitley,* 28 F.3d at 536; *Pemberton v. Collins,* 991 F.2d at 1226; *Trussell v. Estelle,* 699 F.2d at 259 & 262.

**335.** *Pemberton v. Collins,* 991 F.2d at 1226; *Jernigan v. Collins,* 980 F.2d at 298; *Edwards v. Butler,* 882 F.2d at 164; *Bridge v. Lynaugh,* 838 F.2d at 772; *Mullen v. Blackburn,* 808 F.2d at 1145; *Dillard v. Blackburn,* 780 F.2d at 513.

**336.** *See Jernigan v. Collins,* 980 F.2d at 298; *Bridge v. Lynaugh,* 838 F.2d at 772; *Thomas v. Lynaugh,* 812 F.2d at 230; *Mullen v. Blackburn,* 808 F.2d at 1145.

**337.** *See Guidroz v. Lynaugh,* 852 F.2d at 835; *Rogers v. Lynaugh,* 848 F.2d at 609.

**338.** Had the parties to that civil lawsuit entered into binding stipulations that petitioner was solely and exclusively responsible for the death of Vernon Hanan and that petitioner had acted intentionally, petitioner would most certainly have urged the exclusion of evidence of such stipulations at his trial. The stipulations of private parties or the findings of a civil jury in a civil lawsuit regarding the criminal culpability of a non-party to that civil lawsuit are not binding in a subsequent criminal trial.

**339.** *See Allridge v. Scott,* 41 F.3d at 222–23 (holding state trial court's refusal to permit capital murder defendant to introduce evidence at punishment phase of his trial regarding his likely ineligibility for release in the future on parole did not violate defendant's constitutional rights).

■ Furthermore, even assuming the state trial court erred in excluding the testimony in question, that exclusion did not violate a specific constitutional right or render petitioner's trial fundamentally unfair. The evidence in question was of dubious relevance at best. Even without the excluded testimony of William Stolhanske, petitioner was able to present evidence supporting his position that the behavior of CNB teller Patricia Martinez on January 28, 1988, had been a contributing cause of the fatal shooting of Vernon Hanan.[340] For the foregoing reasons, especially in view of its highly dubious relevance and the other evidence already before the jury, the excluded testimony of William Stolhanske was not a critical, crucial, or highly significant factor in the context of the entire case and its exclusion did not render petitioner's trial fundamentally unfair.

Alternatively, the exclusion of the proffered testimony of William Stolhanske, even if erroneous, was harmless beyond a reasonable doubt. The testimony of FBI Special Agent Kelvington furnished petitioner with an evidentiary basis upon which to argue to the jury that petitioner's fatal shooting of Vernon Hanan had resulted, at least in part, from the conduct of CNB teller Patricia Martinez. For this reason, and the other reasons discussed above, this Court concludes the exclusion of the proffered testimony of William Stolhanske had no substantial and injurious effect or influence in determining the jury's verdict at the guilt-innocence phase of petitioner's capital murder trial.

Therefore, petitioner's seventeenth ground for federal habeas relief does not warrant same.

## K. *"Forced" Medication Claim*

■ In his eighteenth ground for federal habeas relief, the petitioner argues he was medicated regularly with phenobarbital and dilantin during his capital murder trial and this "forced" medication deprived him of his right to be heard in his own defense, to be present at trial, to remain free from self-incrimination, and to show his "true" mental condition at trial.[341] Respondent admits petitioner received the medications in question but claims the petitioner has alleged no specific facts showing he was "forced" during his trial to take any of those medications against his will or that the medications in question actually interfered with his mental functioning during trial.

The state trial court found in the course of petitioner's state habeas corpus proceeding that petitioner had failed to "present any evidence that he was in fact medicated during trial or that the medication was forcibly administered."[342] At the evidentiary hearing held November 21, 1994, in petitioner's state habeas corpus proceeding, petitioner's former trial counsel testified (1) he conferred many times with petitioner prior to trial, (2) he had petitioner examined by a psychiatrist who found nothing to indicate a motion challenging petitioner's competence to stand trial or asserting an insanity defense would have any efficacy, and (3) he never felt there was any basis in reality for a motion challenging petitioner's competence to stand trial.[343] Petitioner offered no evidence at that hearing establishing that any of the medications petitioner received during or prior to his capital murder trial were administered involuntarily or otherwise against the petitioner's will.

**340.** At the guilt-innocence phase of his capital murder trial, petitioner presented evidence, in the form of cross-examination testimony, supporting his position that the behavior of the CNB teller had been a contributing cause of the fatal shooting of Vernon Hanan. FBI Special Agent James Kelvington testified (1) he taught and gave speeches to bank employees on how to handle robberies, (2) he advises bank employees not to bring attention to the fact a robbery is going on, not to aggravate the robber, and not to do what the CNB teller did on January 28, 1988, and (3) his purpose in giving such advice is to minimize the likelihood the robber will do harm to someone. *See* Statement of Facts from petitioner's state court trial, Volume 18 of 27, Testimony of James Kelvington, at pp. 5534–42.

**341.** *See* Petitioner's Second Amended Petition for Post–Conviction Writ of Habeas Corpus, filed June 25, 1996, docket entry no. 25, at pp. 56–58.

**342.** *See* Statement of Facts from petitioner's state habeas corpus proceeding, at p. 240.

**343.** *See* Statement of Facts from the hearing held November 21, 1994, in petitioner's state habeas corpus proceeding, Testimony of Steven C. Hilbig, at pp. 33–41.

Despite the implications contained in petitioner's complaints herein about "forced" medications, petitioner alleges absolutely no specific facts establishing that any of the medications he received during his state court trial were administered involuntarily. On the contrary, the few references to petitioner's medications included in the trial court record consist of statements by petitioner's trial counsel expressing thanks to the trial court for its assistance in obtaining petitioner's medications.[344]

While an inmate has a constitutionally-protected interest in remaining free from the unwanted administration of antipsychotic medications,[345] petitioner has alleged no facts establishing that any of the anti-seizure medications he received during his state criminal trial were administered involuntarily. Thus, petitioner's situation is distinguishable from that in *Riggins*, which involved a criminal defendant who sought to have his medication, i.e., Mellaril, terminated during his trial. In contrast, petitioner herein never filed any motion requesting or otherwise making the state trial court aware of his desire to be permitted to continue trial without his anti-seizure medications. There is also no factual allegation before this Court establishing that, without the petitioner's anti-seizure medications, petitioner would have been rendered incompetent to stand trial. Thus, the factual situation in this case is distinguishable from those involved in the cases relied on by petitioner in support of his eighteenth ground for relief.

Because there is no fact-specific allegation now before this Court establishing petitioner was forcibly or otherwise involuntarily medicated at any point during his trial, petition-er's eighteenth ground for federal habeas relief does not warrant same.

### L. *Petitioner's Absence from a Portion of the Voir Dire*

 In his nineteenth and twentieth grounds for federal habeas corpus relief, petitioner argues his constitutional rights were violated when the state trial court conducted a portion of the voir dire phase of his capital murder trial in petitioner's absence.[346]

The record from petitioner's state court trial establishes that (1) at the close of the state trial court's business on April 4, 1989, petitioner's trial counsel informed the court the petitioner was feeling "sickly," did not know whether he would be able to attend court the following day, but wished the case to proceed in his absence if necessary,[347] (2) petitioner specifically affirmed to the trial court this was his position,[348] (3) the trial court advised the parties and bailiffs responsible for transporting petitioner that if petitioner wished to remain in jail the following morning, he should be permitted to do so,[349] (4) the following morning, petitioner informed the guards he did not feel well and wished to remain at the jail,[350] (5) the parties proceeded to conduct the individual voir dire of eight members of the venire, i.e., venirepersons Elia Pardo, Richard Myers, Felix Gonzalez, Dale Clark, Myra Bahme, Laura Tucker, Scott Stout, and Edward Gonzalez,[351] (6) the trial court granted petitioner's challenges for cause on venirepersons Pardo, Clark, and Stout,[352] (7) on April 6, 1989, the prosecution called to the trial court's attention Article 33.03 of the Texas Code of Criminal Procedure and the parties and trial court engaged in extensive discussions concerning

---

344. *See* Statement of Facts from petitioner's state court trial, Volume 5 of 27, at pp. 1209–10.

345. *See Riggins v. Nevada*, 504 U.S. 127, 133–34, 112 S.Ct. 1810, 1814, 118 L.Ed.2d 479 (1992); *Washington v. Harper*, 494 U.S. 210, 221, 110 S.Ct. 1028, 1036, 108 L.Ed.2d 178 (1990).

346. *See* Petitioner's Second Amended Petition for Post–Conviction Writ of Habeas Corpus, filed June 25, 1996, docket entry no. 25, at pp. 59–66.

347. *See* Statement of Facts from petitioner's state court trial, Volume 5 of 27, at p. 1209.

348. *Id.*, at pp. 1209–10.

349. *Id.*, at p. 1211.

350. *Id.*, at p. 1213.

351. *Id.*, Volume 5 of 27, at pp. 1219–1438; and Volume 6 of 27, at pp. 1439–1709.

352. *Id.*, Volume 5 of 27, at p. 1227 (Pardo excused); Volume 5 of 27, at p. 1436 (Clark excused); and Volume 6 of 27, at pp. 1655–56 (Stout excused).

the best course of action,[353] (8) on April 7, 1989, with petitioner again in attendance, the trial court ruled, over petitioner's objection, that it would recall all eight of the members of the venire in question and permit the attorneys to conduct a full voir dire of each in petitioner's presence,[354] (9) the results of that second round of voir dire were the same as before in that the trial court once again sustained petitioner's challenges for cause to venirepersons Pardo, Clark, and Stout,[355] and the five others were accepted as potential jurors by both parties, and (10) at the conclusion of voir dire, the prosecution used peremptory challenges against the five remaining members of the venire who had been examined outside the petitioner's presence.[356]

Where the defendant is not actually confronting witnesses or evidence against him, the right to be present is protected by the Due Process Clause.[357] However, it has been clear for over a quarter century that a trial court may order a disruptive, obstreperous criminal defendant to be bound and gagged, cited for contempt, or removed from the courtroom until he promises to conduct himself properly.[358] Likewise, a criminal defendant's voluntary absence constitutes a waiver of the right to be present at trial.[359] Rule 43(b) of the Federal Rules of Criminal Procedure contains specific provisions for the continuation of a federal criminal trial in the absence of the defendant. In short, the right to be present at trial is not absolute and can be waived by the defendant.[360]

Before determining whether to continue with a criminal trial in the defendant's absence, the trial court must inquire into the reason for the defendant's absence and determine whether it constitutes a voluntary waiver of the right to be present.[361] Whether a constitutional right has been voluntarily, knowingly, and intelligently waived must be determined according to the totality of the circumstances, including the background, experience, and conduct of the accused.[362] In this instance, petitioner was not unfamiliar with the criminal justice system. He had been convicted previously of two counts of armed robbery, one count of burglary of a building, and multiple charges of forgery. At the time petitioner requested to be excused from the remaining voir dire portion of trial, petitioner had already sat through the general voir dire and the individual voir dire of more than a dozen members of the venire. The petitioner and his counsel both advised the state trial court on April 4, 1989, petitioner might not appear the following day but petitioner wished the voir dire to continue in his absence.[363] Under such circumstances, the state trial court's decision to proceed with voir dire in petitioner's absence on April 5, 1989, implicitly included a finding petitioner had voluntarily waived his right to be present at the voir dire phase of his trial.

While the ultimate determination as to whether petitioner effectively waived his right to be present at trial is a legal question, the state trial court's factual finding that

**353.** *Id.*, Volume 7 of 27, at pp. 1711–48.

**354.** *Id.*, Volume 7 of 27, at pp. 1749–87.

**355.** *Id.*, Volume 7 of 27, at p. 2034 (Pardo excused); Volume 8 of 27, at p. 2172 (Clark excused); Volume 8 of 27, at p. 2317 (Stout excused).

**356.** *Id.*, Volume 15 of 27, at pp. 5030–31.

**357.** *See Vuong v. Scott*, 62 F.3d 673, 683 n. 12 (5th Cir.), *cert. denied*, — U.S. —, 116 S.Ct. 557, 133 L.Ed.2d 458 (1995).

**358.** *See Illinois v. Allen*, 397 U.S. 337, 343–44, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353 (1970).

**359.** *See Clark v. Scott*, 70 F.3d 386, 389–90 (5th Cir.1995), *cert. denied*, — U.S. —, 116 S.Ct. 1444, 134 L.Ed.2d 564 (1996).

**360.** *See Clark v. Scott*, 70 F.3d at 390; *United States v. Davis*, 61 F.3d 291, 301 (5th Cir.1995), *cert. denied sub nom. Jefferson v. United States*, — U.S. —, 116 S.Ct. 961, 133 L.Ed.2d 883 (1996); *United States v. Alikpo*, 944 F.2d 206, 208–09 (5th Cir.1991).

**361.** *See United States v. Davis*, 61 F.3d at 302. However, an on-the-record balancing test is not required by the Constitution. *See Clark v. Scott*, 70 F.3d at 389–90.

**362.** *See Mann v. Scott*, 41 F.3d 968, 974 (5th Cir.1994), *cert. denied*, — U.S. —, 115 S.Ct. 1977, 131 L.Ed.2d 865 (1995).

**363.** *See* Statement of Facts from petitioner's state court trial, Volume 5 of 27, at pp. 1209–11.

petitioner acted voluntarily is entitled to great deference from this Court.[364] As previously discussed in Section G above, federal courts in habeas proceedings are required to grant a presumption of correctness to a state court's explicit and implicit findings of fact if supported by the record.[365] Both implied and explicit fact findings fall within the ambit of Section 2254(d).[366] Even an ambiguous record entitles state court fact findings to the presumption of correctness.[367]

Petitioner has alleged no facts establishing he was unaware of the consequences his absence from the voir dire portion of trial would have on the ability of his trial counsel to protect petitioner's rights and to adequately represent petitioner's interests. As mentioned above, petitioner had already sat through several days of the individual voir dire of more than a dozen members of the venire at the time he sought to be excused. Moreover, petitioner had an extensive criminal record, was no stranger to the criminal justice system, and was familiar with the nature of the voir dire proceedings then before the state trial court. Petitioner was well aware his absence from the courtroom would make it impossible for his counsel to consult with him during that portion of the voir dire. Under the circumstances, especially in light of petitioner's own representations to the state court on April 4, 1989, this Court concludes petitioner voluntarily, intentionally, and knowingly waived his right to be present during the voir dire phase of his trial on April 5 and 6, 1989.

The burden is on the habeas petitioner to establish by clear and convincing evidence the factual determinations of a state court were erroneous.[368] In this case, petitioner's own representations in open court support the state trial court's finding petitioner voluntarily, intentionally, and knowingly waived his right to be present during the portion of the voir dire in question. Thus, the state trial court's implicit factual findings are fully supported by the record in this case, and this Court may not reject those findings.[369]

Insofar as petitioner complains the state trial court's decision to permit petitioner to voluntarily absent himself from trial prior to the final selection of the jury violated applicable state procedures, that argument does not provide a basis for federal habeas corpus relief. A state prisoner seeking federal court review of his conviction pursuant to Title 28 U.S.C. Section 2254 must assert a violation of a federal constitutional right.[370] Federal habeas corpus relief will not issue to correct

**364.** See 28 U.S.C. § 2254(d); Burden v. Zant, 498 U.S. at 436–37, 111 S.Ct. at 864; Sumner v. Mata, 449 U.S. at 551, 101 S.Ct. at 771; Amos v. Scott, 61 F.3d at 346; Gilley v. Collins 968 F.2d at 469; Smith v. Collins, 964 F.2d at 485; Lincecum v. Collins, 958 F.2d at 1278–79; Barnard v. Collins, 958 F.2d at 636; King v. Collins, 945 F.2d at 868; Carter v. Collins, 918 F.2d at 1202; Loyd v. Smith, 899 F.2d at 1425. "A state court's determinations on the merits of a factual issue are entitled to a presumption of correctness on federal habeas review. A federal court may not overturn such determinations unless it concludes that they are not 'fairly supported by the record.'" Demosthenes v. Baal, 495 U.S. at 735, 110 S.Ct. at 2225. State court factual findings are entitled to this presumption absent one of eight statutory exceptions. Cantu v. Collins, 967 F.2d at 1015.

**365.** See also Demosthenes v. Baal, 495 U.S. at 735, 110 S.Ct. at 2225; Wainwright v. Witt, 469 U.S. at 426, 105 S.Ct. at 853; Monroe v. Collins, 951 F.2d at 51; Loyd v. Smith, 899 F.2d at 1425.

**366.** See Marshall v. Lonberger, 459 U.S. at 433–34, 103 S.Ct. at 850–51; Cantu v. Collins, 967 F.2d at 1015; McCoy v. Cabana, 794 F.2d at 182.

**367.** See Teague v. Scott, 60 F.3d at 1170; James v. Whitley, 39 F.3d at 610.

**368.** Sumner v. Mata, 449 U.S. at 551, 101 S.Ct. at 771.

**369.** See Burden v. Zant, 498 U.S. at 436–37, 111 S.Ct. at 864–65; Marshall v. Lonberger, 459 U.S. at 432–36, 103 S.Ct. at 849–52 (holding federal habeas court should not overturn state court findings of fact if findings have "fair support" in record); Monroe v. Collins, 951 F.2d at 51. "A state court's determinations on the merits of a factual issue are entitled to a presumption of correctness on federal habeas review. A federal court may not overturn such determinations unless it concludes that they are not 'fairly supported by the record.'" Demosthenes v. Baal, 495 U.S. at 735, 110 S.Ct. at 2225. State court factual findings are entitled to this presumption absent one of eight statutory exceptions. Cantu v. Collins, 967 F.2d at 1015.

**370.** Lawrence v. Lensing, 42 F.3d at 258; Gray v. Lynn, 6 F.3d at 268; Lowery v. Collins, 988 F.2d at 1367.

errors of state constitutional, statutory, or procedural law unless a federal issue is also presented.[371] Because this Court concludes petitioner voluntarily, intentionally, and knowingly waived his right to be present at a portion of the voir dire phase of his trial, petitioner's complaints of alleged violations of state constitutional and procedural rules do not warrant federal habeas relief.

Furthermore, the Court concludes any error committed by the state trial court in granting petitioner's request to be excused from a portion of the voir dire phase of petitioner's trial was, under the circumstances, harmless beyond a reasonable doubt. The state trial court recalled all eight members of the jury venire who had been examined outside petitioner's presence. The parties then conducted a full and unfettered re-examination of those same members of the venire in petitioner's presence. The trial court granted petitioner's motions to excuse for cause the same three persons whom it had excused in petitioner's absence. Finally, the prosecution exercised peremptory challenges against the five remaining members of the venire who initially had been examined outside petitioner's presence. Under such circumstances, the fact these eight members of the jury venire had been examined initially outside petitioner's presence did not have a "substantial and injurious effect or influence in determining the jury's verdict." [372]

In addition, petitioner has alleged no facts showing his absence during a portion of the voir dire negatively impacted on his counsel's conduct of voir dire or had any adverse impact on the manner in which his counsel exercised peremptory challenges. For instance, petitioner has not alleged any facts showing his absence effectively prevented his

counsel from successfully challenging any member of the venire for cause or had any adverse impact on defense counsel's ability to intelligently exercise the defense's peremptory challenges. Because none of the eight members of the venire ever sat on petitioner's jury or were ever subject to a peremptory challenge made by the defense and because the trial court granted each of petitioner's challenges for cause to the eight members of the venire against whom petitioner brought such challenges, there is no reasonable possibility petitioner's absence from a portion of the voir dire portion of his trial had a substantial and injurious effect or influence on the outcome of his trial. Under such circumstances, the state trial court's action in granting petitioner's request to voluntarily absent himself from a portion of the voir dire but then recalling the eight venirepersons who had been examined in petitioner's absence for re-examination in petitioner's presence did not have a "substantial and injurious effect or influence in determining the jury's verdict."

For the foregoing reasons, petitioner's nineteenth and twentieth grounds for federal habeas relief do not warrant same.

## M. *Petitioner's Competence to Stand Trial*

In his twenty-first and final ground for federal habeas relief, petitioner argues (1) the state trial court erred in failing to *sua sponte* order a hearing on petitioner's mental competence prior to trial and (2) he was legally incompetent to stand trial.[373] The Fifth Circuit has recently addressed the competency issue in *Washington v. Johnson.*[374]

■ A criminal defendant may not be tried unless he is competent.[375] A criminal

---

**371.** *See Estelle v. McGuire,* 502 U.S. at 67–68, 112 S.Ct. at 480; *Lewis v. Jeffers,* 497 U.S. at 780, 110 S.Ct. at 3102; *Pulley v. Harris,* 465 U.S. at 41, 104 S.Ct. at 874–75.

**372.** *See Brecht v. Abrahamson,* 507 U.S. at 637, 113 S.Ct. at 1721; *Woods v. Johnson,* 75 F.3d at 1026 (holding to satisfy harmless error standard announced in *Brecht,* defendant must show more than mere reasonable possibility error contributed to verdict).

**373.** *See* Petitioner's Second Amended Petition for Post–Conviction Writ of Habeas Corpus, filed June 25, 1996, docket entry no. 25, at pp. 66–69.

**374.** 90 F.3d 945, 949–52 (5th Cir.1996).

**375.** *Cooper v. Oklahoma,* —— U.S. ——, ——, 116 S.Ct. 1373, 1377, 134 L.Ed.2d 498 (1996); *Godinez v. Moran,* 509 U.S. 389, 396, 113 S.Ct. 2680, 2685, 125 L.Ed.2d 321 (1993); *Drope v. Missouri,* 420 U.S. 162, 171, 95 S.Ct. 896, 903–04, 43 L.Ed.2d 103 (1975) ("a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceed-

defendant is competent to stand trial if (1) he has sufficient ability at the time of trial to consult with his attorney with a reasonable degree of rational understanding and (2) he has a rational as well as factual understanding of the proceedings against him.[376]

### 1. State Trial Court's Failure to Hold Competency Hearing

■ A criminal defendant has a procedural due process right to a competency hearing whenever the facts before the trial court raise or should raise a bona fide doubt concerning competence.[377] If the trial judge received information which, objectively considered, should reasonably have raised a doubt about the defendant's competence and alerted the trial judge to the possibility the defendant could neither understand the proceedings, nor rationally aid his attorney in his defense, the trial judge was obligated to make further inquiry into the defendant's competence to stand trial.[378] In determining whether a competency hearing is required, the trial judge must give consideration to (1) the existence of a history of irrational behavior, (2) the defendant's bearing and demeanor at the time of trial, and (3) prior medical opinions.[379] However, a competency determination is only necessary when the trial court has reason to doubt the defendant's competence.[380] A habeas petitioner asserting a claim the trial court erred in failing to hold a competency hearing bears the burden of making a clear and convincing showing of the existence of a real, substantial, and legitimate doubt as to his mental capacity.[381]

■ The first part of petitioner's final ground for relief fails because petitioner has wholly failed to allege any facts showing the state trial court was ever made aware, either prior to or during petitioner's capital murder trial, of any facts or evidence raising "a real, substantial, and legitimate doubt as to the petitioner's mental capacity." In support of this argument, petitioner argues rather cryptically that petitioner's state trial court "was aware of many of these facts and circumstances raising a doubt" as to petitioner's competence.[382] Petitioner then identifies the following information as supporting the need for a competency hearing: (1) the fact petitioner suffered a head injury as a child and subsequently had a metal plate implanted in his skull, (2) petitioner suffered from epilepsy and a seizure disorder, (3) petitioner was then taking medications for that illness, (4) as a child, petitioner was sent to the Austin State School for unspecified "mental illness problems," and (5) a transcript existed from the April 29, 1981 Nolan County hearing in which petitioner's defense counsel raised a

---

ings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial."); *Pate v. Robinson,* 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966); *Washington v. Johnson,* 90 F.3d 945, 949–50 (5th Cir.1996); *Wheat v. Thigpen,* 793 F.2d 621, 629 (5th Cir.1986), *cert. denied,* 480 U.S. 930, 107 S.Ct. 1566, 94 L.Ed.2d 759 (1987).

**376.** *See Godinez v. Moran,* 509 U.S. at 396, 113 S.Ct. at 2685; *Drope v. Missouri,* 420 U.S. at 172, 95 S.Ct. at 904; *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 788, 4 L.Ed.2d 824 (1960); *Washington v. Johnson,* 90 F.3d 945, 949–50 (5th Cir.1996); *DeVille v. Whitley,* 21 F.3d 654, 656 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 436, 130 L.Ed.2d 348 (1994); *United States v. Sparks,* 2 F.3d 574, 584 (5th Cir.1993), *cert. denied sub nom. Tucker v. United States,* —— U.S. ——, 114 S.Ct. 1548, 128 L.Ed.2d 198 (1994); *McCoy v. Lynaugh,* 874 F.2d 954, 960 (5th Cir.1989).

**377.** *See Drope v. Missouri,* 420 U.S. at 172, 95 S.Ct. at 904; *Pate v. Robinson,* 383 U.S. at 384–86, 86 S.Ct. at 841–43; *Wheat v. Thigpen,* 793

F.2d at 629; *Enriquez v. Procunier,* 752 F.2d 111, 113 (5th Cir.1984), *cert. denied,* 471 U.S. 1126, 105 S.Ct. 2658, 86 L.Ed.2d 274 (1985).

**378.** *See Wheat v. Thigpen,* 793 F.2d at 629; *Lokos v. Capps,* 625 F.2d 1258, 1261 (5th Cir.1980).

**379.** *See Enriquez v. Procunier,* 752 F.2d at 113; *Reese v. Wainwright,* 600 F.2d 1085, 1091 (5th Cir.), *cert. denied,* 444 U.S. 983, 100 S.Ct. 487, 62 L.Ed.2d 410 (1979).

**380.** *See Godinez v. Moran,* 509 U.S. at 401 n. 13, 113 S.Ct. at 2688 n. 13; *DeVille v. Whitley,* 21 F.3d at 657.

**381.** *See Washington v. Johnson,* 90 F.3d 945, 950 (5th Cir.1996); *Wheat v. Thigpen,* 793 F.2d at 629; *Bruce v. Estelle,* 483 F.2d 1031, 1043 (5th Cir.1973).

**382.** *See* Petitioner's Second Amended Petition for Post–Conviction Writ of Habeas Corpus, filed June 25, 1996, docket entry no. 25, at p. 68.

question as to petitioner's competence to stand trial.[383]

This Court finds petitioner's arguments unpersuasive. Nothing in any of these arguments establishes that any evidence or factual information was ever presented to the trial judge who presided over petitioner's capital murder trial showing either that (1) petitioner had a history of irrational, as opposed to merely criminal behavior, (2) there was anything about petitioner's bearing or demeanor at the time of trial which would have raised "a real, substantial, and legitimate doubt" as to his mental capacity, or (3) any prior medical or psychological evaluation of petitioner had ever found him to be incompetent. On the contrary, petitioner's trial counsel had petitioner evaluated by Dr. Costello well in advance of trial but never filed any motions or made any statements on the record that would have raised a legitimate doubt as to petitioner's competence to stand trial. Petitioner identifies nothing which he either did or said in the presence of the trial judge which would have raised a doubt as to his competence. Moreover, there is not even a single instance in the record from petitioner's trial indicating petitioner ever behaved in an irrational manner in the presence of the trial judge.[384] Petitioner alleges no facts showing the trial judge was ever made aware of any history of irrational, as opposed to criminal, behavior by petitioner.[385] Petitioner also identifies no medical evaluations performed at or prior to the time of trial indicating he was incompetent.

Contrary to the implications underlying this aspect of the petitioner's final ground for federal habeas relief, regardless of whether viewed individually or collectively, petitioner's history of head injury and epilepsy, the fact petitioner was then taking medications for his epilepsy, the fact petitioner had been examined or treated for unspecified "mental illness problems" almost twenty years before at the Austin State School, and the fact that eight years previously a trial attorney had raised a question as to petitioner's competence to stand trial simply did not raise "a real, substantial, and legitimate doubt as to petitioner's mental capacity" sufficient to warrant a competency hearing. For these reasons, this portion of petitioner's final ground for federal habeas relief does not warrant same.

### 2. Petitioner's Competence to Stand Trial

As explained above, a criminal defendant is competent to stand trial if (1) he has sufficient ability at the time of trial to consult with his attorney with a reasonable degree of rational understanding and (2) he has a rational as well as factual understanding of the proceedings against him.[386] When federal habeas corpus relief is sought on the ground the defendant was incompetent to stand trial, the petitioner's initial burden is substantial; federal habeas courts will only consider claims of mental incompetence to stand trial when the facts are sufficient to positively, unequivocally, and clearly generate a real, substantial, and legitimate doubt as to the mental capacity of the petitioner.[387]

The problems with petitioner's claim he was incompetent to stand trial are legion.

383. *Id.*

384. In fact, the affidavit of former state district judge Phil Chavarria, Jr., filed in connection with petitioner's state habeas corpus proceeding, categorically refutes any contention the state trial judge was ever placed on notice of any information raising a question as to the petitioner's competence to stand trial. *See* Statement of Facts from petitioner's state habeas corpus proceeding, at pp. 226–27.

385. Petitioner has not alleged any facts showing the state trial judge who presided over the petitioner's capital murder trial was ever (1) made aware of the fact that on April 29, 1981, petitioner's state court defense counsel raised a question as to the petitioner's competence to stand trial or (2) furnished with a copy of the transcript from the April 29, 1981 hearing in state district court in Nolan County.

386. *See Godinez v. Moran,* 509 U.S. at 396, 113 S.Ct. at 2685; *Drope v. Missouri,* 420 U.S. at 172, 95 S.Ct. at 904; *Dusky v. United States,* 362 U.S. at 402, 80 S.Ct. at 788; *Washington v. Johnson,* 90 F.3d 945, 949–50 (5th Cir.1996); *DeVille v. Whitley,* 21 F.3d at 656; *United States v. Sparks,* 2 F.3d at 584; *McCoy v. Lynaugh,* 874 F.2d at 960.

387. *See Washington v. Johnson,* 90 F.3d 945, 950 (5th Cir.1996); *Enriquez v. Procunier,* 752 F.2d at 114; *Bruce v. Estelle,* 483 F.2d at 1043.

First, the only facts which petitioner alleges in support of this claim are the same ones discussed above regarding his history of childhood head injury, history of epilepsy, stay at the Austin State School almost twenty years before his capital murder trial, and the April 29, 1981 hearing in Nolan County. However, petitioner alleges no facts establishing either that (1) he lacked sufficient ability at the time of his trial to consult with his attorney with a reasonable degree of rational understanding or (2) he lacked a rational as well as factual understanding of the proceedings against him.

Second, petitioner's trial counsel testified at the evidentiary hearing held November 21, 1994, in petitioner's state habeas corpus proceeding that (1) he discussed the case numerous times with petitioner prior to trial, (2) he had petitioner evaluated by an independent psychiatrist and reviewed Dr. Costello's report of that evaluation, (3) he had no doubt about petitioner's competence to stand trial, and (4) he never felt there was any basis for a motion challenging petitioner's competence to stand trial.[388] Petitioner offered no evidence at that same hearing to refute this testimony and has alleged no facts before this Court which contradict the observations of petitioner's trial counsel.

Furthermore, as a part of petitioner's state habeas corpus proceeding, the State obtained an affidavit from the then-retired state trial judge who presided over petitioner's capital murder trial in which the former judge stated (1) petitioner was well-behaved in court, (2) he never had the slightest suspicion petitioner lacked a rational and factual understanding of the proceeding against him, and (3) nothing was ever brought to his attention indicating petitioner lacked the ability to consult with his lawyer.[389] Petitioner has not alleged any facts controverting the trial judge's observations. In addition, nothing in either Dr. Costello's 1988 report or in the more recent report prepared by Dr. Robert Geffner and his associate Ron Roberts indicates that, at the time of his trial, petitioner lacked either sufficient ability to consult with his attorney with a reasonable degree of rational understanding or a rational, as well as factual, understanding of the proceedings against him.

Finally, petitioner's own testimony given at the punishment phase of his trial amply demonstrates (1) petitioner was fully aware of the nature of the charge against him, (2) petitioner understood the factual basis for the charge against him, (3) petitioner understood the defense's strategy of asserting petitioner's fatal shooting of Vernon Hanan had not been intentional or deliberate, (4) petitioner understood the evidence that had been introduced at both the guilt-innocence and punishment phases of trial, as well as other evidence which his trial counsel had succeeded in excluding from the guilt-innocence phase of trial, (5) petitioner understood the nature and facts giving rise to each of the offenses for which he previously had been convicted as well as the facts surrounding each of the instances of unadjudicated criminal conduct which had been introduced at the punishment phase of trial, and (6) petitioner was fully capable of discussing all of the foregoing matters and responding intelligently to questions concerning same.[390]

Under these circumstances, this Court concludes petitioner has failed to carry his burden to positively, unequivocally, and clearly generate a real, substantial, and legitimate doubt as to the mental capacity of petitioner at the time of trial. For the foregoing rea-

---

**388.** *See* Statement of Facts from the hearing held November 21, 1994, in petitioner's state habeas corpus proceeding, Testimony of Steven C. Hilbig, at pp. 33–41.

**389.** *See* Affidavit of Phil Chavarria, Jr., included among the state court papers from petitioner's state habeas corpus proceeding, at pp. 226–27.

**390.** *See* Statement of facts from petitioner's state court trial, Volume 26 of 27, Testimony of Dwight Dwayne Adanandus, at pp. 7527A–7610.

The fact petitioner denied he had robbed the bank in Hurst, despite the testimony of two eyewitnesses and the introduction of a photograph taken by a bank security camera, and denied he had burglarized the McGroan residence in Amarillo in August, 1980, despite considerable circumstantial evidence of a burglary and the fact petitioner was arrested while driving a truck stolen from the McGroan residence, does not provide evidence establishing petitioner was mentally incompetent to stand trial.

sons, petitioner's final ground for federal habeas corpus relief does not warrant same.

### N. *Petitioner's Request for an Evidentiary Hearing*

■ In a motion filed July 26, 1995,[391] petitioner requested this Court conduct an evidentiary hearing in this cause. A federal habeas corpus petitioner bears the burden of demonstrating the need for an evidentiary hearing on his claims for relief.[392] A federal habeas petitioner is entitled to an evidentiary hearing only where the petitioner has alleged facts which, if proved, would entitle the petitioner to relief and the petitioner did not receive a full and fair hearing in a state court.[393] No hearing is necessary where the record is complete and the evidence in the record is sufficient to provide full review of the petitioner's claims.[394] An evidentiary hearing is not required if the record is complete or the petitioner raises only legal claims that can be resolved without the presentation of additional evidence.[395] Likewise, a federal habeas corpus petitioner is not entitled to a federal evidentiary hearing on the basis of frivolous or incredible allegations.[396] A federal habeas court need not grant an evidentiary hearing on a claim of ineffective assistance of counsel when a petitioner fails to allege facts which, if proved, would entitle

the petitioner to relief or when the state court record supports that court's disposition of the claim.[397]

A federal habeas petitioner asserting a claim he was not competent to stand trial is not entitled to an evidentiary hearing unless he alleges facts sufficient to positively, unequivocally, and clearly generate a real, substantial, and legitimate doubt as to the mental capacity of the petitioner.[398] As explained above, petitioner has not met this standard. The uncontroverted testimony of petitioner's trial counsel during petitioner's state habeas proceeding, the affidavit of the trial judge, and petitioner's own trial testimony affirmatively refute any and all contentions petitioner was mentally incompetent to stand trial. For the many reasons discussed at great length above, petitioner's remaining grounds for federal habeas relief are without merit. For the foregoing reasons, petitioner's request for an evidentiary hearing in this Court will is **DENIED.**

### IV. *Conclusion*

None of petitioner's grounds for federal habeas relief are sustainable, and petitioner has failed to allege sufficient facts to require an evidentiary hearing in this cause.

Accordingly, it is hereby **ORDERED** that:

---

**391.** See docket entry no. 11.

**392.** See *United States v. Tubwell*, 37 F.3d 175, 179 (5th Cir.1994). "To receive a federal evidentiary hearing, the burden is on the habeas corpus petitioner to allege facts which, if proved, would entitle him to relief." *Id.* (quoting *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir.), *cert. denied*, 493 U.S. 970, 110 S.Ct. 419, 107 L.Ed.2d 384 (1989); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir.1992), *cert. denied*, 508 U.S. 978, 113 S.Ct. 2977, 125 L.Ed.2d 675 (1993)).

**393.** See *Kopycinski v. Scott*, 64 F.3d 223, 225 n. 2 (5th Cir.1995); *Wilcher v. Hargett*, 978 F.2d 872, 877 (5th Cir.1992), *cert. denied*, 510 U.S. 829, 114 S.Ct. 96, 126 L.Ed.2d 63 (1993); *Wiley v. Puckett*, 969 F.2d 86, 89 (5th Cir.1992); *Lincecum v. Collins*, 958 F.2d 1271, 1278 (5th Cir.), *cert. denied*, 506 U.S. 957, 113 S.Ct. 417, 121 L.Ed.2d 340 (1992) ("A federal evidentiary hearing on a constitutional claim must be held only where the state court has not provided a hearing, where the petitioner alleges facts which, if proved, would entitle him to relief, and where the record reveals a genuine factual dispute.").

**394.** See *Wilcher v. Hargett*, 978 F.2d at 877; *Skillern v. Estelle*, 720 F.2d 839, 850–51 (5th Cir. 1983), *cert. denied, sub nom. Skillern v. Procunier*, 469 U.S. 873, 105 S.Ct. 224, 83 L.Ed.2d 153 (1984).

**395.** *Lawrence v. Lensing*, 42 F.3d 255, 259 (5th Cir.1994); *United States v. Tubwell*, 37 F.3d at 179; *Ellis v. Lynaugh*, 873 F.2d at 840.

**396.** See *Young v. Herring*, 938 F.2d 543, 561 (5th Cir.1991), *cert. denied*, 503 U.S. 940, 112 S.Ct. 1485, 117 L.Ed.2d 627 (1992).

**397.** *Mangum v. Hargett*, 67 F.3d 80, 83–84 (5th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 957, 133 L.Ed.2d 880 (1996); *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 557, 133 L.Ed.2d 458 (1995).

**398.** See *Washington v. Johnson*, 90 F.3d 945, 950 (5th Cir.1996); *McCoy v. Cabana*, 794 F.2d 177, 180 n. 1 (5th Cir.1986); *Enriquez v. Procunier*, 752 F.2d at 114; *Bruce v. Estelle*, 483 F.2d at 1043.

1. All relief requested in Petitioner's Second Amended Petition for Post–Conviction Writ of Habeas Corpus, filed June 25, 1996,[399] is **DENIED.**

2. Petitioner's motion for evidentiary hearing, filed July 26, 1995,[400] is **DENIED.**

3. This Court's Order staying the execution of petitioner's sentence, issued on May 4, 1995,[401] is **RESCINDED,** and the stay of execution contained therein is **VACATED.**

4. The Clerk shall immediately prepare and enter a Judgment in conformity with this Memorandum Opinion and Order.

### *ORDER DENYING MOTION TO ALTER OR AMEND JUDGMENT*

Before the Court is petitioner's motion to alter or amend judgment, filed September 11, 1996.[1] Petitioner argues (1) this Court applied the wrong legal standard in its evaluation of petitioner's claim that he was entitled to an instruction on the lesser-included offense of felony murder at the guilt-innocence phase of his capital murder trial, (2) this Court erred in denying petitioner an evidentiary hearing on petitioner's claims of ineffective assistance by petitioner's trial counsel and forced medication, and (3) this Court erred in refusing to address the applicability of the Antiterrorism and Effective Death Penalty Act of 1996[2] ["AEDPA"] to petitioner's claims in this cause. Having reviewed petitioner's motion to alter or amend judgment, this Court finds nothing therein which warrants reconsideration or amendment of the analysis contained in this Court's Memorandum Opinion and Order issued August 27, 1996.[3] Therefore, petitioner's motion to alter or amend the judgment in this cause will be denied.

*Lesser–Included Offense Instruction—Felony Murder*

Petitioner's argument regarding his right to have a jury instruction on the lesser-included offense of felony murder was discussed in detail in Section III.C.1. of this Court's Memorandum Opinion and Order issued August 27, 1996. Petitioner was entitled to a jury instruction on the lesser-included offense of felony murder at the guilt-innocence phase of his capital murder trial only if the evidence then before the jury would permit a jury rationally to find him guilty of the lesser offense and to acquit him of the greater.[4] Therefore, to require an instruction on felony murder under Texas law as a matter of constitutional principle, the evidence at petitioner's trial had to permit a rational jury to conclude that petitioner had intended merely to commit the underlying offense of robbery but, during the commission of or attempt to commit that robbery, petitioner actually caused the death of the decedent by committing an act clearly dangerous to human life without actually intending to kill the decedent.[5] However, as explained in this Court's Memorandum Opinion and Order, petitioner offered no direct testimony or other evidence at the guilt-innocence phase of his capital murder trial from which a rational jury could have inferred that petitioner had not intended to kill the decedent when petitioner aimed a fully loaded semiautomatic pistol at the decedent's

**399.** *See* docket entry no. 25.

**400.** *See* docket entry no. 11.

**401.** *See* docket entry no. 6.

**1.** *See* docket entry no. 33.

**2.** *See* Pub.L. No. 104–132, 110 Stat. 1214.

**3.** *See* docket entry no. 31.

**4.** *See East v. Scott,* 55 F.3d 996, 1005 (5th Cir. 1995); *Mann v. Scott,* 41 F.3d 968, 976 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1977, 131 L.Ed.2d 865 (1995); *Allridge v. Scott,* 41 F.3d 213, 218–19 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1959, 131 L.Ed.2d 851 (1995); *Kinnamon v. Scott,* 33 F.3d 462, 464–65 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 660, 130 L.Ed.2d 595 (1994); *Andrews v. Collins,* 21 F.3d 612, 629 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 908, 130 L.Ed.2d 790 (1995); *Cantu v. Collins,* 967 F.2d 1006, 1013 (5th Cir.1992), *cert. denied,* 509 U.S. 926, 113 S.Ct. 3045, 125 L.Ed.2d 730 (1993); *Lincecum v. Collins,* 958 F.2d 1271, 1275 (5th Cir.), *cert. denied,* 506 U.S. 957, 113 S.Ct. 417, 121 L.Ed.2d 340 (1992); *Montoya v. Collins,* 955 F.2d 279, 285–86 (5th Cir.), *cert. denied,* 506 U.S. 1036, 113 S.Ct. 820, 121 L.Ed.2d 692 (1992); *Cordova v. Lynaugh,* 838 F.2d 764, 767 (5th Cir.), *cert. denied* 486 U.S. 1061, 108 S.Ct. 2832, 100 L.Ed.2d 932 (1988).

**5.** *See East v. Scott,* 55 F.3d at 1005; *Mann v. Scott,* 41 F.3d at 976.

heart and pulled the trigger. Petitioner did not testify at the guilt-innocence phase of his trial, and there was no evidence introduced at the guilt-innocence phase of trial establishing that either (1) the fatal shooting had been accidental, (2) the fatal shooting had been the product of anything other than petitioner's own intentional conduct, or (3) the petitioner did not intend to kill the decedent when the petitioner aimed a fully loaded pistol at the decedent and fired at point blank range.

Contrary to the implications contained in petitioner's latest motion, neither the fact that petitioner shot only the decedent on the date in question nor the fact that petitioner failed to announce verbally before, during or after the fatal shooting that he intended to kill the decedent entitled petitioner to a jury instruction on the lesser-included offense of felony murder. Likewise, petitioner's testimony at the punishment phase of his trial regarding his mental state at the time of the shooting is wholly irrelevant to the issue of whether petitioner was entitled to a lesser-included offense instruction at the earlier, guilt-innocence phase of his capital murder trial. Adoption of petitioner's arguments would necessitate the giving of a jury instruction on the lesser-included offense of felony murder in every Texas capital murder trial; this, the Constitution does not require.

*Evidentiary Hearing*

A federal habeas corpus petitioner is entitled to an evidentiary hearing only where the petitioner has alleged facts which, if proved, would entitle the petitioner to relief, there is a genuine dispute as to the critical facts, and the petitioner did not receive a full and fair hearing in a state court.[6] No hearing is necessary where the record is complete and the evidence in the record is sufficient to provide full review of the petitioner's claims.[7] An evidentiary hearing is not required if the record is complete or the petitioner raises only legal claims that can be resolved without the presentation of additional evidence.[8] A federal habeas court need not grant an evidentiary hearing on a claim of ineffective assistance of counsel when a petitioner fails to allege facts which, if proved, would entitle the petitioner to relief or when the state court record supports that court's disposition of the claim.[9]

Petitioner argues this Court should have held an evidentiary hearing to permit petitioner to develop and introduce evidence which, according to petitioner, established that (1) petitioner's trial counsel failed to interview petitioner's family members for the purpose of eliciting mitigating evidence regarding petitioner's childhood head injuries and psychological problems, (2) months after petitioner's trial, while a candidate for the office of Bexar County Criminal District Attorney, petitioner's trial counsel received a campaign contribution in the amount of one hundred dollars from a member of the dece-

---

6. See *Harris v. Johnson*, 81 F.3d 535, 540 (5th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 1863, 134 L.Ed.2d 961 (1996); *Perillo v. Johnson*, 79 F.3d 441, 444 (5th Cir.1996); *Johnson v. Scott*, 68 F.3d 106, 112 (5th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1358, 134 L.Ed.2d 525 (1996); *Kopycinski v. Scott*, 64 F.3d 223, 225 n. 2 (5th Cir.1995); *Amos v. Scott*, 61 F.3d 333, 346 (5th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 557, 133 L.Ed.2d 458 (1995); *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995); *Wilcher v. Hargett*, 978 F.2d 872, 877 (5th Cir.1992), *cert. denied*, 510 U.S. 829, 114 S.Ct. 96, 126 L.Ed.2d 63 (1993); *Wiley v. Puckett*, 969 F.2d 86, 89 (5th Cir.1992); *see also Lincecum v. Collins*, 958 F.2d 1271, 1278 (5th Cir.), *cert. denied*, 506 U.S. 957, 113 S.Ct. 417, 121 L.Ed.2d 340 (1992). "A federal evidentiary hearing on a constitutional claim must be held only where the state court has not provided a hearing, where the petitioner alleges facts which, if proved, would entitle him to relief, and where

the record reveals a genuine factual dispute." *Lincecum*, 958 F.2d at 1278.

7. See *West v. Johnson*, 92 F.3d 1385, 1399–1400 (5th Cir.1996); *Wilcher v. Hargett*, 978 F.2d at 877; *Skillern v. Estelle*, 720 F.2d 839, 850–51 (5th Cir.1983), *cert. denied, sub nom. Skillern v. Procunier*, 469 U.S. 873, 105 S.Ct. 224, 83 L.Ed.2d 153 (1984).

8. See *Lawrence v. Lensing*, 42 F.3d 255, 259 (5th Cir.1994); *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir.), *cert. denied*, 493 U.S. 970, 110 S.Ct. 419, 107 L.Ed.2d 384 (1989).

9. See *West v. Johnson*, 92 F.3d at 1399–1400 (5th Cir.1996); *Mangum v. Hargett*, 67 F.3d 80, 83–84 (5th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 957, 133 L.Ed.2d 880 (1996); *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 557, 133 L.Ed.2d 458 (1995).

dent's family, and (3) petitioner was medicated during his trial court proceedings. Petitioner also argues he was not afforded a full and fair hearing on those same claims as a part of his state habeas corpus proceeding.[10] For a number of reasons, petitioner's arguments on these matters are insufficient to warrant an evidentiary hearing under the standard set forth above.

### 1. No Reliance Upon State Court Fact Findings

First, this Court did not rely upon any express or implied fact findings made by petitioner's state habeas corpus court in the course of rejecting petitioner's ineffective assistance and mental incompetence claims. As explained below, petitioner has alleged no specific facts showing he was mentally incompetent to stand trial or that his trial counsel rendered ineffective assistance by failing to adequately investigate petitioner's mental health. Thus, any defects in petitioner's state habeas corpus proceedings are irrelevant to the merits of those aspects of petitioner's claims for federal habeas relief before this Court.

### 2. Investigation into Petitioner's Mental Health

Second, as explained in this Court's Memorandum Opinion and Order, the fail-ure of petitioner's trial counsel to investigate, develop, and present evidence relating to petitioner's childhood head injuries and psychological problems was not, per se, ineffective assistance.[11] The decision by petitioner's trial counsel not to further investigate petitioner's mental condition and background was a wholly reasonable one and was made after counsel had personally reviewed petitioner's medical records from the Austin State School and after petitioner had been evaluated by a psychiatrist at counsel's request. Under such circumstances, petitioner's trial counsel was not ineffective for failing to investigate further petitioner's psychiatric or psychological condition and background.[12] Petitioner's trial counsel made an informed strategic decision not to conduct further investigation into petitioner's mental health after counsel conducted a reasonable investigation into that subject. Informed strategic decisions by trial counsel are given a heavy measure of deference in federal habeas review.[13] An attorney's strategic choices, usually based on information supplied by the defendant and from a thorough investigation of relevant facts and law are virtually unchallengeable.[14] Counsel is required neither to advance every nonfrivolous argument nor to investigate

**10.** More specifically, petitioner argues that the state trial court repeatedly denied petitioner's motions requesting appointment of a mental health expert who could assist the petitioner's counsel in evaluating petitioner's mental health records and in cross-examining petitioner's trial counsel regarding trial counsel's tactical and strategic decisions not to present any evidence regarding petitioner's psychomotor and psychological problems at trial.

**11.** See *West v. Johnson*, 92 F.3d at 1399–1400 (5th Cir.1996); *Woods v. Johnson*, 75 F.3d 1017, 1034–35 (5th Cir.1996); *Andrews v. Collins*, 21 F.3d at 623–25.

**12.** See *West v. Johnson*, 92 F.3d at 1399–1400 (5th Cir.1996); *Andrews v. Collins*, 21 F.3d at 623, (holding that because trial counsel had no reason to believe that pursuing further investigation into the defendant's mental health or background would be useful, counsel's failure to pursue those investigations was reasonable).

**13.** See *Boyle v. Johnson*, 93 F.3d 180, 187–88 (5th Cir.1996).

**14.** See *West v. Johnson*, 92 F.3d 1385, 1408–09 (5th Cir.1996) (holding that a trial counsel's failure to conduct further investigation into the defendant's head injury and psychological problems was reasonable where interviews with the defendant and the defendant's family failed to produce any helpful information); *Boyle v. Johnson*, 93 F.3d 180, 187–88 & n. 14 (5th Cir.1996) (holding that an attorney's decision not to pursue a mental health defense or to present mitigating evidence concerning the defendant's possible mental illness was reasonable where counsel was concerned that such testimony would not be viewed as mitigating by the jury and that the prosecution might respond to such testimony by putting on its own psychiatric testimony regarding the defendant's violent tendencies); *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir.1994) (*citing Strickland v. Washington*, 466 U.S. at 691, 104 S.Ct. at 2066; *Andrews v. Collins*, 21 F.3d 612, 623 (5th Cir.1994)) (holding that counsel acted reasonably in failing to further pursue defendant's mental capacity or background where counsel had no reason to believe that further investigation would be useful).

every conceivable matter inquiry into which could be classified as nonfrivolous.[15] "The defense of a criminal case is not an undertaking in which everything not prohibited is required. Nor does it contemplate the employment of wholly unlimited time and resources."[16] The strategic decision by petitioner's trial counsel not to interview petitioner's family members or to conduct other, additional investigation into petitioner's mental health and background did not fall outside an objective standard of reasonableness as defined by prevailing professional norms.[17]

3. *Conflict of Interest: Campaign Contribution*

■ Third, petitioner has wholly failed to allege any specific facts establishing an actual conflict of interest arose because more than a year after petitioner's trial, petitioner's trial counsel allegedly accepted campaign contributions from a member of the decedent's family. More specifically, petitioner alleges in his motion to alter or amend judgment that campaign contributions were made to trial counsel by the family of the deceased complainant. In reviewing the exhibits attached to petitioner's second amended habe-

as corpus petition, the Court found, as no reference to this exhibit was made in the second amended petition or in the motion to alter or amend judgment, a copy of page 16 of a 37–page report of campaign contributions. The third person on the list is a person named "Linda Hanan" who in September of 1990, more than a year after petitioner's trial, made a contribution in the amount of one hundred dollars to the campaign of attorney Steven C. Hilbig for the office of Bexar County Criminal District Attorney. The Court takes judicial notice of the fact that by September of 1990, attorney Hilbig was the Republican party's nominee for the office of Bexar County Criminal District Attorney and that attorney Hilbig won that office in the November 1990 general election. There is no specific allegation of whether Linda Hanan is related to the decedent.

A court need not blindly accept speculative and insubstantial claims as the basis upon which to order an evidentiary hearing.[18] To be entitled to an evidentiary hearing, the federal habeas petitioner must set forth specific allegations of fact, not mere conclusions.[19] Petitioner has alleged no facts es-

---

**15.** *See Sones v. Hargett,* 61 F.3d 410, 415 n. 5 (5th Cir.1995) ("Counsel cannot be deficient for failing to press a frivolous point."); *United States v. Gibson,* 55 F.3d 173, 179 (5th Cir.1995) ("Counsel is not required by the Sixth Amendment to file meritless motions."); *Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir.1990) ("[C]ounsel is not required to make futile motions or objections."); *Schwander v. Blackburn,* 750 F.2d 494, 500 (5th Cir.1985) (holding that defense counsel is not required to investigate everyone whose name is mentioned by defendant); *Murray v. Maggio,* 736 F.2d 279, 283 (5th Cir.1984) ("Counsel is not required to engage in the filing of futile motions.").

**16.** *Smith v. Collins,* 977 F.2d 951, 960 (5th Cir. 1992), *cert. denied,* 510 U.S. 829, 114 S.Ct. 97, 126 L.Ed.2d 64 (1993).

**17.** *See West v. Johnson,* 92 F.3d at 1408–09 (5th Cir.1996); *Boyle v. Johnson,* 93 F.3d at 187–88 (5th Cir.1996). Petitioner also argues he should have been afforded an opportunity to present evidence at an evidentiary hearing held in this Court showing that his trial counsel failed to meet adequately with petitioner prior to trial. However, as explained at length in this Court's Memorandum Opinion and Order, petitioner has

alleged no facts establishing that any such failure on the part of petitioner's trial counsel "prejudiced" petitioner within the meaning of *Strickland.* Absent specific factual allegations showing that petitioner's trial counsel could have obtained additional exculpatory evidence or have developed additional defensive theories from further pretrial conferences with petitioner, petitioner's complaints of infrequent pretrial conferences with his counsel do not satisfy the prejudice prong of *Strickland.* As explained above, petitioner's trial counsel made a reasonable strategic decision not to further investigate the petitioner's mental health or to present evidence regarding same at trial. It was not ineffective for petitioner's trial counsel to have failed to anticipate the Supreme Court's decision in *Penry. See West v. Johnson,* 92 F.3d at 1409 n. 45, (5th Cir.1995); *Woods v. Johnson,* 75 F.3d at 1034–35.

**18.** *See West v. Johnson,* 92 F.3d at 1399–1400 (5th Cir.1996) (*citing Ellis v. Lynaugh,* 873 F.2d 830, 840 (5th Cir.), *cert. denied,* 493 U.S. 970, 110 S.Ct. 419, 107 L.Ed.2d 384 (1989)).

**19.** *See West v. Johnson,* 92 F.3d at 1399 (5th Cir.1996) (*quoting Johnson v. Scott,* 68 F.3d 106, 112 (5th Cir.1995), *cert. denied,* —— U.S. ——,

tablishing that his trial counsel's interests ever conflicted with or were adverse to petitioner's interests with regard to the outcome of petitioner's capital murder trial.'

While the petitioner has alleged that, more than a year after petitioner's trial, petitioner's trial counsel accepted a campaign contribution from a member of the complainant's family during said counsel's successful campaign for the office of Bexar County Criminal District Attorney, petitioner has alleged no specific facts establishing that either (1) petitioner's trial counsel ever sought or solicited such a contribution directly or indirectly from any member of the decedent's family, (2) petitioner's trial counsel was aware, at or near the time of petitioner's trial, of the possibility that such a contribution might be made by a member of the complainant's family, (3) petitioner's trial counsel ever agreed to engage in any act or omission in connection with his representation of petitioner in exchange for such a contribution or a promise of a campaign contribution from the decedent's family, or (4) the campaign contribution in question was made or intended as part of a quid pro quo for any act or omission by petitioner's trial counsel in connection with said counsel's representation of petitioner. In short, petitioner has alleged no specific facts showing that the campaign contribution in question was in any way related to, connected with or the product of an act or omission performed by attorney Hilbig during his previous representation of the petitioner. Petitioner has alleged no facts establishing that his trial counsel's interest ever conflicted with or were adverse to petitioner's interests with regard to the outcome of petitioner's capital murder trial.

■ When there is a factual dispute that, if resolved in the petitioner's favor would

entitle the petitioner to relief and the state has not afforded the petitioner a full and fair evidentiary hearing, a federal habeas corpus petitioner is entitled to discovery and an evidentiary hearing.[20] However, petitioner has failed to identify a genuine dispute as to any operative facts which, if resolved in petitioner's favor, would entitle petitioner to federal habeas corpus relief. Even assuming a member of complainant's family made a contribution to attorney Hilbig's election campaign in September of 1990, that fact, standing alone, would not support a finding of an actual conflict of interest on the part of attorney Hilbig relating to his representation of petitioner at petitioner's 1989 capital murder trial.[21] Petitioner has alleged no facts establishing a nexus between that contribution and any of the acts or omissions of attorney Hilbig during his representation of the petitioner. Thus, there is no genuine dispute which warrants an evidentiary hearing in this cause.

Rule 6 of the Federal Rules Governing Section 2254 Cases in the United States District Courts expressly provides for discovery in habeas corpus proceedings if the petitioner shows "good cause" for discovery.[22] However, Rule 6 does not authorize "fishing expeditions."[23] While petitioner did file a motion requesting an evidentiary hearing to develop further his factual allegations regarding his ineffective assistance claim,[24] petitioner made no mention in that motion of a need or desire to develop further any facts concerning any campaign contributions made to attorney Hilbig. Petitioner's operative pleading, i.e., petitioner's second amended federal habeas corpus petition, contains no mention whatsoever of any conflict of interest arising from the receipt by attorney Hilbig's election campaign in September of 1990 of a contribution

116 S.Ct. 1358, 134 L.Ed.2d 525 (1996)); *Harris v. Johnson,* 81 F.3d at 540.

**20.** *See Harris v. Johnson,* 81 F.3d at 540; *Perillo v. Johnson,* 79 F.3d at 444; *Ward v. Whitley,* 21 F.3d at 1367.

**21.** An "actual conflict" exists when an attorney represents two clients whose interests in the outcome of a matter are different. *Perillo v. Johnson,* 79 F.3d at 447. To establish an "actual conflict," the petitioner must specifically identify

instances in the record that reflect that his counsel made a choice between possible alternative courses of action. *Id.*

**22.** *See Harris v. Johnson,* 81 F.3d at 540 & n. 19; *East v. Scott,* 55 F.3d at 1001.

**23.** *Harris v. Johnson,* 81 F.3d at 540; *Perillo v. Johnson,* 79 F.3d at 444; *Ward v. Whitley,* 21 F.3d at 1367.

**24.** *See* docket entry no. 11.

from a member of the complainant's family.[25] While petitioner does allege in his motion to alter or amend judgment that "campaign contributions were made to trial counsel by the family of the deceased complainant," which according to an exhibit attached to petitioner's second amended petition appears to be a person by the name of "Linda Hanan" who made a one hundred dollar contribution to attorney Hilbig's campaign in September of 1990, petitioner does not allege either that attorney Hilbig knew the "Linda Hanan" who made the contribution was a member of the complainant's family or that attorney Hilbig ever knew any member of the complainant's family had made such a contribution. Simply put, petitioner did not request leave, pursuant to Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts, to conduct discovery into the circumstances surrounding this campaign contribution nor has petitioner established "good cause" for conducting such discovery in this case.[26] Petitioner has alleged no facts linking the September, 1990 campaign contribution of "Linda Hanan" to anything attorney Hilbig either did or failed to do in connection with said counsel's representation of petitioner.

Finally, the Court notes that petitioner was afforded a full and fair opportunity to examine attorney Hilbig on this matter during the evidentiary hearing held November 21, 1994, in petitioner's state habeas corpus proceeding. A federal evidentiary hearing is necessary in a habeas corpus proceeding only when the petitioner alleges specific facts which, if proved, would entitle him to relief, there is a genuine dispute as to operative facts in the record, and the state court has not provided a full and fair hearing on same.[27] Petitioner has repeatedly argued he was denied a fair opportunity to cross-examine attorney Hilbig at the hearing because the state court denied petitioner's requests for appointment of an expert psychiatrist or psychologist. However, petitioner did not need the assistance of a mental health expert to question attorney Hilbig concerning campaign contributions made to attorney Hilbig in September of 1990. During the November 21, 1994 evidentiary hearing held in state court, petitioner's counsel asked attorney Hilbig no questions concerning the September, 1990 campaign contribution made to attorney Hilbig's election campaign by Linda Hanan. For the reasons set forth above, petitioner is not entitled to an evidentiary hearing in this Court with regard to that contribution.

### 4. Petitioner's Medications

Petitioner's final argument regarding the need for an evidentiary hearing is equally without merit. Petitioner has alleged no specific facts showing he received or was forced to take any medications against his will during his trial. While an inmate has a constitutionally-protected interest in remaining free from the unwanted administration of antipsychotic medications,[28] petitioner has alleged no facts establishing any of the anti-seizure medications which he received during his state criminal trial were administered involuntarily. On the contrary, petitioner's state trial court records reveal petitioner sought and obtained the state trial court's assistance in securing petitioner's epilepsy medications during trial.

For the foregoing reasons, petitioner has failed to carry his burden of establishing the

---

25. Petitioner did attach to his second amended federal habeas corpus petition a one-page exhibit consisting of a copy of what petitioner now represents to be a page from the campaign finance records of attorney Hilbig's successful 1990 campaign. However, petitioner made no reference to that exhibit anywhere in the discussion of petitioner's ineffective assistance claims contained in the petitioner's second amended petition. Likewise, nowhere in his second amended petition did petitioner identify the "Linda Hanan" listed on that exhibit as a member of the complainant's family or suggest any nefarious motive was connected with that contribution.

26. See East v. Scott, 55 F.3d at 1002 (holding that even if allegations are sufficient to warrant discovery under Rule 6, those same allegations might not be sufficient to warrant an evidentiary hearing thereon).

27. See Harris v. Johnson, 81 F.3d at 540; Johnson v. Scott, 68 F.3d at 112; Amos v. Scott, 61 F.3d at 346.

28. See Riggins v. Nevada, 504 U.S. 127, 133–34, 112 S.Ct. 1810, 1814–15, 118 L.Ed.2d 479 (1992); Washington v. Harper, 494 U.S. 210, 221, 110 S.Ct. 1028, 1036, 108 L.Ed.2d 178 (1990).

necessity for an evidentiary hearing to resolve petitioner's claims for federal habeas corpus relief in this cause.

*Antiterrorism and Effective Death Penalty Act*

■ Petitioner argues this Court must address the issue of whether the Antiterrorism and Effective Death Penalty Act of 1996[29] ["AEDPA"] applies to petitioner's claims for federal habeas corpus relief in this cause. However, as the Fifth Circuit has noted on at least two occasions, it is not necessary to address the applicability of the AEDPA to a federal habeas corpus petition pending at the time of the enactment of the AEDPA when that federal habeas corpus petition is without merit under the old, more permissive standards for granting federal habeas corpus relief.[30] As explained in this Court's Memorandum Opinion and Order, petitioner is not entitled to federal habeas corpus relief in this cause even when the former, more liberal standards of pre-AEDPA case law are applied to petitioner's claims herein.

Accordingly, it is hereby ORDERED that all relief requested in petitioner's motion to alter or amend judgment, filed September 11, 1996,[31] is DENIED.

---

**29.** *See* Pub.L. No. 104–132, 110 Stat. 1214.

**30.** *See Boyle v. Johnson,* 93 F.3d at 188–89; *Callins v. Johnson,* 89 F.3d 210, 216 (5th Cir.1996).

**31.** *See* docket entry no. 33.